1  Erin K. Baldwin, Plaintiff *Pro Se*
   Post Office Box 3141
2  Beaumont, CA  92223
   (951) 333-1484
3  erinbaldwin@rocketmail.com

4

5

6

7

8                 UNITED STATES DISTRICT COURT

9         CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

10                 ED    CV   11  -  01300 DOC SP

11  ERIN K. BALDWIN, an Individual        CASE NO. _____

12                 Plaintiff,

13  v.                                    **COMPLAINT FOR MONEY DAMAGES
                                          AND DECLARATORY AND INJUNCTIVE
14  THE STATE BAR OF CALIFORNIA  and      RELIEF FOR CLAIMS UNDER 42 U.S.C.
    CALIFORNIA STATE BAR BOARD OF         §1983, §1985, and §1986 FOR VIOLATION
15  GOVERNORS, Robert A. Hawley, Paul T.  OF PLAINTIFF'S CIVIL RIGHTS
    O'Brien, John Noonen and Thomas Layton GUARANTEED UNDER THE FIRST,
16  (in their official capacities and individually); FOURTH, FIFTH, SIXTH, EIGHTH, AND
    THE CALIFORNIA DEPARTMENT OF          FOURTEENTH AMENDMENTS TO THE
17  REAL ESTATE and Jeff Davi, Dionne     UNITED STATES CONSTITUTION**
    Young and Erik Duckworth (in their official
18  capacities and individually); THE COUNTY    **DEMAND FOR JURY TRIAL**
    OF ORANGE and County Counsel,
19  Nicholas Chrisos and Thomas Mauk (in       **REQUEST FOR INJUNCTION
    their official capacities and individually);  UNDER 28 U.S.C. §2283**
20  THE COUNTY OF SAN BERNARDINO
    and County Counsel, Jean Rene Basle and  1.  FAILURE TO DISCHARGE A
21  Ruth Stringer; and Gregory C. Devereaux;   MANDATORY DUTY CALIFORNIA
    THE ORANGE COUNTY SUPERIOR             GOV'T CODE § 815.6
22  COURT and Judge David A. Thompson,
    Judge Franz E. Miller, Judge Steven L.  2.  FRAUD (INTENTIONAL
23  Perk, Judge Derek G. Johnson, Judge Craig  MISREPRESENTATION, DECEIT &
    E. Robison, Judge Karen L. Robinson,   CONSTRUCTIVE FRAUD)
24  Commissioner Richard E. Pacheco, Stacie
    Turner and Kelli Beltran (in their official  3.  PROFESSIONAL NEGLIGENCE
25  capacities and individually); THE SAN     (LEGAL MALPRACTICE & BREACH OF
    BERNARDINO SUPERIOR COURT and          FIDUCIARY DUTY)
26  Judge Ronald M. Christiansen, Judge
    Michael Dest, Judge Kyle Brodie, Judge  4.  ABUSE OF PROCESS
27  Steven Malone, Judge Gilbert Ochoa, Judge
    Donna Garza-Gunnell, Judge Kenneth R.  5.  CONVERSION
28  Barr; and Judge Thomas S. Garza (in their
    official capacities and individually); THE  6.  ABUSE OF DISCRETION

- 1 -

| | |
|---|---|
| 1 | ORANGE COUNTY BOARD OF |
| 2 | SUPERVISORS and Bill Campbell (in his official capacity and individually) ; THE |
| 3 | SAN BERNARDINO COUNTY BOARD OF SUPERVISORS and Neil F. Derry and |
| 4 | George Watson (in their official capacities and individually); UDR, INC. and Thomas |
| 5 | W. Toomey, Warren L. Troupe, Richard A. Giannotti, Mark J. Sandler, Matthew T. |
| 6 | Akin, Mark L. Culwell, Jr., David L. Messenger and Jerry A. Davis (in their |

1 ORANGE COUNTY BOARD OF
SUPERVISORS and Bill Campbell (in his
2 official capacity and individually) ; THE
SAN BERNARDINO COUNTY BOARD
3 OF SUPERVISORS and Neil F. Derry and
George Watson (in their official capacities
4 and individually); UDR, INC. and Thomas
W. Toomey, Warren L. Troupe, Richard A.
5 Giannotti, Mark J. Sandler, Matthew T.
Akin, Mark L. Culwell, Jr., David L.
6 Messenger and Jerry A. Davis (in their
official capacities and individually);
7 WESTERN RESIDENTIAL, INC. and
UDR VILLA VENETIA APARTMENTS,
8 LP and Melissa Hurtado, Tracy Saffos,
Karissa Harmon and Debi Froude (in their
9 official capacities and individually); PARSA
LAW GROUP, APC., NATIONAL LOAN
10 MODIFICATION CENTER, INC.; JAMES
M. PARSA & ASSOCIATES, APC; and
11 James M. Parsa, Arash Dastmalchi, Michael
Ponzillo and Roya Rohani (in their official
12 capacities and individually); STARBUCKS,
INC. and Paula E. Boggs, Krista Osborne
13 and Dena Davis (in their official capacities
and individually); THE SOLUTION LAW
14 GROUP, LLC,; SOLUTION
PROCESSING, LLC and Jeffrey A.
15 Cancilla and Craig M. Laverty (in their
official capacities and individually);
16 TRAUT LAW GROUP and Eric V. Traut
and James Traut (in their official capacities
17 and individually); BURKHALTER,
KESSLER, GOODMAN & GEORGE LLP
18 and Alton G. Burkhalter, Daniel J. Kessler,
Eric J. Goodman, Gregory C. Clement,
19 David A. Berstein, Nicholas D. Myers,
Nicholas P. Kohan, Rosamund Lockwood,
20 and M. Masha Rohani (in their official
capacities and individually);
21 BURKHALTER, KESSLER, MICHAELS
& GEORGE LLP; BURKHALTER,
22 KESSLER, CLEMENT & GEORGE LLP;
GOODMAN MOONEY BERSTEIN LLP
23 and Eric J. Goodman and David A. Berstein
(in their official capacities and individually);
24 MYERS LEGAL LLP and Nicholas D.
Myers (in his official capacity and
25 individually); THE ORANGE COUNTY
DISTRICT ATTORNEY'S OFFICE and
26 Tony Rackauckas, Joseph D'Antonio and
Elizabeth Henderson (in their official
27 capacities and individually); THE SAN
BERNARDINO DISTRICT ATTORNEY's
28 OFFICE and Michael Ramos, Laura Robles,

7.  CONSPIRACY (TO DEFRAUD; TO BREACH FIDUCIARY DUTY & TO ENGAGE IN MALICIOUS PROSECUTION

8.  FALSE IMPRISONMENT & ARREST

9,  ASSAULT & BATTERY (BATTERY BY A PEACE OFFICER; ASSAULT BY PRIVATE CITIZEN UNIVESTIGATED)

10.   EMOTIONAL DISTRESS

11.   CLAIMS UNDER CALIFORNIA CIVIL CODE §52.1 "THE BANE ACT."

12.  CLAIMS UNDER CALIFORNIA PENAL CODE §182

13.  FOR DISQUALIFICATION OF THE ORANGE COUNTY PUBLIC DEFENDER'S OFFICE, THE ORANGE COUNTY ALTERNATE DEFENDER'S OFFICE & THE ORANGE COUNTY ASSOCIATE DEFENDER'S OFFICE & DEMAND FOR HARRIS COUNSEL

14.  FAILURE TO SUPERVISE

1  |  William Gale, Melinda Spencer, Timothy
Dixon, Jonathan Robbins and Dennis
2  |  Christy (in their official capacities and
individually);   THE ORANGE COUNTY
3  |  PUBLIC DEFENDER's OFFICE and
Deborah Kwast, Jean Wilkinson, Denise
4  |  Gragg, Martin Schwarz, and Jennifer
Nicolalde (in their official capacities and
5  |  individually); THE SAN BERNARDINO
PUBLIC DEFENDER and Doreen Boxer,
6  |  Geoffrey Canty, Jeffrey Lawrence, Mark
Shoup, Eric Teti and Kawika Smith (in their
7  |  official capacities and individually); THE
ORANGE COUNTY SHERIFF'S
8  |  DEPARTMENT, Orange County Superior
Court Division and Sandra Hutchens; THE
9  |  SAN BERNARDINO COUNTY
SHERIFF'S DEPARTMENT and Rodney
10  |  Hoops, Gregory Garland, Jay Blankenship,
Lori Bachelor, Erroll Bechtel, Douglas
11  |  Wolfe, Bryan Lane, Christopher Allen,
Jeremy King, Christopher Morsch,
12  |  Alexander Collins, James Wijnhamer,
Michael McCracken, Michael Broadhurst,
13  |  Brian Shedd, Deputy Jablonsky, Deputy
Massey, Deputy M. Sanchez, Deputy Long;
14  |  Deputy S. Shipley (in their official
capacities and individually);THE SAN
15  |  BERNARDINO COUNTY DEPARTMENT
OF PUBLIC HEALTH and Doug Smith and
16  |  Kelly Papp; THE CITY OF BIG BEAR
LAKE and Rick T. Herrick, Elizabeth A.
17  |  Harris, William E. Jahn, Michael Karp,
Darrell Mulvihill (in their official capacities
18  |  and individually); TODD A. BRISCO &
ASSOCIATES APC and Todd A. Brisco
19  |  and Cynthia S. Poer (in their official
capacities and individually);
20  |  AUTOMATTIC, INC., WORDPRESS and
Matthew Mullenweg, Toni Schneider, and
21  |  Scott G. Dettmer (in their official capacities
and individually); TYPEPAD, INC;
22  |  MARILYN A. MOBERG; JASON L.
CROW; KEITH D. WHITE; PATRICIA A.
23  |  WHITE; MICHAEL ESTRADA, JR.;
MICHAEL P. DOLAN; VALERIE
24  |  COFSKY; JOHN ELERDING, GAIL-
NEALE ELERDING, YOLANDA
25  |  PETERSON; JANE HEWITT; RONALD
LANDERS; CHARLES KIMBALL, DARA
26  |  WEINER; as individuals; and DOES 1
through 200, inclusive,
27  |
28  |

Defendants.

- 3 -

## A.   INTRODUCTION AND SUMMARY

1.      Plaintiff is a *pro se* litigant, not by choice, but by necessity, based on financial limitations as well as a shortage of attorneys willing to represent a plaintiff in any case where the California State Bar is a defendant.  However, Plaintiff is an experienced civil litigation paralegal and requests that the Court set aside any potential prejudice against *pro se* litigants, so Plaintiff may have unfettered access to federal court for redress of violations of her constitutional rights.

2.      Plaintiff is a dedicated consumer and tenant advocate.  She is also a *bona fide* journalist and blogger whose sole objective and purpose has always been the presentation of free, factual, truthful, fully-researched, and legally-substantiated reports to help consumers and tenants avoid fraud.

3.      This action is a claim for redress of intentional, malicious, retaliatory and reckless violations of Plaintiff's civil rights protected by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States (and corollary rights of the California Constitution).  The redress sought is governed by 42 U.S.C. §§1983, 1985 and 1986:

> *"Civil action for deprivation of rights:  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable..."*

4.      On August 9, 2011 Plaintiff received a telephone call at 2:24 p.m. from one of the primary public officials and most egregious defendants  included in this claim, Orange County Superior Court Judge Franz E. Miller.  The call was placed by his courtroom assistant, a roll call was not taken, and as such, it is unclear whether other parties were present.

5.      During said call Judge Miller threatened to release a bench warrant for Plaintiff's arrest that he had issued shortly before placing said telephone call.  Plaintiff attempted to ask Judge Miller questions but he refused to answer stating, "I can't answer those

- 4 -

1  questions because you are represented by counsel," to which Plaintiff replied, "I assume my

2  public defender is present," to which there was no response. However, Judge Miller asked

3  Plaintiff questions that Plaintiff refused to answer as did his courtroom assistant. Judge Miller

4  threatened Plaintiff that he would release the bench warrant if she did not personally appear in

5  his courtroom on August 16, 2011 at 1:30 p.m.

6.      A hearing scheduled for one hour prior to Judge Miller's call to Plaintiff had

been continued by a mutually-executed stipulation and presented to the Court by Plaintiff's

public defender the day before, August 8, 2011. Plaintiff relied on that fact and did not appear.

For unknown reasons, Judge Miller denied the stipulation and continuance and ordered parties

to appear at the scheduled hearing time of 1:30 p.m.

7.      Plaintiff was made aware of Judge Miller's order to appear by her public

defender <u>via email at 12:50 p.m., forty (40) minutes prior to the hearing</u>, when, under the

circumstances, a telephone call would be warranted. The email stated:

> "I filed our stipulation for a continuance; however, the court would not sign the
> order granting a continuance. The court is requiring our presence at 1:30. I
> advised the clerk that I was not sure whether you would appear since you are
> ill. I advised opposing counsel of the court's decision and both I and opposing
> counsel will be present at 1:30. I am not sure whether you feel well enough to
> call in. I asked for priority so our case will be the first one to be called, so if
> you do call in please make sure to call in right at 1:30. I received this
> information within the last hour and am contacting you as soon as possible.
> Please let me know what you wish to do."

8.      Judge Miller and Plaintiff's public defender know that Plaintiff resides in

Riverside County. By the time she received the email from her public defender, it was too late

to attend. Plaintiff immediately called Judge Miller's department and she was denied

telephonic access to the hearing and told to coordinate her attendance through Court Call.

Court Call would not put Plaintiff through as instructed. One hour later, Plaintiff received

Judge Miller's seeming *ex parte* extrajudicial communication, described supra.

9.      On February 1, 2011, Judge Miller appointed the Orange County Public

Defender  to "represent Plaintiff's legal interests" in a ***civil*** contempt action stemming from the

second of three unconstitutional and strategic lawsuits against public participation (disguised

as state actions for defamation) brought against Plaintiff in 2009. The actual motivation

- 5 -

behind Judge Miller's appointment of public defender was to shield him from exposure and liability for his illegal actions and misconduct. (*See,* Statement of Facts, *infra*).

10.    This action is also a claim under 42 U.S.C. §1985, for redress of intentional, malicious, retaliatory and reckless violations of Plaintiff's civil rights for intentional, reckless and malicious conspiracy to defraud; conspiracy to breach fiduciary duties; and conspiracy to engage in malicious prosecution all with the intent to interfere with Plaintiff's civil rights.

> *"Conspiracy to interfere with civil rights: If two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws."*

11.    This action is also a claim under 42 U.S.C. §1986, for redress of violations of Plaintiff's civil rights by defendants that had a fiduciary duty and responsibility to Plaintiff but breached same by way of intentional, reckless and malicious acts to conceal the above-stated acts of conspiracy and thereby neglected to prevent the ongoing acts of conspiracy, which acts of conspiracy were intended to interfere with Plaintiff's civil rights.

> *"Action for neglect to prevent conspiracy: Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in the preceding section [42 USC § 1985], are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented."*

12.    This Court has original jurisdiction of claims brought under 42 U.S.C. §1983, 1985, and 1986 in accordance with 42 U.S.C. §§1343 and 1367. (*See,* "Jurisdiction," *infra.*)

13.    This action incorporates Defendants' violations against Plaintiff pursuant to California Civil Code §52.1, (known as "The Bane Act") that states:

> *"(a)  If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil*

- 6 -

*action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. ...*

*[Or] .... Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, <u>as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action</u> for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured."*

14.     This action incorporates Defendants' violations against Plaintiff pursuant to California Penal Code section 182:

*"(a) If two or more persons conspire: (1) To commit any crime; (2) Falsely and maliciously to indict another for any crime, or to procure another to be charged or arrested for any crime; (3) Falsely to move or maintain any suit, action, or proceeding; (4) To cheat and defraud any person of any property, by any means which are in themselves criminal, or to obtain money or property by false pretenses or by false promises with fraudulent intent not to perform those promises; or (5) To commit any act injurious to the public health, to public morals, or to pervert or obstruct justice, or the due administration of the laws."*

15.     Plaintiff hereby demands an Injunction under 28 U.S.C. §2283 as it pertains to Orange County Superior Court Case Nos. 30-2009-00117752 and 30-2009-00125305, as well as any other state court actions that may arise to circumvent the fair and equitable judicial proceedings of the herein Complaint.  The text of 28 U.S.C. §2283 is as follows:

*"A court of the United States may not grant an injunction to stay proceedings in a State court <u>except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.</u>"*

16.     Plaintiff hereby demands the disqualification of Judge Franz E. Miller in Orange County Superior Court Case Nos. 30-2009-00117752 and 30-2009-00125305 due to unlawful acts contained in this Complaint and retaliatory threats of arrest and imprisonment made against Plaintiff described, *supra.*

17.     Plaintiff hereby demands the immediate disqualification of the Orange County Public Defender's Office, the Orange County Alternative Public Defender's Office, and the Orange County Associate Public Defender's Office as counsel of record for Plaintiff in Orange County Superior Court Case Nos. 30-2009-00117752 and 30-2009-00125305 due to unlawful

- 7 -

1  acts contained in this Complaint and complicity in retaliatory threats of arrest and

2  imprisonment made against Plaintiff described, *supra.*

3       18.    Pursuant to 42 U.S.C. §2000e-5(e), Plaintiff demands the appointment of

4  private counsel without cost to Plaintiff and at Plaintiff's discretion:

5       *"Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and*

6       *may authorize the commencement of the action without the payment of fees, costs, or security."*

7

8  (See, *Harris v. Walgreen's Distribution Center*, 456 F.2d 588 (1972))

9       19.    Plaintiff hereby demands a jury trial.

10       20.    Plaintiff hereby demands an order of the court to command Defendants in this

11  action to turn over all Brady evidence and any and all other exculpatory evidence intentionally

12  withheld from Plaintiff, as well as all personal property belonging to Plaintiff unlawfully

13  seized by Defendants on or about June 19, 2009 and February 25, 2010 with the express

14  purpose of preventing Plaintiff from asserting her affirmative defenses in legal actions against

15  her as well as mounting a legal defense on her own behalf.

     21.    Plaintiff hereby demands attorney and expert fees under 42 U.S.C. §1988.

16       22.    In bringing this claim, Plaintiff will demonstrate that her constitutional rights

17  were violated by Defendants acting under color of law, and that such Defendants are not

18  immune from liability for said acts. Defendants in this action are state, county, and local

19  public entities and officials and/or employees of said entities acting under color of law in their

20  official capacities ***and*** acting independent of their official capacities, as individuals.

21       23.    Also, Defendants in this action are private parties who have acted in collusion

22  with the aforesaid public entities, officials and employees and as such, also acted under color

23  of law. In *Dennis v. Sparks*, 449 U.S. 24 (1980), the United States Supreme Court held that

24  private parties in collusion with public entities, officials and employees, also act under color of

25  law for the purposes of claims under 42 U.S.C §1983:

26       *"Private persons, jointly engaged with state officials in a challenged action, are acting "under color" of law for purposes of 1983 actions. And the judge's*

27       *immunity from damages liability for an official act that was allegedly the product of a corrupt conspiracy involving bribery of the judge does not change*

28       *the character of his action or that of his co-conspirators."*

24.     The public entities, officials and employees, named as Defendants herein, have intentionally, maliciously and recklessly failed and continue to fail to discharge mandatory duties imposed by law and said failure has caused extreme injury to Plaintiff.   California Government Code §815.6 states:

> *"Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty, unless the public entity establishes that it exercised reasonable diligence to discharge the duty."* (Also, *see, Dennis v. Sparks,* 449 U.S. 24 (1980)

25.     Since January of 2009, Plaintiff's constitutional rights have been under attack by defendants named in this action to silence her reports that exposed, among other things:

a.     the intentional, malicious and reckless acts and liability of the California State Bar (and its members, board, executives and employees), the California Department of Real Estate (and its members, board, executives and employees), and others associated with these two entities acting together to defraud consumers in foreclosure;

b.     the intentional, malicious and reckless acts and liability of publicly-traded, Colorado-based, landlord and real estate investment trust, UDR, Inc. (and its board, executives and employees) and others associated with this entity acting together to defraud its California tenants;

c.     the intentional, malicious and reckless acts and liability of public entities and officials of San Bernardino County, Orange County, and the City of Big Bear Lake acting together with those named in (a) and (b), *supra*; and

d.     the intentional, malicious and reckless acts and liability of private parties acting together with those named in (a), (b), and (c), *supra*.

26.     Plaintiff's early reports focused on facts surrounding the "California Foreclosure Consultants' Act" (codified in California Civil Code §§2945, *et seq.)* enacted to protect vulnerable consumers in foreclosure:

> *"§2945 (a):  The Legislature finds and declares that homeowners whose residences are in foreclosure are subject to fraud, deception, harassment, and unfair dealing by foreclosure consultants from the time a Notice of Default is*

- 9 -

1
2

> recorded pursuant to Section 2924 until the time surplus funds from any
> foreclosure sale are distributed to the homeowner or his or her successor. ...

3
4
5
6

> (c) The intent and purposes of this article are the following: (1) To require that
> foreclosure consultant service agreements be expressed in writing; <u>to safeguard</u>
> <u>the public against deceit and financial hardship</u>; to permit rescission of
> foreclosure consultation contracts; to prohibit representations that tend to
> mislead; and to encourage fair dealing in the rendition of foreclosure
> services."

7       27.     Plaintiff's reports constituted matters of public concern and as such, were

8    protected under the First Amendment.  Plaintiff was the first journalist to discover what she

9    coined the "attorney loophole," a gross legislative oversight contained within the California

10   Foreclosure Consultants Act.  The "loophole" allowed attorneys to take fees in advance; but

11   excluded real estate and mortgage agents and brokers.  Thousands of California consumers lost

12   their homes as a result of intentional fraud and collusion between attorney members of the

13   California State Bar and real estate and mortgage members of the California Department of

14   Real Estate.  The "loophole" was contained in California Civil Code §2945.4:

15
16
17

> "It shall be a violation for a foreclosure consultant to: (a) Claim, demand,
> charge, collect, or receive any compensation until after the foreclosure
> consultant has fully performed each and every service the foreclosure
> consultant contracted to perform or represented that he or she would perform";

18       and in California Civil Code §2945.1:

19
20

> "(b)  A foreclosure consultant does not include any of the following: (1)  A
> person licensed to practice law in this state when the person renders service in
> the course of his or her practice as an attorney at law."

21       28.     Plaintiff discovered and reported that as a direct result of the "loophole,"

22   members of the California Department of Real Estate began associating with members of the

23   California State Bar to circumvent the law prohibiting them from collecting fees in advance.

24   Plaintiff vigorously reported on these facts to inform consumers in foreclosure of these facts

25   because the "law firms" (actually run with no lawyers on staff) lacked the requisite legal

26   knowledge and experience to competently assert the affirmative defenses required to

27   successfully negotiate a loan modification with a bank or lender.

28

29.    She also reported on how these associations violated the California State Bar Rules of Professional Conduct, Rule 1-320, prohibiting attorneys from sharing legal fees with non-attorneys, and how this fact could ultimately interfere with consumer restitution.

30.    Plaintiff reported about how these faux "loan modification law firms" acted under the law license of a California-licensed attorney in name only, they contracted with consumers using "legal retainer fee agreements," and held themselves out to the public as attorneys so they could collect fees in advance.  They solicited and advertised using methods in violation of California State Bar Rules of Professional Conduct, Rule 1-400, and work was performed by inexperienced and untrained foreclosure consultants in violation of California Civil Code §2945.4 (set forth, *supra*).

31.    In addition, Plaintiff reported about the "No Objection List" maintained on the California Department of Real Estate website which held out to vulnerable consumers in foreclosure that the members identified on the list had been "screened" and thereafter given a letter stating that the California Department of Real Estate did not "object to them taking fees in advance."  This list further exacerbated the fraud against consumers because no screening process existed and the list included members whom the California Department of Real Estate knew to have disciplinary issues including "cease and desist orders," revoked and suspended licenses, and other interim disciplinary actions.  Seemingly, the only screening requirement was the financial efficacy of the applicant to pay the fee.  This lack of screening coupled with the verifiable endorsement of the California Department of Real Estate held catastrophic results for consumers in foreclosure looking for a legitimate solution.  The knowledge of this fraud by the California Department of Real Estate was demonstrated by the tiny footnoted waiver at the end of the list claiming that the California Department of Real Estate assumed no liability for the conduct of the members of the list.

32.    Many consumers lost their homes as a result of the above-stated associations and Plaintiff reported countless stories of hardship and profiled the offenders to warn consumers.  She also publicly demanded that the California State Bar and the California Department of Real Estate act to abate the damage it was creating.  However, instead of acting to prevent further damage, it took measures to protect their members by intentionally,

- 11 -

1  recklessly and maliciously "pointing the finger" elsewhere while doing everything in their

2  power to conceal Plaintiff's reports and destroy Plaintiff's credibility and security.

3      33.     The California State Bar and the California Department of Real Estate failed

4  utterly to discharge their mandatory duty to not only discipline and/or prosecute its members

5  for violations of its own rules, but to refrain from conduct that created harm to recipients of the

6  services of its members.  As such, they are liable to consumers without immunity and are

7  liable to Plaintiff for two and one-half years of constant civil and criminal tactics to prevent

8  Plaintiff from exercising her constitutional right to distribute information about a matter of

9  public concern to consumers in foreclosure to circumvent the fraud.

10     34.     Plaintiff also gathered names of consumers defrauded by these faux loan

11  modification associations and on their behalf, began to draft a Writ of Mandate to demand

12  restitution by the California State Bar's consumer protection division, the "Client Security

13  Fund," and the California Department of Real Estate's consumer protection division, the

14  "Recovery Account."  This is when tactics against Plaintiff intensified to a full-scale attack

15  because the reality of The California State Bar and the California Department of Real Estate

16  shouldering the enormous financial liability for its actions would have likely destroyed these

17  two agencies.  This motivated their actions against Plaintiff and the California State Bar and

18  the California Department of Real Estate called upon judges, investigators, attorneys, law

19  enforcement, and others to help them carry out their plans which make up the list of

20  Defendants in this action.

21     35.     Included in the group of attorneys associating with non-attorneys were James

22  Parsa of Parsa Law Group, James M. Parsa & Associates, National Loan Modification Center,

23  *et seq.;* and Jeffrey Cancilla and Craig Laverty of Solutions Law Group and Solutions

24  Processing, *et seq.*  Plaintiff warned consumers about these attorneys and their faux loan

25  modification law firms and in retaliation, Plaintiff was sued in Orange County Superior Court

26  for defamation in case numbers 30-2009-00117752 and 30-2009-00126004.  Each one of

27  these attorneys has either been suspended from the practice of law or has involuntarily

28  rendered their license inactive.  Everything Plaintiff wrote about them in her attempt to warn

consumers was true, and proven as such by California State Bar disciplinary actions.

- 12 -

36.     Second, Plaintiff authored truthful, factual, researched and legally-substantiated reports about the unlawful California leases of her (then) landlord, real estate investment trust, UDR, Inc. and began forming a class action lawsuit on behalf of UDR's California tenants. Forty percent (40%) of UDR's $500 million annual revenue is generated by its California portfolio of apartment communities due the unjust enrichment (ill-gotten gains) collected by UDR, Inc. by way of illegal clauses contained in its residential lease agreements. Among others, the illegal clauses are as follows:

a.     In violation of California Civil Code §1671, UDR charges early lease termination fees clause (also known as "liquidated damages") as a penalty against tenants and collects said penalties at the rate of 2-1/4 times the tenant's base rent when it is **_not_** impossible for UDR to determine an accurate range of loss for the early termination of a fixed term lease. UDR is unjustly enriched by collecting double rent for 50 of the 68 days paid by the tenants upon move-out.

b.     In violation of California Civil Code §§1671 and 3302, and California case law in *Orozco v. Casimiro* (121 Cal.App.4th Supp. 7), UDR overstates its late fees (also known as "liquidated damages") when California Civil Code §3302 specifically states that the late fee amount cannot exceed the standard interest rate of 10% of the base rent (non-compounded) or 1/3650th of the base rent.   UDR is unjustly enriched by collecting late fees in excess of California state law.

c.     In violation of California Civil Code §1962, UDR fails to state the proper legal name of the apartment community or agent for service of process on its residential lease agreements as a conscious and intentional act to diminish tenant-based litigation. UDR is unjustly enriched by unlawful omissions that interfere in its tenants' constitutional right to redress grievances in a court of competent jurisdiction.

d.     In violation of California Public Utilities Code §§2701-2714.5, UDR illegally profits from its Ratio Utility Billing System (RUBS)  because tenants are required to pay their utilities to a private corporation.  UDR, among other things, charges tenants to use laundry facilities **_and_** to provide the water to said laundry facilities; to irrigate common areas;

- 13 -

1    to pay for utilities for vacant apartments, and so on. UDR is unjustly enriched by selling water

2    without obtaining lawful registration and certification as a public utility.

3              e.    In violation of California Civil Code §1668, UDR uses illegal "hold

4    harmless" clauses in its leases to defer injury liability to its tenants. UDR is unjustly enriched

5    by failing to discharge its mandatory and fiduciary duty to its tenants to maintain safe

6    premises, thereby avoiding legal liability for same.

7              f.    In violation of California Civil Code §§1941 and 1941.1, UDR fails to

8    maintain habitable premises including, but not limited to, broken or faulty heating, inadequate

9    hot water, leaking windows and doors, problems with electricity and electrical wiring, broken

10   or faulty plumbing, rats, mice, rodents, roaches, and toxic mold. UDR is unjustly enriched by

11   failing to discharge its mandatory and fiduciary duty to its tenants to maintain habitable

     premises, thereby avoiding legal liability for same.

12        37.   As a direct and proximate result of Plaintiff reporting these violations of law as

13   a service to California tenants, UDR towed, then sold her car, evicted her, seized all her

14   property, sued her for defamation, and is presently acting in collusion with Judge Miller to

15   incarcerate her for civil contempt of a permanent injunction it unlawfully obtained from Judge

16   Miller.

17        38.   Since January of 2009, Plaintiff's constitutional rights have been under attack

18   by defendants named in this action to silence her truthful reports. Between January and July,

19   2009, the attacks on Plaintiff's constitutional rights included six civil lawsuits that were

20   brought against Plaintiff in retaliation for exposing unlawful activities for the benefit of

21   consumers and tenants. Said litigation was solely for the purpose of silencing Plaintiff's

22   constitutionally protected speech.

23             a.    On January 26, 2009, a loan modification law firm that was

24   intentionally, maliciously and recklessly defrauding consumers in foreclosure filed a strategic

25   lawsuit against public participation against Plaintiff (disguised as an action for defamation) to

26   prevent her from writing reports about its unlawful activities. *Parsa Law Group, APC v. Bad

27   Biz Finder, Erin Baldwin, et al.,* Orange County Superior Court Case No. 30-2009-00117752.
     *(More details provided in "Statement of Facts," infra.)*

28

- 14 -

b.      On February 17, 2009, Plaintiff's then landlord, UDR, filed an unlawful detainer action against Plaintiff in retaliation for her reports about its unlawful activities, described, *supra*. *UDR Villa Venetia Apartments LLP v. Erin K. Baldwin*, Orange County Superior Court Case No. 30-2009-00244203. *(More details provided in "Statement of Facts," infra.)*

c.      On March 3, 2009, Plaintiff's then landlord, UDR, filed a second unlawful detainer action against Plaintiff in retaliation for her reports about its unlawful activities because the first one (like this one) failed to state an action for which relief could be granted. UDR Villa Venetia Apartments LLP v. Erin K. Baldwin, Orange County Superior Court Case No. 30-2009-00248999. *(More details provided in "Statement of Facts," infra.)*

d.      On June 29, 2009, thirteen (13) days after forcibly evicting Plaintiff by surprise ***and*** ten (10) days after seizing the entire contents of her apartment, UDR hired the same law firm that brought the Parsa Law Group case, and filed its own strategic lawsuit against public participation against Plaintiff to prevent her from writing reports about its unlawful activities. *UDR, Inc. v. Erin K. Baldwin, et al.*, Orange County Superior Court Case No. 30-2009-00125305. *(More details provided in "Statement of Facts," infra.)*

e.      On July 13, 2009, another loan modification law firm that was intentionally, maliciously and recklessly defrauding consumers in foreclosure hired Parsa Law Group and UDR's law firm and filed a strategic lawsuit against public participation against Plaintiff to prevent her from writing reports about its unlawful activities. *Solutions Law Group, Solutions Processing, Jeffrey A. Cancilla, Craig Laverty, et al. v. Erin K. Baldwin, et al.,* Orange County Superior Court Case No. 30-2009-00126004. *(More details provided in "Statement of Facts," infra.)*

f.      On July 20, 2009, another loan modification law firm that was intentionally, maliciously and recklessly defrauding consumers in foreclosure filed a strategic lawsuit against public participation against Plaintiff to prevent her from writing reports about its unlawful activities. *Traut Law Group v. Erin K. Baldwin, et al.,* Orange County Superior Court Case No. 30-2009-00126328. *(More details provided in "Statement of Facts," infra.)*

- 15 -

39.     On July 21, 2009, Plaintiff moved from Costa Mesa to Big Bear to start over as she was at that point homeless, carless, and penniless, with no property.  On or about August 6, 2009, Plaintiff contacted UDR in Colorado to inquiry about the return of her property.  Unbeknownst to Plaintiff, UDR recorded the call and traced her whereabouts.  Three days later, on August 9, 2009, Plaintiff was served with legal documents in Big Bear.

40.     From that point on, Defendants exacerbated its actions against Plaintiff from civil retaliatory acts to criminal retaliatory act, and offered incentives to private parties to aid in their efforts.  The criminal acts during this period of time includes:

a.     On September 17, 2009, a false report was filed against Plaintiff for assault and battery.  Big Bear Sheriffs investigated the claim and left the scene without issuing a citation against Plaintiff, and stated in their report, "***claimant is HNB [drunk] and causing problems***." *(More details provided in "Statement of Facts" infra.)*

b.     On September 19, 2009, an assault was committed against Plaintiff in Starbucks in Big Bear Lake.  Big Bear Sheriffs investigated the claim and recommended that Plaintiff obtain a restraining order against the perpetrators.  After the fact, Plaintiff could not file an application for a temporary restraining order because the Big Bear Sheriffs and Starbucks refused to provide Plaintiff with incident reports and the videotape surveillance footage she requested and required. *(More details provided in "Statement of Facts" infra.)*

c.     On September 23, 2009, a false citizen's arrest warrant was filed against Plaintiff by perpetrators of the assault described in "b," *supra*, on behalf of the alleged victim of the assault and battery described in "a," *supra,* without the alleged victim's knowledge or consent.  The motivation of this false citizen's arrest warrant was to mitigate their assault against Plaintiff described in "b," *supra*.  One of these perpetrators is a convicted felon, ex-convict, resulting in a highly-restricted real estate license that feared the consequences of his actions.  As such, he used his personal relationship with the Big Bear Sheriffs to prevent whatever actions he believed Plaintiff might take against him. *(More details provided in "Statement of Facts" infra.)*

d.     Also, on September 23, 2009, the Big Bear Sheriffs violated Plaintiff's constitutional rights by performing an unlawful search and seizure against Plaintiff on the

- 16 -

1   force of the false citizen's arrest described in "c," *supra. (More details provided in "Statement*
2   *of Facts" infra.)*

3              e.      Following the unlawful search and seizure described in "d," *supra*, the
4   Big Bear Sheriffs issued Plaintiff a "Notice to Appear" for the crime of battery in connection
5   with the September 17, 2009 incident, described in "a," *supra*, even though the sheriffs on the
6   scene that day found Plaintiff at no fault whatsoever and blamed the intoxication of the
7   claimant for the false report. *(More details provided in "Statement of Facts" infra.)*

8              f.      On September 29, 2009, false charges of harassment were filed against
9   Plaintiff by perpetrators of the assault described in "b," *supra*, and to further mitigate said
10  assault and their false citizen's arrest described in "c," *supra*, which led to an unlawful search
11  and seizure described in "d," *supra*, which led to a "Notice to Appear" described in "e," *supra*,
12  against Plaintiff for an alleged crime for which she had already been exonerated. *(More details*
    *provided in "Statement of Facts" infra.)*

13             g.      On October 5-6, 2009, an Application for a Temporary Restraining
14  Order was filed and issued against Plaintiff by perpetrators of the assault described in "b,"
15  *supra*, to further mitigate their assault as well as the false citizen's arrest described in "c,"
16  *supra*, which led to an unlawful search and seizure described in "d," *supra*, which led to a
17  "Notice to Appear" described in "e," *supra*, which led to false charges of harassment described
18  in "f," *supra*, which they claims formed the basis of a *prima facie* case for civil harassment.
19  *(More details provided in "Statement of Facts" infra.)*

20             h.      On October 8, 2009, Plaintiff was picked up and imprisoned in the Big
21  Bear Sheriff substation under suspicion of making "an annoying telephone call," in connection
22  with the false charges of harassment described in "e," *supra*, which later was the subject of the
23  temporary restraining order issued on October 6, 2009 against Plaintiff, described in "g,"
24  *supra. (More details provided in "Statement of Facts" infra.)*

25             i.      During the period October 8-9, 2009, Plaintiff was brutally beaten,
26  burned and threatened by five (5) male and one (1) female Big Bear Sheriff deputies while in
27  custody at the Big Bear Sheriff substation jail and suffered severe injuries. *(More details*
    *provided in "Statement of Facts" infra.)*
28

- 17 -

j.     On October 9, 2009, while imprisoned at the Big Bear Sheriff substation, Plaintiff was served with the Temporary Restraining Order issued on October 6, 2009 and described in "g," *supra*, by the same sheriff deputy with whom the perpetrators shared a personal relationship. *(More detail provided in "Statement of Facts" infra.)*

k.     Also on October 9, 2009, Plaintiff was transferred to West Valley Detention Center, booked and processed although she was never informed of the charges. Plaintiff was released after injuries sustained as a result of the incident described in "i," *supra*, were evaluated by the jail's nurse who demanded her release to seek medical care.*(More details provided in "Statement of Facts" infra.)*

l.     On October 10, 2009, Plaintiff sought emergency medical care at Bear Valley Community Hospital and the emergency room nurse reported the beating of Plaintiff to the on-duty Big Bear Sheriff watch commander. Plaintiff later obtained a medical report corroborating her injuries. *(More details provided in "Statement of Facts" infra.)*

m.     On October 28, 2009, in connection with Plaintiff's beating in custody described in "i," *supra*, the San Bernardino District Attorney filed charges <u>against Plaintiff</u> including two counts of battery on a peace officer, resisting arrest, giving false information and violating a court order all allegedly stemming from incidents that occurred on <u>October 8, 2009</u>. However, the court order referred to in the District Attorney's charges against Plaintiff had not been served on Plaintiff until <u>October 9, 2009</u> as described in "j," *supra*. The Complaint in *The People of the State of California v. Erin K. Baldwin*, San Bernardino County Superior Court Case No. MSB906348, contained altered dates that the charges occurred on October 17, 2009, not October 8, 2009. This was intentional prosecutorial misconduct to conceal the fact that the District Attorney had filed a charge against Plaintiff that could not have occurred on October 8, 2009 (violating a court order) due to the fact that it wasn't served on Plaintiff until October 9, 2009. *(More details provided in "Statement of Facts" infra.)*

n.     On October 28, 2009, a Permanent Restraining Order was issued against Plaintiff on behalf of the same perpetrators of the assault described in "b," *supra*, the false citizen's arrest described in "c," *supra*, which led to an unlawful search and seizure described in "d," *supra*, and a "Notice to Appear" for battery described in "e," *supra*, and a false

- 18 -

1   application for a temporary restraining order described in "g," *supra*, which led to Plaintiff's

2   false arrest and imprisonment described in "h," *supra*, which led to Plaintiff's brutal beating in

3   custody described in "i," *supra*, which led to criminal charges being filed against her as

4   described in "l," *supra*. *(More details provided in "Statement of Facts" infra.)*

5           o.      On January 25, 2009, Plaintiff (acting as her own attorney) filed a

6   Pitchess Motion in MSB906348 to open the personnel files of the sheriff deputies that battered

7   her in custody as described in "i," *supra*. The judge did not deny the motion but required

8   Plaintiff to re-file and re-serve it on the proper custodian of records for the San Bernardino

9   County Sheriff's Department which Plaintiff made known was to occur on February 25, 2010.

10  *(More details provided in "Statement of Facts" infra.)*

11          p.      Also on January 25, 2009, the San Bernardino District Attorney filed

12  formal charges against Plaintiff for battery in connection with the alleged battery that took

13  place on September 17, 2009 (for which Plaintiff was exonerated) as described in "a," *supra*,

14  until perpetrators filed a false citizen's report as described and "c," *supra*, which led to a

15  Notice to Appear on December 1, 2009 that Plaintiff attended where she was arraigned for the

16  crime of battery without a Complaint having ever been filed against her. *The People of the*

17  *State of California v. Erin K. Baldwin*, San Bernardino County Superior Court Case No.

18  MSB905837. *(More details provided in "Statement of Facts" infra.)*

19          q.      On February 24, 2010, Plaintiff's neighbor brought her to DOVES, a

20  domestic violence agency in Big Bear, for assistance with threats of violence, intimidation and

21  erratic behavior of her platonic roommate. That night, in retaliation, the platonic roommate

22  attempted to break down Plaintiff's bedroom door and Plaintiff summoned the Big Bear

23  Sheriffs. The sheriffs that appeared on the scene failed to act to protect Plaintiff; rather

24  threatened Plaintiff with, "If we have to come out here again, we're going to arrest *you*."

25  *(More details provided in "Statement of Facts" infra.)*

26          r.      The next morning on February 25, 2010 (the date Plaintiff made public she

27  was to re-file and re-serve her Pitchess Motion), Plaintiff's roommate filed a false report of

28  assault against Plaintiff. The Big Bear Sheriffs arrived on the scene and falsely arrested and

    imprisoned Plaintiff for felony assault with a deadly weapon with no evidence, witnesses, or

- 19 -

probable cause. *The People of the State of California v. Erin K. Baldwin*, San Bernardino County Superior Court Case No. FSB1000789. (*More details provided in "Statement of Facts" infra.*)

s.    Plaintiff was arrested on the force of a $5,000 Orange County civil bench warrant issued by Judge Franz E. Miller on August 31, 2009 in connection with a hearing in the Parsa Law Group case for Plaintiff's failure to appear at a civil contempt hearing for which she was not timely noticed. After Plaintiff had been falsely imprisoned for thirty-five (35) days, the District Attorney dismissed San Bernardino County Superior Court Case No. FSB1000789. At some point during her incarceration, Plaintiff's personal property was once again seized. *(More detail provided in "Statement of Facts," infra.)*

t.    During Plaintiff's period of incarceration (February 25 – March 28, 2010) she was not timely arraigned, never received a preliminary hearing, was never formally charged with a crime, her bail was set at ten times the statutory guideline ($500,000.00); and she experienced gross retaliatory and ineffective assistance of counsel by the San Bernardino County Public Defender's Office who made no mistake about their utter disdain for her. (*More details provided in "Statement of Facts" infra.*)

u.    Also during Plaintiff's incarceration, the San Bernardino County District Attorney lied to the judge that Plaintiff was also in custody on the charges cited in San Bernardino County Superior Court Case Nos. MSB906348 and MSB905837, the two cases for which Plaintiff was acting as her own attorney out of custody. The trials on these two cases were nearing and Plaintiff was denied access to the law library except for one occasion at which time she filed a Motion for Continuance in San Bernardino County Superior Court Case Nos. MSB906348 and MSB905837. *(More details provided in "Statement of Facts" infra.)*

v.    On March 11, 2010, while Plaintiff was incarcerated and without her knowledge, domestic violence charges were filed against Plaintiff and a restraining order was issued by the perpetrator of the false report on February 25, 2010 as described in "q," supra in retaliation for Plaintiff reporting domestic violence to a Big Bear agency as described in "p," supra.   *Jason Crow v. Erin Baldwin*, San Bernardino County Superior Court Case No. FAMHS1000015.   *(More details provided in "Statement of Facts" infra.)*

- 20 -

w.  On March 26, 2010, while Plaintiff was incarcerated and without her knowledge, an application for a Criminal Protective Order was filed and issued against Plaintiff by perpetrators of the assault described in "b," supra; the false citizen's arrest as described in "c," supra; the unlawful search and seizure as described in "d," supra; the false charges of harassment as described in "e," supra; the false filing of an Application for Temporary Restraining Order as described in "g," supra, the issuance of service of same as described in "j,"supra, and the application and issuance of a permanent restraining order as described in "m," supra. *(More detail provided in "Statement of Facts" infra.)*

41.  On August 31, 2010, criminal contempt charges (disguised as ***civil*** contempt) were filed against Plaintiff in connection with alleged violations of the Permanent Injunction issued in the Parsa Law Group case on June 2, 2009. *(More details provided in "Statement of Facts" infra.)*

42.  On November 16, 2010, criminal contempt charges (disguised as ***civil*** contempt) were filed against Plaintiff in connection with alleged violations of the Permanent Injunction in the UDR case dated December 11, 2009. *(More details provided in "Statement of Facts" infra.)*

43.  This outrageous volume of legal actions against Plaintiff was intentional and malicious and all began in the beginning of 2009 to silence Plaintiff's reports about (a) the liability and collusion of the California State Bar and California Department of Real Estate to intentionally defraud consumers; and (b) the illegal California residential lease agreements of UDR, Inc. to intentionally defraud its tenants.

44.  Finally, under the Doctrine of Unclean Hands, all actions filed against Plaintiff and all orders in connection with same are void *ab initio*.  California has long recognized the maxim that:

> ***No one can take advantage of his own wrong***." (Civ. Code. § 3517.)

45.  Put another way:

> ***"He who comes into equity must come with clean hands."***

(See, *Wilson v. S.L. Rey, Inc.* (1993) 17 Cal. App.4th 234, 244; and *Kendall-Jackson Winery, Ltd v. Superior Court* (1999) 76 Cal. App.4th 970, 978.)

- 21 -

46. The foundation of the Unclean Hands Doctrine was elucidated in *Kendall-Jackson Winery, Ltd v. Superior Court* (1999) 76 Cal. App.4th 970, 978:

> *"The unclean hands doctrine protests judicial integrity and promotes justice. It protects judicial integrity because allowing a plaintiff with unclean hands to recover in an action creates doubts as to the justice provided by the judicial system. Thus, precluding recovery to the unclean plaintiff protects the courts, rather than the opposing parties' interest. The doctrine promotes justice by making a plaintiff answer for its own misconduct in the action. It prevents "a wrongdoer from enjoying the fruits of his transgression." [At p.p. 978-970.]*

> *"A plaintiff [must] act fairly in the matter for which he seeks a remedy. He must come into court with clean hands, and keep them clean, or he will be denied relief, regardless of the merits of his claim." [At p. 979].*

> *'The defense of unclean hands applies to legal as well as equitable actions."* [At p. 978].

47. At least one recent California case suggests the defense of unclean hands <u>may be submitted to the jury.</u> (Fuller-Austin Insulation Company v. Highlands Insurance Company (2006) 135 Cal.App.4th 958, 974.)

48. The Court in Dickson, Carlson & Campillo v. Pole (2000) 83 Cal. App. 4th 436, 446 held:

> *"A plaintiff's inequitable conduct in connection with the matter in controversy <u>provides a complete defense to the plaintiff's action.</u> ... Conduct is sufficient to constitute unclean hands if it "violates conscience, or good faith, or other equitable standards of conduct."*

49. The Court in *Fladeboe v. American Isuzu Motors, Inc.* (2007) 150 Cal.App.4th 42, 56. held:

> *"The Doctrine of Unclean Hands also applies to <u>bad faith conduct by the plaintiff</u> in connection with the matter in controversy."*

50. California Courts have long recognized that ***<u>fraud in the underlying transaction or other inequitable conduct bars relief</u>***. (See, *Powell v. Bank of Lemoore* (1899) 125 Cal. 468; *Jose v. Utley* (1921) 185 Cal. 656; *London v. Marco* (1951) 103 Cal. App. 2nd 450.)

- 22 -

COMPLAINT FOR MONEY DAMAGES, DECLARATORY & INJUNCTIVE RELIEF FOR 42 U.S.C. §1983 CLAIMS, ETC. (AGTG)

**B.     JURISDICTION, IMMUNITY, STATUTE OF LIMITATIONS & VENUE**

**JURISDICTION**

51.     Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-50 of this Complaint.

52.     <u>Federal Question Jurisdiction</u>:   Plaintiff claims violations of her First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights and privileges set forth in the United States Constitution.   Accordingly, this action is properly brought in district court in accordance with 28 USC §1331, as follows:

> *"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."*

53.     <u>Diversity Jurisdiction</u>:   Plaintiff claims damages in excess of $75,000.00, is a citizen of the state of California, and Defendants in this action include corporations and litigants maintaining citizenship, states of incorporation, and principal places of business in the states of Maryland, Virginia, Colorado and Washington. Accordingly, this action is properly brought in district court in accordance with diversity jurisdiction set forth in 28 U.S.C. §1332, as follows:

> *"The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States."*

54.     <u>Claims Under 42 U.S.C. §1983</u>:   This Court has original jurisdiction of claims brought under 42 U.S.C. §1983 in accordance with 42 U.S.C. §§1343 and 1367.

55.     <u>Section 1343 states</u>:

> *The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:*

> *(a) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;*

> *(b) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;*

> *(c) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the*

- 23 -

*Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;*

*(d) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.*

56.    Section 1367 states:

*"The district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."*

57.    In *Pitts v. County of Kern* (1998) (17 Cal.4th 340, 348 [70 Cal.Rptr.2d 823, 949 P.2d 920]), the Court held: *"Section 1983 claims may be brought in either state or federal court."*

## IMMUNITY

58.    Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-57 of this Complaint.

59.    Plaintiff brings claims against public official defendants in both their official and individual capacities:

*"Besides authorizing official capacity suits against state and local officials for structural injunctive relief, 42 U.S.C. § 1983 authorizes claims against those officials in their individual capacity for compensatory and punitive damages. Although, the Eleventh Amendment limits official capacity claims against state officials to prospective injunctive relief, it does not affect damage claims against those officials in their individual capacity."*  (Hafer v. Melo, 502 U.S. 21, 29-30 (1991) and Scheuer v. Rhodes, 416 U.S. 232, 237 (1974).)

60.    By its terms, Section 1983 imposes liability *without defense* on state and local officials who, acting under color of law in their *individual* capacity, deprive plaintiffs of rights created by the Constitution and federal law.

61.    The United States Supreme Court, created *absolute and qualified immunity* for state and local officials who, acting under color of law in their *official* capacity, deprive plaintiffs of rights created by the Constitution and federal law.

*"Implicit in the idea that officials have some immunity -- absolute or qualified - - for their acts, is a recognition that they may err. The concept of immunity assumes this and goes on to assume that it is better to risk some error and*

- 24 -

1    *possible injury from such error than not to decide or act at all. .  [Davis v.*
     *Scherer, 468 U.S. 183 (1984) at 241-42]*

2

3        62.    However, in the herein case, there was no "errors," the actions of state and local

4    officials in this case were intentional, reckless, retaliatory and malicious.

5        63.    The Supreme Court held in *Stump v. Sparkman* that judges have absolute

6    immunity from Section 1983 damage actions for their "judicial" acts.  *Stump v. Sparkman*,

7    435 U.S. 349 (1978). The Court permitted liability only for acts taken ***"in the clear absence of***

8    ***all jurisdiction."*** (*Stump*, 435 U.S. at 357. *Mireles v. Waco*, 502 U.S. 9, 12 (1991); see also

9    *Bradley v. Fisher*, 80 U.S. 335, 341 (1 Wall 1871)) In *Bradley*, the Court illustrated the

10   distinction between lack of jurisdiction and excess of jurisdiction with the following examples:

11       *"If a probate judge, with jurisdiction over only wills and estates, should try a*
         *criminal case, he would be acting in the clear absence of jurisdiction and*
12       *would not be immune from liability for his action; on the other hand, if a judge*
         *of a criminal court should convict a defendant of a nonexistent crime, he would*
13       *merely be acting in excess of his jurisdiction and would be immune. Id., at*
         *352."*

14       64.    Like judicial immunity, prosecutorial immunity is functional; it attaches only to

15   acts intimately related to the initiation and prosecution of a criminal case.  A prosecutor who

16   suborns perjury at a criminal trial is absolutely immune, a prosecutor who manufactures false

17   evidence does not enjoy absolute immunity. The former performs a prosecutorial function by

18   presenting evidence, while the latter performs a police investigatory function by gathering

19   evidence. (*Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).) But if the prosecutor swears

20   under oath to false statements of fact in the information, he becomes a complaining witness

21   rather than a prosecutor and, like a complaining witness at common law, is not entitled to

22   absolute immunity. (*Kalina v. Fletcher*, 522 U.S. 118 (1997))

23       65.    The United States Supreme Court has held that qualified immunity can shield

24   individual officials ***only*** when they are performing discretionary (as opposed to mandatory)

25   activities.  And even then, qualified immunity cannot shield conduct that violates "clearly

26   established statutory or constitutional rights of which a reasonable person would have known."

27   (See, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

28

- 25 -

66.     A government official is entitled to qualified immunity unless his "act is so obviously wrong, in the light of preexisting law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." (*Lassiter v. Alabama A & M University Board of Trustees*, 28 F.3d 1146 (11th Cir. 1994)(*en banc*) and *Ensley v. Soper*, 142 F.3d 1402, 1406 (11th Cir. 1998).

67.     A public defender does not act "under color of state law" for purpose of 42 U.S.C §1983 "when performing traditional functions as counsel for the defendant in a criminal prosecution." (See *Polk County v. Dodson*, 454 U.S. 312, 321-22 (1981). ***However, in this case, Defendant Orange County Public Defender's Office and multiple individual public defender defendants were not "performing traditional functions as counsel for the defendant in a criminal prosecution."***   Rather, said defendants were performing highly nontraditional functions so much so that Plaintiff's public defender, Jennifer Nicolalde remarked, "Yours is the first civil contempt matter handled by this office [the Orange County Public Defender's Office]; don't you feel special?"

68.     In an attempt to intentionally defraud Plaintiff and deprive her of her constitutional rights, the Orange County Public Defender's Office and multiple individual public defenders continuously and consistently misrepresented to Plaintiff that the proceeding for which they were appointed was civil contempt adjudicated under California Code of Civil Procedure §1218, *et seq.* when, in fact, it was criminal contempt.  This misrepresentation was made in an intentional and malicious attempt to prevent Plaintiff from exercising her constitutional rights as a criminal defendant.

69.     The United States Supreme Court has held that local governments have no immunity from damages flowing from their constitutional violations and may not assert the good faith of its agents as a defense to liability. (See, *Owen v. City of Independence, MO*, 445 U.S. 621 (1980) and *Monell v. Dept. of Social Services of New York*, 436 U.S. 658, 699-700 (1978)) and that state law sovereign immunity and state law limitations on damages do not protect local governments from liability under claims arising under 42 U.S.C. §1983. (See, *Howlett v. Rose*, 496 U.S. 356 (1990) and *Hamm v. Powell*, 874 F.2d 766, 770 (11th Cir. 1989)).

- 26 -

70. The United States Supreme Court has held that state laws requiring pre-suit notification prior to initiating an action against the state or its subdivisions do not apply in claims arising under 42 U.S.C. §1983. (See, *Felder v. Casey*, 487 U.S. 131 (1988)).

71. Historically at common law, judicial immunity does not insulate from damages liability those private persons who corruptly conspire with a judge. Nor has the doctrine of judicial immunity been considered historically as excusing a judge from responding as a witness when his co-conspirators are sued, even though a charge of conspiracy and judicial corruption will be aired and decided.

72. *Gravel v. United States*, 408 U.S. 606, distinguished: "The potential harm to the public from denying immunity to co-conspirators if the factfinder mistakenly upholds a charge of a corrupt conspiracy is outweighed by the benefits of providing a remedy [449 U.S. 24, 25] against those private persons who participate in subverting the judicial process and in so doing inflict injury on other persons."

73. As described more fully herein, Defendants, acting in concert with other known and unknown co-conspirators, conspired by concerted actions to accomplish an unlawful purpose by an unlawful means. In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity. Said facts eliminate their immunity under the law.

## STATUTE OF LIMITATIONS

74. Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-73 of this Complaint.

75. "The Reconstruction Civil Rights Act did not contain a statute of limitations for Section 1983 Actions and it is appropriate to adopt a local time limitation so long as it is not inconsistent with federal law." (*Board of Regents v. Tomanio*, 446 U.S. 478, 483 (1980).)

76. The Supreme Court has held that "Section 1983 is best characterized as a tort action for the recovery of damages, and therefore held that the appropriate statute of limitations to be adopted is the state statute applicable to personal injury actions." (Two years in California and three years for fraud.) (See, *Wilson v. Garcia*, 471 U.S. 261 (1985).

- 27 -

77.     But accrual of the statute of limitations is governed by federal law, while tolling of the statute of limitations is governed by state law. (See, *Mullinax v. McElhenney*, 817 F.2d 711, 716 n.2 (11th Cir. 1987); *Hardin v. Straub*, 490 U.S. 536 (1989); and *Owens v. Okure*, 488 U.S. 235 (1989).)

<u>**VENUE**</u>

78.     Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-77 of this Complaint.

79.     Venue is proper in the United States District Court, Central District of California, Riverside Courthouse.  This courthouse covers federal claims for the counties of Riverside and San Bernardino.  Plaintiff is a citizen of the County of Riverside and the majority of defendants in this action are citizens of the County of San Bernardino.  The fact that some of the defendants of other counties does not prohibit Plaintiff from filing the herein action in Riverside County.

**C.      PARTIES TO THE ACTION**

80.     Plaintiff realleges and incorporates herein by reference the allegations set forth in paragraphs 1-79 of this Complaint.

81.     Plaintiff ERIN K. BALDWIN (hereinafter referred to as "Plaintiff") is a citizen and resident of the County of Riverside, State of California, United States of America.

82.     Defendant THE STATE BAR OF CALIFORNIA  (hereinafter referred to as "Defendant State Bar") is a statutory public corporation within the judicial branch of the California state government.

83.     Defendant BOARD OF GOVERNORS OF THE STATE BAR OF CALIFORNIA (hereinafter referred to as "Defendant State Bar Board") is the governing body of Defendant State Bar.   Defendant State Bar Board is a public body and its records are writings of a public agency of the State of California.

84.     Defendant ROBERT A. HAWLEY(hereinafter referred to as "Defendant Hawley")  is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Attorney Hawley acted in his capacity as Executive Director of the California State Bar, and acted  under color of state law.  In addition, at all

- 28 -

times material to the allegations in this Complaint, Defendant Attorney Hawley acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 83530) who, under oath, on or about November 29, 1978, swore to uphold the laws of the State of California.  Plaintiff seeks action against Defendant Attorney Hawley in both his official and individual capacities.

85.    Defendant PAUL T. O'BRIEN (hereinafter referred to as "Defendant Attorney O'Brien") is a citizen and resident of State of California.  At all times material to the allegations in this Complaint, Defendant Attorney O'Brien acted in his capacity as Attorney for Defendant State Bar, and acted under color of state law.  In addition, at all times material to the allegations in this Complaint, Defendant Attorney O'Brien acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 171252) who, under oath, on or about June 21, 1994, swore to uphold the laws of the State of California.  Plaintiff seeks action against Defendant O'Brien in both his official and individual capacities.

86.    Defendant JOHN NOONEN (hereinafter referred to as "Defendant Noonen") is a citizen and resident of the State of California.  At all times material to the allegations in this Complaint, Defendant Noonen acted in his capacity as Investigator for Defendant State Bar, and acted under color of state law. .Plaintiff seeks action against Defendant Noonen in both his official and individual capacities.

87.    Defendant THOMAS LAYTON (hereinafter referred to as "Defendant Layton") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Layton acted in his capacity as Investigator for Defendant State Bar, and acted under color of state law.  Plaintiff seeks action against Defendant Layton in both his official and individual capacities.

88.    Defendant THE CALIFORNIA DEPARTMENT OF REAL ESTATE (hereinafter referred to as "Defendant DRE"), is a public agency of the State of California.

89.    Defendant JEFF DAVI (hereinafter referred to as "Defendant Davi")  is a citizen and resident of the State of California.  At all times material to the allegations in this Complaint, Defendant Davi acted in his capacity as Commissioner for Defendant DRE,  and

- 29 -

1   acted under color of state law. Plaintiff seeks action against Defendant Davi in both his

2   official and individual capacities.

3       90.    Defendant DIONNE YOUNG (hereinafter referred to as "Defendant Young")

4   is a citizen and resident of the State of California. At all times material to the allegations in

5   this Complaint, Defendant Young acted in his capacity as Deputy Commissioner for the

6   California Department of Real Estate, and acted under color of state law. Plaintiff seeks

7   action against Defendant Young in both his official and individual capacities.

8       91.    Defendant ERIK DUCKWORTH (hereinafter referred to as "Defendant

9   Duckworth") is a citizen and resident of the State of California. At all times material to the

10  allegations in this Complaint, Defendant Duckworth acted in his capacity as Deputy

    Commissioner for the California Department of Real Estate, and acted under color of state

11  law. Plaintiff seeks action against Defendant Duckworth in both his official and individual

12  capacities.

13      92.    Defendant COUNTY OF ORANGE (hereinafter referred to as "Defendant

14  Orange County") is a County of the State of California.

15      93.    Defendant THOMAS MAUK (hereinafter referred to as "Defendant Mauk") is

16  a citizen and resident of the State of California. At all times material to the allegations in this

17  Complaint, Defendant Mauk acted in his capacity as County Executive Officer for the County

18  of Orange, State of California, and acted under color of state law. Plaintiff seeks action

19  against Defendant Mauk in both his official and individual capacities.

20      94.    Defendant NICHOLAS CHRISOS (hereinafter referred to as "Defendant

21  Chrisos") is a citizen and resident of the State of California. At all times material to the

22  allegations in this Complaint, Defendant Chrisos acted in his capacity as County Counsel for

23  the County of Orange, State of California, and acted under color of state law. In addition, at

24  all times material to the allegations in this Complaint, Defendant Chrisos acted as an officer of

25  the court in his capacity as a California-licensed attorney (California State Bar License No.

26  70442) who, under oath, on or about December 22, 1976, swore to uphold the laws of the State

27  of California. Plaintiff seeks action against Defendant Chrisos in both his official and

28  individual capacities.

- 30 -

95.    Defendant COUNTY OF SAN BERNARDINO (hereinafter referred to as "Defendant San Bernardino County") is a County of the State of California.

96.    Defendant GREGORY C. DEVEREAUX (hereinafter referred to as "Defendant Devereaux") is a citizen and resident of the State of California.  At all times material to the allegations in this Complaint, Defendant Devereaux acted in his capacity as County Executive Officer for the County of San Bernardino, State of California, and acted  under color of state law.  Plaintiff seeks action against Defendant Devereaux in both his official and individual capacities.

97.    Defendant JEAN-RENE BASLE (hereinafter referred to as "Defendant Basle") is a citizen and resident of the State of California.  At all times material to the allegations in this Complaint, Defendant Basle  acted in his capacity as County Counsel for the County of San Bernardino, State of California, and acted  under color of state law.  In addition, at all times material to the allegations in this Complaint, Defendant Basle acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 134107) who, under oath, on or about June 14, 1988, swore to uphold the laws of the State of California.  Plaintiff seeks action against Defendant Basle  in both his official and individual capacities.

98.    Defendant RUTH STRINGER (hereinafter referred to as "Defendant Stringer") is a citizen and resident of the State of California.  At all times material to the allegations in this Complaint, Defendant Stringer acted in her capacity as County Counsel for the County of San Bernardino, State of California, and acted  under color of state law.  In addition, at all times material to the allegations in this Complaint, Defendant Stringer acted as an officer of the court in her capacity as a California-licensed attorney (California State Bar License No. 103563) who, under oath, on or about June 16, 1982, swore to uphold the laws of the State of California.  Plaintiff seeks action against Defendant Stringer  in both her official and individual capacities.  Defendant Stringer retired in 2011 and has been replaced by County Counsel, Jean-Rene Basle.

99.    Defendant ORANGE COUNTY SUPERIOR COURT (hereinafter referred to as "Defendant OCSC") is a Superior Court of the State of California for the County of Orange.

- 31 -

1    100.    Defendant JUDGE DAVID A. THOMPSON (hereinafter referred to as

2    "Defendant Judge Thompson") is a citizen and resident of the State of California.  At all times

3    material to the allegations in this Complaint, Defendant Judge Thompson acted in his official

4    capacity as Presiding Judge, Superior Court of the State of California, County of Orange,

5    Central Justice Center, in Santa Ana, California, and acted under color of state law.  Plaintiff

6    seeks action against Defendant Judge Thompson in both his official and individual capacities.

7    101.    Defendant JUDGE FRANZ E. MILLER (hereinafter referred to as "Defendant

8    Judge Miller") is a citizen and resident of the State of California.  At all times material to the

9    allegations in this Complaint, Defendant Judge Miller acted in his official capacity as Superior

10   Court Judge, Superior Court of the State of California, County of Orange, Central Justice

11   Center, in Santa Ana, California, and acted under color of state law.  Plaintiff seeks action

     against Defendant Judge Miller in both his official and individual capacities.

12   102.    Defendant JUDGE STEVEN L. PERK (hereinafter referred to as "Defendant

13   Judge Perk") is a citizen and resident of the State of California.  At all times material to the

14   allegations in this Complaint, Defendant Judge Perk acted in his official capacity as Superior

15   Court Judge, Superior Court of the State of California, County of Orange, Central Justice

16   Center, in Santa Ana, California, and acted under color of state law.  Plaintiff seeks action

17   against Defendant Judge Perk in both his official and individual capacities.

18   103.    Defendant JUDGE DEREK G. JOHNSON (hereinafter referred to as

19   "Defendant Judge Johnson") is a citizen and resident of the State of California.  At all times

20   material to the allegations in this Complaint, Defendant Judge Johnson acted in his official

21   capacity as a Superior Court Judge, Superior Court of the State of California, County of

22   Orange, Harbor Justice Center, in Newport Beach, California, and acted under color of state

23   law.  Plaintiff seeks action against Defendant Judge Johnson in both his official and individual

24   capacities.

25   104.    Defendant JUDGE CRAIG E. ROBISON (hereinafter referred to as "Defendant

26   Judge Robison") is a citizen and resident of the State of California.  At all times material to the

27   allegations in this Complaint, Defendant Judge Robison acted in his official capacity as

28   Superior Court Judge, Superior Court of the State of California, County of Orange, Harbor

- 32 -

1   Justice Center, in Newport Beach, California.  Plaintiff seeks action against Defendant Judge

2   Robison in both his official and individual capacities.

3       105.    Defendant JUDGE KAREN L. ROBINSON (hereinafter referred to as

4   "Defendant Judge Robinson") is a citizen and resident of the State of California.  At all times

5   material to the allegations in this Complaint, Defendant Judge Johnson acted in her official

6   capacity as Superior Court Judge, Superior Court of the State of California, County of Orange,

7   Harbor Justice Center, in Newport Beach, California, and acted under color of state law.

8   Plaintiff seeks action against Defendant Judge Robinson in both her official and individual

9   capacities.

10      106.    Defendant COMMISSIONER RICHARD E. PACHECO (hereinafter referred

11  to as "Defendant Commissioner Pacheco") is a citizen and resident of the State of California.

12  At all times material to the allegations in this Complaint, Defendant Commissioner Pacheco

13  acted in his official capacity as as a Superior Court Commissioner, Superior Court of the State

14  of California, County of Orange, Harbor Justice Center, in Newport Beach, California, and

15  acted under color of state law.  Plaintiff seeks action against Defendant Commissioner Pacheco

16  in both his official and individual capacities.

17      107.    Defendant STACIE E. TURNER (hereinafter referred to as "Defendant

18  Turner") is a citizen and resident of the State of California.  At all times material to the

19  allegations in this Complaint, Defendant Turner acted in her official capacity as Clerk to Judge

20  Franz E. Miller, Department C-14, of the Superior Court of the State of California, County of

21  Orange, Central Justice Center, in Santa Ana, California, and acted under color of state law.

22  Plaintiff seeks action against Defendant Turner in both her official and individual capacities.

23      108.    Defendant KELLI BELTRAN (hereinafter referred to as "Defendant Beltran")

24  is a citizen and resident of the State of California.  At all times material to the allegations in

25  this Complaint, Defendant Beltran acted in her official capacity as Operations Officer of the

26  Superior Court of the State of California, County of Orange, Central Harbor Justice Center, in

27  Newport Beach, California and West Justice Center in Laguna Niguel, California, and acted

28  under color of state law.  Plaintiff seeks action against Defendant Beltran in both her official

    and individual capacities.

- 33 -

109.    Defendant SAN BERNARDINO SUPERIOR COURT (hereinafter referred to as "Defendant SBSC") is a State of California Superior Court with eight judicial districts located in Barstow, Big Bear, Chino, Fontana, Joshua Tree, Needles, Rancho Cucamonga, and San Bernardino serving the County of San Bernardino  Its mission statement is, *"Our Court exists to preserve and protect rights and to effect fair resolutions of all disputes brought to the Court."*

110.    Defendant JUDGE RONALD M. CHRISTIANSEN (hereinafter referred to as "Defendant Judge Christiansen") is a citizen and resident of the State of California.  At all times material to the allegations in this Complaint, Defendant Judge Christiansen acted in his official capacity as Superior Court Judge, Superior Court of the State of California, County of San Bernardino, San Bernardino District Courthouse, in San Bernardino, California, and acted under color of state law.  Plaintiff seeks action against Defendant Judge Christiansen in both his official and individual capacities.

111.    Defendant JUDGE MICHAEL DEST (hereinafter referred to as "Defendant Judge Dest") is a citizen and resident of the State of California.  At all times material to the allegations in this Complaint, Defendant Judge Dest acted in his official capacity as Superior Court Judge, Superior Court of the State of California, County of San Bernardino, San Bernardino District Courthouse, in San Bernardino, California, and acted under color of state law.  Plaintiff seeks action against Defendant Judge Dest in both his official and individual capacities.

112.    Defendant JUDGE KYLE BRODIE (hereinafter referred to as "Defendant Judge Brodie") is a citizen and resident of the State of California.  At all times material to the allegations in this Complaint, Defendant Judge Brodie acted in his official capacity as Superior Court Judge, Superior Court of the State of California, County of San Bernardino, San Bernardino District Courthouse, in San Bernardino, California, and acted under color of state law.  Plaintiff seeks action against Defendant Judge Brodie in both his official and individual capacities.

113.    Defendant JUDGE STEVEN C. MALONE (hereinafter referred to as "Defendant Judge Malone") is a citizen and resident of the State of California.  At all times

- 34 -

1   material to the allegations in this Complaint, Defendant Judge Malone acted in his official

2   capacity as Superior Court Judge, Superior Court of the State of California, County of San

3   Bernardino, Victorville District Courthouse, in Victorville, California, and acted under color of

4   state law.  Plaintiff seeks action against Defendant Judge Malone in both his official and

5   individual capacities.

6       114.   Defendant JUDGE GILBERT OCHOA (hereinafter referred to as "Defendant

7   Judge Ochoa") is a citizen and resident of the State of California.  At all times material to the

8   allegations in this Complaint, Defendant Judge Ochoa acted in his official capacity as Superior

9   Court Judge, Superior Court of the State of California, County of San Bernardino, Big Bear

10  District Courthouse, in Big Bear Lake, California, and acted under color of state law.  Plaintiff

    seeks action against Defendant Judge Ochoa in both his official and individual capacities.

11      115.   Defendant JUDGE DONNA GARZA-GUNNELL (hereinafter referred to as

12  "Defendant Judge Garza-Gunnell") is a citizen and resident of the State of California.  At all

13  times material to the allegations in this Complaint, Defendant Judge Garza-Gunnell acted in

14  her official capacity as Superior Court Judge, Superior Court of the State of California, County

15  of San Bernardino, San Bernardino District Courthouse, in San Bernardino, California, and

16  acted under color of state law.  Plaintiff seeks action against Defendant Judge Garza-Gunnell

17  in both her official and individual capacities.

18      116.   Defendant JUDGE KENNETH R. BARR (hereinafter referred to as "Defendant

19  Judge Barr") is a citizen and resident of the State of California.  At all times material to the

20  allegations in this Complaint, Defendant Judge Barr acted in his official capacity as Superior

21  Court Judge, Superior Court of the State of California, County of San Bernardino, San

22  Bernardino District Courthouse, in San Bernardino, California, and acted under color of state

23  law.  Plaintiff seeks action against Defendant Judge Barr in both his official and individual

24  capacities.

25      117.   Defendant JUDGE THOMAS S. GARZA (hereinafter referred to as

26  "Defendant Judge Garza") is a citizen and resident of the State of California.  At all times

27  material to the allegations in this Complaint, Defendant Judge Garza acted in his official

28  capacity as Superior Court Judge, Superior Court of the State of California, County of San

- 35 -

1   Bernardino, San Bernardino District Courthouse, in San Bernardino, California, and acted

2   under color of state law.  Plaintiff seeks action against Defendant Judge Garza in both his

3   official and individual capacities.

4       118.    Defendant ORANGE COUNTY BOARD OF SUPERVISORS (hereinafter

5   referred to as "Defendant OCBS")  is a public agency of the County of Orange, State of

6   California.

7       119.    Defendant BILL CAMPBELL (hereinafter referred to as "Defendant

8   Campbell")  is a citizen and resident of the State of California.  At all times material to the

9   allegations in this Complaint, Defendant Campbell acted in his official capacity as Orange

10  County Supervisor for the County of Orange, State of California, and acted under color of state

11  law.  Plaintiff seeks action against Defendant Campbell in both his official and individual

12  capacities.

13      120.    Defendant SAN BERNARDINO COUNTY BOARD OF SUPERVISORS

14  (hereinafter referred to as "Defendant SBBS")   is a public agency of the County of San

    Bernardino, State of California.

15      121.    Defendant, NEIL DERRY (hereinafter referred to as "Defendant Derry"), is a

16  citizen and resident of the State of California.  At all times material to the allegations in this

17  Complaint, Defendant Derry acted in his capacity as San Bernardino County Supervisor for

18  the County of San Bernardino, State of California, and acted under color of state law.  Plaintiff

19  seeks action against Defendant Supervisor Derry in both his official and individual capacities.

20      122.    Defendant GEORGE WATSON (hereinafter referred to as "Defendant

21  Watson") is a citizen and resident of the State of California.  At all times material to the

22  allegations in this Complaint, Defendant Watson acted in his capacity as Chief of Staff for San

23  Bernardino County Supervisor, Defendant Supervisor Derry, for the County of San

24  Bernardino, State of California, and acted under color of state law.  Plaintiff seeks action

25  against Defendant Watson in both his official and individual capacities.

26      123.    Defendant, UDR, INC. (hereinafter referred to as "Defendant UDR") is a

27  Maryland Corporation, publicly-traded on the New York Stock Exchange (NYSE:UDR), and

28  maintains its principal place of business in the state of Colorado.

- 36 -

124. Defendant THOMAS W. TOOMEY (hereinafter referred to as "Defendant Twoomey") is a citizen and resident of the State of Colorado, and was at all times material to the allegations in this Complaint, acting in his capacity as Defendant UDR's Chief Executive Officer and President, and acted under color of state law in collusion with public officials named in the herein Complaint. Plaintiff seeks action against Defendant Toomey in both his official and individual capacities.

125. Defendant WARREN L. TROUPE (hereinafter referred to as "Defendant Troupe") is a citizen and resident of the State of Colorado, and was at all times material to the allegations in this Complaint, acting in his capacity as Defendant UDR's Senior Executive Vice President, and acted under color of state law in collusion with public officials named in the herein Complaint. Plaintiff seeks action against Defendant Troupe in both his official and individual capacities.

126. Defendant RICHARD A. GIANNOTTI (hereinafter referred to as "Defendant Giannotti") is a citizen and resident of the State of Colorado, and was at all times material to the allegations in this Complaint, acting in his capacity as Defendant UDR's Executive Vice President of Redevelopment, and acted under color of state law in collusion with public officials named in the herein Complaint. Plaintiff seeks action against Defendant Giannotti in both his official and individual capacities.

127. Defendant MARK J. SANDLER (hereinafter referred to as "Defendant Sandler") is a citizen and resident of the State of Colorado, and was at all times material to the allegations in this Complaint, acting in his capacity as Defendant UDR's Senior Vice President, and acted under color of state law in collusion with public officials named in the herein Complaint. Plaintiff seeks action against Defendant Sandler in both his official and individual capacities.

128. Defendant MATTHEW T. AKIN (hereinafter referred to as "Defendant Akin") is a citizen and resident of the State of Colorado, and was at all times material to the allegations in this Complaint, acting in his capacity as Defendant UDR's Senior Vice President of Acquisitions & Dispositions, and acted under color of state law in collusion with public officials named in the herein Complaint. Plaintiff seeks action against Defendant Akin in both

- 37 -

his official and individual capacities.

129. Defendant MARK L. CULWELL, JR. (hereinafter referred to as "Defendant Culwell") is a citizen and resident of the State of Colorado, and was at all times material to the allegations in this Complaint, acting in his capacity as Defendant UDR's Senior Vice President of Development, and acted under color of state law in collusion with public officials named in the herein Complaint. Plaintiff seeks action against Defendant Culwell in both his official and individual capacities.

130. Defendant DAVID L. MESSENGER (hereinafter referred to as "Defendant Messenger") is a citizen and resident of the State of Colorado, and was at all times material to the allegations in this Complaint, acting in his capacity as Defendant UDR's Senior Vice President, Chief Financial Officer and Custodian of Records, and acted under color of state law in collusion with public officials named in the herein Complaint. Plaintiff seeks action against Defendant Messenger in both his official and individual capacities.

131. Defendant JERRY A. DAVIS (hereinafter referred to as "Defendant Davis") is a citizen and resident of the State of Colorado, and was at all times material to the allegations in this Complaint, acting in his capacity as Defendant UDR's Senior Vice President of Property Operations, and acted under color of state law in collusion with public officials named in the herein Complaint. Plaintiff seeks action against Defendant Davis in both his official and individual capacities.

132. Defendant WESTERN RESIDENTIAL, INC. (hereinafter referred to as "Defendant Western Residential") is a California Corporation, Entity No. C3094507, filed on March 4, 2008, incorporated in the State of Virginia. Defendant Western Residential's principal place of business is 1745 Shea Center Drive, Suite 200, Highlands Ranch, Colorado 80129. Defendant Western Residential's agent for service of process is CT Corporation System located at 818 West Seventh Street, Los Angeles, California 90017.

133. Defendant TRACY L. SAFFOS (hereinafter referred to as "Defendant Saffos") is a citizen of the State of Florida. At all times material to the allegations in this Complaint, Defendant Saffos was a citizen and resident of the state of California and acted in her capacity as Defendant UDR/Defendant Western Residential's Vice President and Area Director for

- 38 -

1  Defendant UDR apartment communities located in California, Arizona, Washington, and
2  Oregon, and maintained her office in Newport Beach, California.  Defendant Saffos was *the*
3  *only representative* of Defendant UDR to participate in Defendant UDR claims, and acted
4  under color of state law in collusion with public officials named in the herein Complaint.  .
5  Plaintiff seeks action against Defendant Saffos in both her official and individual capacities.

6  134.   Defendant UDR VILLA VENETIA APARTMENTS, L.P., (hereinafter referred
7  to as "Defendant UDR Villa Venetia") is a California Limited Partnership registered with the
8  California Secretary of State, Entity No. 200427800034, formed on September 28, 2004, and
9  is currently an Active Limited Partnership.  Defendant UDR Villa Venetia was formed in the
10  state of Delaware and its principal place of business is located at 400 East Cary Street,
11  Richmond, Virginia 23219.  Defendant UDR Villa Venetia's agent for service of process is CT
12  Corporation System (C0168406) although no address is set forth in the official record.

13  135.   Defendant MELISSA HURTADO, (hereinafter referred to as "Defendant
14  Hurtado") is a citizen and resident of the State of California.  At all times material to the
15  allegations in this Complaint, Defendant Hurtado was Defendant UDR Villa Venetia's
16  Community Manager in Costa Mesa, California, and acted under color of state law in collusion
17  with public officials named in the herein Complaint.  Plaintiff seeks action against Defendant
  Hurtado in both her official and individual capacities.

18  136.   Defendant KARISSA G. HARMON, (hereinafter referred to as "Defendant
19  Harmon") is a citizen and resident of the State of California.  At all times material to the
20  allegations in this Complaint, Defendant Harmon was Defendant UDR Villa Venetia's
21  Assistant Community Manager in Costa Mesa, California, and acted under color of state law in
22  collusion with public officials named in the herein Complaint.  Plaintiff seeks action against
23  Defendant Harmon in both her official and individual capacities.

24  137.   Defendant DEBI S. FROUDE (hereinafter referred to as "Defendant Froude"),
25  is a citizen and resident of the State of California.  At all times material to the allegations in
26  this Complaint, Defendant Froude was Defendant UDR Villa Venetia's Leasing Agent in
27  Costa Mesa, California, and acted under color of state law in collusion with public officials
28  named in the herein Complaint.  Plaintiff seeks action against Defendant Froude  in both her

- 39 -

1  official and individual capacities.

2      138.  Defendant PARSA LAW GROUP, APC (hereinafter referred to as "Defendant

3  Parsa Law Group"), is currently an active and licensed California Professional Law

4  Corporation, Entity No. C3082463, filed April 16, 2008.  Defendant Parsa Law Group's agent

5  for service of process is Gregory C. Clement, Esq., Burkhalter, Kessler, Goodman & George

6  LLP, located at 2020 Main Street, Suite 600, Irvine, California 92614.  Defendant Parsa Law

7  Group's official primary place of business is 1241 East Dyer Road, Santa Ana, California

8  92705.

9      139.  Defendant NATIONAL LOAN MODIFICATION CENTER , INC. (hereinafter

10  referred to as "Defendant NLMC") is currently a surrendered California Corporation, Entity

11  No. C3053926, filed November 9, 2007.  At all times material to the allegations of this

12  Complaint, Defendant NLMC was an active California Corporation.  Defendant NLMC's

13  agent for service of process is Alton G. Burkhalter, Esq., Burkhalter, Kessler, Goodman &

14  George LLP, located at 2020 Main Street, Suite 600, Irvine, California 92614.  Defendant

15  NLMC's official primary place of business is 3200 Park Center Drive, Suite 1300, Costa

  Mesa, California  92626.

16     140.  Defendant JAMES M. PARSA & ASSOCIATES, A PROFESSIONAL LAW

17  CORPORATION (hereinafter referred to as "Defendant Parsa & Associates"), is currently a

18  suspended California Professional Law Corporation, Entity No. C2178982, filed October 12,

19  1999.  At all times material to the allegations of this Complaint, Defendant Parsa & Associates

20  was an active California Professional Law Corporation.  Defendant Parsa & Associates' agent

21  for service of process is James M. Parsa located at 17822 East 17th Street, Suite 404, Tustin,

22  California 92780.  Defendant Parsa & Associates' official primary place of business is 17822

23  East 17th Street, Suite 404, Tustin, California 92780.

24     141.  Defendant JAMES M. PARSA (hereinafter referred to as "Defendant Parsa") is

25  a citizen and resident of the United States of America.  At all times material to the allegations

26  in this Complaint, Defendant Parsa was a citizen of the County of Orange, State of California.

27  Defendant Parsa is the owner of Defendant Parsa Law Group, the Plaintiff in *Parsa Law*

28  *Group, APC v. Bad Biz Finder, Erin Baldwin, et al.,* Orange County Superior Court Case No.

- 40 -

30-2009-00117752, and acted under color of state law in collusion with public officials named in the herein Complaint. In addition, until October 16, 2009, Defendant Parsa acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 235428) who, under oath, on or about January 10, 2005, swore to uphold the laws of the State of California. However, as a result of two statutory rape convictions, Defendant Parsa was suspended from the practice of law by the California State Bar. Plaintiff seeks action against Defendant Parsa in both his official and individual capacities.

142. Defendant INKOR HOLDINGS, INC. (hereinafter referred to as "Defendant InKor") is currently a forfeited California Corporation, Entity No. C3010746, filed August 7, 2007. At all times material to the allegations of this Complaint, Defendant InKor was an active California Corporation. Defendant InKor's agent for service of process is Alton G. Burkhalter, Esq., Burkhalter, Kessler, Goodman & George LLP, located at 2020 Main Street, Suite 600, Irvine, California 92614. Defendant InKor's official primary place of business is 3200 Park Center Drive, Suite 1300, Costa Mesa, California 92626.

143. Defendant ARASH "ALEX" DASTMALCHI (hereinafter referred to as "Defendant Dastmalchi") is a citizen and resident of the United States of America. At all times material to the allegations in this Complaint, Defendant Dastmalchi was a citizen of the County of Orange, State of California. Defendant Dastmalchi was officially affiliated with Defendant Parsa Law Group, Defendant Parsa, Defendant NLMC and Defendant inKor, as well as other affiliations material to the allegations of this Complaint, and acted under color of state law in collusion with public officials named in the herein Complaint. Plaintiff seeks action against Defendant Dastmalchi in both his official and individual capacities.

144. Defendant MICHAEL PONZILLO (hereinafter referred to as "Defendant Ponzillo") is a citizen and resident of the United States of America. At all times material to the allegations in this Complaint, Defendant Ponzillo was a citizen of the County of Orange, State of California. Defendant Ponzillo was affiliated with Defendant Parsa Law Group, Defendant Parsa, Defendant NLMC and Defendant inKor, as well as other affiliations material to the allegations of this Complaint, and acted under color of state law in collusion with public officials named in the herein Complaint. Plaintiff seeks action against Defendant Ponzillo in

- 41 -

both his official and individual capacities.

145.    Defendant ROYA ROHANI (hereinafter referred to as "Defendant R. Rohani") is a citizen and resident of State of California. At all times material to the allegations in this Complaint, Defendant R. Rohani was employed as an attorney in Defendant Parsa Law Group's law firm, and acted under color of state law in collusion with public officials named in the herein Complaint. In addition, at all times material to the allegations in this Complaint, Defendant R. Rohani acted as an officer of the court in her capacity as a California-licensed attorney (California State Bar License No. 193175) who, under oath, on or about December 8, 1997, swore to uphold the laws of the State of California. However, on September 16, 2005, Defendant R. Rohani was suspended from the practice of law because she failed to pay a lien for fees despite a court order. In May of 2006, Defendant R. Rohani accepted fees in advance to draft a revocable living trust package but failed to perform legal services until her client complained to the Bar. In 2003, Defendant R. Rohani was publicly reproved for a petty theft conviction, but did not comply with probation requirements. She filed quarterly reports late and never completed ethics school or passed the MPRE, as ordered. Plaintiff seeks action against Defendant R. Rohani in both her official and individual capacities.

146.    Defendant STARBUCKS CORPORATION (hereinafter referred to as "Defendant Starbucks"), is a Washington Corporation, Entity No. 600611109, with its principal place of business at 2401 Utah Avenue South, Seattle, Washington 98134-1436. Defendant Starbucks maintains a California Agent for Service of Process, Corporation Service Company Doing Business in California CSC-Lawyers Incorporating Service, 2730 Gateway Oaks Drive, Suite 100, Sacramento, California  95833.

147.    Defendant PAULA BOGGS (hereinafter referred to as "Defendant Boggs") is an Officer (Secretary) of Defendant Starbucks. Defendant Boggs maintains her principal place of business at 2401 Utah Avenue South, Seattle, Washington. At all times material to the allegations in this Complaint, Defendant Boggs acted in her capacity of General Counsel of Defendant Starbucks, and acted under color of state law in collusion with public officials named in the herein Complaint.  Plaintiff seeks action against Defendant Boggs in both her official and individual capacities.

- 42 -

148. Defendant KRISTA OSBORNE (hereinafter referred to as "Defendant Osborne") is a citizen and resident of the State of Washington. At all times material to the allegations in this Complaint, Defendant Osborne was Director, Partner & Asset Protection of Starbucks Coffee Company, and acted under color of state law in collusion with public officials named in the herein Complaint. Plaintiff seeks action against Defendant Osborne in both her official and individual capacities.

149. Defendant DENA DAVIS (hereinafter referred to as "Defendant Davis") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Davis was a District Manager of Starbucks Coffee Company, and acted under color of state law in collusion with public officials named in the herein Complaint. Plaintiff seeks action against Defendant Davis in both her official and individual capacities.

150. Defendant THE SOLUTION LAW GROUP, LLC, (hereinafter referred to as "Defendant Solution Law") is currently an active and licensed California Limited Liability Company, License No. 200905810021, filed February 26, 2009. Defendant Solution Law maintains an agent for service of process at Legal Zoom.com, Inc. (C2967349).

151. Defendant SOLUTION PROCESSING, LLC, (hereinafter referred to as "Defendant Solution Processing") is currently an active and licensed California Limited Liability Company, License No. 200832610169, filed November 20, 2008. Defendant Solution Processing maintains an agent for service of process at CT Corporation System (C0168406).

152. Defendant JEFFREY A. CANCILLA (hereinafter referred to as "Defendant Cancilla") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Laverty was a plaintiff in *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law Group, LLC, and Solution Processing, LLC v. Bad Biz Finder, Erin Baldwin, et al.*, Orange County Superior Court Case No. 30-2009-00126004 and owner of Solution Law Group, LLC and Solution Processing, LLC, and acted under color of state law in collusion with public officials named in the herein Complaint. In addition, at all times material to the allegations in this Complaint, Defendant Laverty acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 235428) who,

- 43 -

1   under oath, on or about January 10, 2005, swore to uphold the laws of the State of California.

2   However, on June 4, 2011, Defendant Cancilla was suspended from the practice of law for

3   accepting fees in advance for loan modification services but not performing the services

4   contracted.  Plaintiff seeks action against Cancilla in both his official and individual capacities.

5          153.    Defendant CRAIG M. LAVERTY (hereinafter referred to as "Defendant

6   Attorney  Laverty") is a citizen and resident of the State of California. At all times material to

7   the allegations in this Complaint, Defendant Laverty was a Plaintiff in *Jeffrey A. Cancilla,*

8   *Craig M. Laverty, Solution Law Group, LLC, and Solution Processing, LLC v. Bad Biz Finder,*

9   *Erin Baldwin, et al.*, Orange County Superior Court Case No. 30-2009-00126004, and acted

10  under color of state law in collusion with public officials named in the herein Complaint. In

11  addition, at all times material to the allegations in this Complaint, Defendant Laverty acted as

12  an officer of the court in his capacity as a California-licensed attorney (California State Bar

13  License No. 176586) who, under oath, on or about June 7, 1995, swore to uphold the laws of

14  the State of California. However, in connection with his misconduct in association with

15  Defendant Cancilla, on January 31, 2011, Defendant Laverty was involuntarily placed on

16  "Inactive" status with Defendant California State Bar.  Plaintiff seeks action against Defendant

    Laverty in both his official and individual capacities.

17         154.    Defendant TRAUT LAW GROUP (hereinafter referred to as "Defendant Traut

18  Law") is currently an active and licensed California Corporation, Entity No. C320113, filed

19  February 13, 2009.  Eric V. Traut is Defendant Traut Law Group's agent for service of process

20  located at the corporation's primary place of business, 200 West Santa Ana Boulevard, Santa

21  Ana, California 92701.

22         155.    Defendant ERIC V. TRAUT (hereinafter referred to as "Defendant E. Traut) is

23  a citizen and resident of the State of California. At all times material to the allegations in this

24  Complaint, Defendant E. Traut was attorney of record and plaintiff in *Traut Law Group v.*

25  *Erin Baldwin, et al.,* Orange County Superior Court Case No. 30-2009-00126328, owns and

26  operates Traut Law Group/The Traut Firm, and acted under color of state law in collusion with

27  public officials named in the herein Complaint.  In addition, at all times material to the

28  allegations in this Complaint, Defendant E. Traut acted as an officer of the court in his

- 44 -

1  capacity as a California-licensed attorney (California State Bar License No. 84839) who, under

2  oath, on or about December 14, 1978, swore to uphold the laws of the State of California.

3  Plaintiff seeks action against Defendant E. Traut in both his official and individual capacities.

4       156.    Defendant JAMES R. TRAUT (hereinafter referred to as "Defendant J. Traut")

5  is a citizen and resident of the State of California. At all times material to the allegations in this

6  Complaint, Defendant J. Traut was attorney of record and Plaintiff in *Traut Law Group v. Erin*

7  *Baldwin*, Orange County Superior Court Case No. 30-2009-00126328, owns and operates The

8  Traut Law Group/The Traut Firm, and acted under color of state law in collusion with public

9  officials named in the herein Complaint.  In addition, at all times material to the allegations in

10  this Complaint, Defendant J. Traut acted as an officer of the court in his capacity as a

11  California-licensed attorney (California State Bar License No. 146644) who, under oath, on or

12  about June 11, 1990, swore to uphold the laws of the State of California. Plaintiff seeks action

   against Defendant Attorney J. Traut in both his official and individual capacities.

13       157.    Defendant BURKHALTER, KESSLER, GOODMAN & GEORGE L.L.P.,

14  (hereinafter referred to as "Defendant BKGG")  is a California Limited Liability Partnership,

15  with its principal place of business at 2020 Main Street, Suite 600, Irvine, California 92614.

16  At all times material to the allegations in this Complaint, Defendant BKGG, was the law

17  firm/attorneys of record for plaintiffs in the following cases against Plaintiff: (a) *Parsa Law*

18  *Group, APC v. Bad Biz Finder, et al.*, OCSC Case No. 00117752, filed January 26, 2009; (b)

19  *UDR, Inc v. Erin K. Baldwin, et al.* OCSC Case No. 00125305, filed June 29, 2009; and (c)

20  *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law Group, LLC, and Solution Processing,*

21  *LLC v. Bad Biz Finder, Erin Baldwin, et al.,* OCSC Case No. 30-2009-00126004, filed July

22  13, 2009.

23       158.    Defendant BURKHALTER, KESSLER, CLEMENT & GEORGE L.L.P.,

24  (hereinafter referred to as "Defendant BKCG") , is a California Limited Liability Partnership,

25  with its principal place of business at  2020 Main Street, Suite 600, Irvine, California 92614.

26  This newly-configured firm recently formed when Partner Eric J. Goodman left the firm to

27  form Goodman Mooney Berstein LLP; and Gregory C. Clement became a partner.  At all

   times material to the allegations in this Complaint, Defendant BKCG, was and is the law

28

- 45 -

firm/attorneys of record for plaintiffs in the following cases against Plaintiff: (a) *Parsa Law Group, APC v. Bad Biz Finder, et al.,* OCSC Case No. 00117752, filed January 26, 2009; (b) *UDR, Inc v. Erin K. Baldwin, et al.* OCSC Case No. 00125305, filed June 29, 2009; and (c) *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law Group, LLC, and Solution Processing, LLC v. Bad Biz Finder, Erin Baldwin, et al.,* OCSC Case No. 30-2009-00126004, filed July 13, 2009.

159. Defendant BURKHALTER, MICHAELS, KESSLER & GEORGE L.L.P., (hereinafter referred to as "Defendant BKCG") is a California Limited Liability Partnership with its principal place of business at 2020 Main Street, Suite 600, Irvine, California 92614. At all times material to the allegations in this Complaint, Defendant BKCG, was and is the law firm/attorneys of record for plaintiffs in the following cases against Plaintiff: (a) *Parsa Law Group, APC v. Bad Biz Finder, et al.*, OCSC Case No. 00117752, filed January 26, 2009; (b) *UDR, Inc v. Erin K. Baldwin, et al.* OCSC Case No. 00125305, filed June 29, 2009; and (c) *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law Group, LLC, and Solution Processing, LLC v. Bad Biz Finder, Erin Baldwin, et al.,* OCSC Case No. 30-2009-00126004, filed July 13, 2009.

160. Defendant GOODMAN, MOONEY & BERSTEIN L.L.P., (hereinafter referred to as "Defendant GMB"), is a California Limited Liability Partnership with its principal place of business at 2030 Main Street, Suite 1300, Irvine, California 92614. At all times material to the allegations in this Complaint, GMB Partners (Eric J. Goodman and David A. Berstein) and Attorneys of the California State Bar were Attorneys of Record for plaintiffs in the following cases against Plaintiff: (a) *Parsa Law Group, APC v. Bad Biz Finder, et al.,* OCSC Case No. 00117752, filed January 26, 2009; (b) *UDR, Inc v. Erin K. Baldwin, et al.* OCSC Case No. 00125305, filed June 29, 2009; and (c) *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law Group, LLC, and Solution Processing, LLC v. Bad Biz Finder, Erin Baldwin, et al.,* OCSC Case No. 30-2009-00126004, filed July 13, 2009.

161. Defendant MYERS LEGAL, LLP (hereinafter referred to as "Defendant Myers Legal"), is a California Limited Liability Partnership with its principal place of business located at 7545 Irvine Center Drive, Suite 200, Irvine, CA 92618. Managing Partner, Nicholas

- 46 -

1  D. Myers, and Attorney of the California State Bar, was Attorney of Record for plaintiffs in

2  the following cases against Plaintiff: (a) *Parsa Law Group, APC v. Bad Biz Finder, et al.,*

3  OCSC Case No. 00117752, filed January 26, 2009; (b) *UDR, Inc v. Erin K. Baldwin, et al.*

4  OCSC Case No. 00125305, filed June 29, 2009; and (c) *Jeffrey A. Cancilla, Craig M. Laverty,*

5  *Solution Law Group, LLC, and Solution Processing, LLC v. Bad Biz Finder, Erin Baldwin, et*

6  *al.,* OCSC Case No. 30-2009-00126004, filed July 13, 2009.

7       162.    Defendant ALTON G. BURKHALTER (hereinafter referred to as "Defendant

8  Burkhalter") is a citizen and resident of the State of California. At all times material to the

9  allegations in this Complaint, Defendant Burkhalter was Founding Partner of Defendant

10  BKGG, and acted under color of state law in collusion with public officials named in the

11  herein Complaint.  Defendant Burkhalter was also attorney of record for the following lawsuits

12  against Plaintiff: (a) *Parsa Law Group, APC v. Bad Biz Finder, et al.,* OCSC Case No.

13  00117752, filed January 26, 2009; (b) *UDR, Inc v. Erin K. Baldwin, et al.* OCSC Case No.

14  00125305, filed June 29, 2009; and (c) *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law*

15  *Group, LLC, and Solution Processing, LLC v. Bad Biz Finder, Erin Baldwin, et al.,* OCSC

16  Case No. 30-2009-00126004, filed July 13, 2009.  In addition, at all times material to the

17  allegations in this Complaint, Defendant Burkhalter acted as an officer of the court in his

18  capacity as a California-licensed attorney (California State Bar License No. 119594) who,

19  under oath, on or about December 10, 1985, swore to uphold the laws of the State of

20  California.  Plaintiff seeks action against Defendant Attorney Burkhalter in both his official

21  and individual capacities.

22       163.    Defendant DANIEL J. KESSLER (hereinafter referred to as "Defendant

23  Kessler") is a citizen and resident of the State of California. At all times material to the

24  allegations in this Complaint, Defendant Kessler was Partner of Defendant BKGG, and acted

25  under color of state law in collusion with public officials named in the herein Complaint.

26  Defendant Kessler was also attorney of record for the following lawsuits against Plaintiff: (a)

27  *Parsa Law Group, APC v. Bad Biz Finder, et al.,* OCSC Case No. 00117752, filed January 26,

28  2009; (b) *UDR, Inc v. Erin K. Baldwin, et al.* OCSC Case No. 00125305, filed June 29, 2009;

   and (c) *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law Group, LLC, and Solution*

*Processing, LLC v. Bad Biz Finder, Erin Baldwin, et al.,* OCSC Case No. 30-2009-00126004, filed July 13, 2009. In addition, at all times material to the allegations in this Complaint, Defendant Kessler acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 173710) who, under oath, on or about December 14, 1994, swore to uphold the laws of the State of California. Defendant Goodman attended and graduated from Whittier School of Law in Santa Ana, California. He later became an adjunct professor of law at the same time as Judge Franz E. Miller, the judicial officer of all three cases the firm brought against Plaintiff. Plaintiff seeks action against Defendant Attorney Kessler in both his official and individual capacities.

164. Defendant ERIC J. GOODMAN (hereinafter referred to as "Defendant Goodman") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Goodman was Partner of Defendant BKGG, and acted under color of state law in collusion with public officials named in the herein Complaint. Defendant Goodman was also attorney of record for the following lawsuits against Plaintiff: (a) *Parsa Law Group, APC v. Bad Biz Finder, et al.,* OCSC Case No. 00117752, filed January 26, 2009; (b) *UDR, Inc v. Erin K. Baldwin, et al.* OCSC Case No. 00125305, filed June 29, 2009; and (c) *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law Group, LLC, and Solution Processing, LLC v. Bad Biz Finder, Erin Baldwin, et al.,* OCSC Case No. 30-2009-00126004, filed July 13, 2009. In addition, at all times material to the allegations in this Complaint, Defendant Goodman acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 173710) who, under oath, on or about December 16, 1991, swore to uphold the laws of the State of California. On or about July 18, 2011, Defendant Goodman formed and became a partner of Goodman Mooney Berstein LLP. Defendant Goodman attended and graduated from Whittier School of Law in Santa Ana, California. He later became an adjunct professor of law at the same time as Judge Franz E. Miller, the judicial officer of all three cases the firm brought against Plaintiff. Plaintiff seeks action against Defendant Attorney Goodman in both his official and individual capacities.

165. Defendant GREGORY M. CLEMENT (hereinafter referred to as "Defendant Clement") is a citizen and resident of the State of California. At all times material to the

- 48 -

allegations in this Complaint, Defendant Clement was Attorney of Defendant BKGG, and acted under color of state law in collusion with public officials named in the herein Complaint. Defendant Clement was also attorney of record for the following lawsuits against Plaintiff: (a) *Parsa Law Group, APC v. Bad Biz Finder, et al.*, OCSC Case No. 00117752, filed January 26, 2009; (b) *UDR, Inc v. Erin K. Baldwin, et al.* OCSC Case No. 00125305, filed June 29, 2009; and (c) *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law Group, LLC, and Solution Processing, LLC v. Bad Biz Finder, Erin Baldwin, et al.,* OCSC Case No. 30-2009-00126004, filed July 13, 2009. In addition, at all times material to the allegations in this Complaint, Defendant Clement acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 154997) who, under oath, on or about December 16, 1991, swore to uphold the laws of the State of California. Defendant Clement is now a partner of the new firm, Burkhalter, Kessler, Clement & George LLP. Plaintiff seeks action against Defendant Attorney Clement in both his official and individual capacities.

166.    Defendant DAVID A. BERSTEN (hereinafter referred to as "Defendant Berstein") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Berstein was Attorney of Defendant BKGG, and acted under color of state law in collusion with public officials named in the herein Complaint. Defendant Berstein was also attorney of record for the following lawsuits against Plaintiff: (a) *Parsa Law Group, APC v. Bad Biz Finder, et al.,* OCSC Case No. 00117752, filed January 26, 2009; (b) *UDR, Inc v. Erin K. Baldwin, et al.* OCSC Case No. 00125305, filed June 29, 2009; and (c) *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law Group, LLC, and Solution Processing, LLC v. Bad Biz Finder, Erin Baldwin, et al.,* OCSC Case No. 30-2009-00126004, filed July 13, 2009. In addition, at all times material to the allegations in this Complaint, Defendant Berstein acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 204472) who, under oath, on or about December 6, 1999, swore to uphold the laws of the State of California. On or about July 18, 2011, Defendant Berstein became employed by Goodman Mooney Berstein LLP located at 2030 Main Street, Suite 1300, Irvine, CA  92614.  Defendant Berstein attended and graduated from Whittier School of Law in Santa Ana, California. Plaintiff seeks action against Defendant

- 49 -

1 | Attorney Berstein in both his official and individual capacities.

2 |     167.    Defendant NICHOLAS D. MYERS (hereinafter referred to as "Defendant

3 | Myers") is a citizen and resident of the State of California. At all times material to the

4 | allegations in this Complaint, Defendant Myers was Attorney of Defendant BKGG, and acted

5 | under color of state law in collusion with public officials named in the herein Complaint.

6 | Defendant Myers was also attorney of record for the following lawsuits against Plaintiff: (a)

7 | *Parsa Law Group, APC v. Bad Biz Finder, et al.,* OCSC Case No. 00117752, filed January 26,

8 | 2009; (b) *UDR, Inc v. Erin K. Baldwin, et al.* OCSC Case No. 00125305, filed June 29, 2009;

9 | and (c) *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law Group, LLC, and Solution

10 | Processing, LLC v. Bad Biz Finder, Erin Baldwin, et al.,* OCSC Case No. 30-2009-00126004,

11 | filed July 13, 2009. In addition, at all times material to the allegations in this Complaint,

12 | Defendant Myers acted as an officer of the court in his capacity as a California-licensed

13 | attorney (California State Bar License No. 251809) who, under oath, on or about December 4,

14 | 2007, swore to uphold the laws of the State of California.  Defendant Myers is now the

15 | Managing Partner of Myers Legal, LLP located at 7545 Irvine Center Drive, Suite 200, Irvine,

16 | California 92618.  Defendant Myers attended and graduated from Whittier School of Law in

17 | Santa Ana, California. Plaintiff seeks action against DefendantMyers in both his official and individual capacities.

18 |     168.    Defendant MAHSA M. ROHANI (hereinafter referred to as "Defendant M.

19 | Rohani is a citizen and resident of the State of California. At all times material to the

20 | allegations in this Complaint, Defendant M. Rohani was Attorney of Defendant BKGG, and

21 | acted under color of state law in collusion with public officials named in the herein Complaint.

22 | Defendant Rohani was also attorney of record for the following lawsuits against Plaintiff: (a)

23 | *Parsa Law Group, APC v. Bad Biz Finder, et al.,* OCSC Case No. 00117752, filed January 26,

24 | 2009; (b) *UDR, Inc v. Erin K. Baldwin, et al.* OCSC Case No. 00125305, filed June 29, 2009;

25 | and (c) *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law Group, LLC, and Solution

26 | Processing, LLC v. Bad Biz Finder, Erin Baldwin, et al.,* OCSC Case No. 30-2009-00126004,

27 | filed July 13, 2009. In addition, at all times material to the allegations in this Complaint,

28 | Defendant M. Rohani acted as an officer of the court in her capacity as a California-licensed