attorney (California State Bar License No. 198214) who, under oath, on or about December 2, 1998, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Attorney M. Rohani in both her official and individual capacities.

169.    Defendant NICHOLAS P. KOHAN (hereinafter referred to as "Defendant Kohan") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Kohan was Attorney of Defendant BKGG, and acted under color of state law in collusion with public officials named in the herein Complaint. Defendant Kohan was also attorney of record for the following lawsuits against Plaintiff: (a) *Parsa Law Group, APC v. Bad Biz Finder, et al.,* OCSC Case No. 00117752, filed January 26, 2009; (b) *UDR, Inc v. Erin K. Baldwin, et al.* OCSC Case No. 00125305, filed June 29, 2009; and (c) *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law Group, LLC, and Solution Processing, LLC v. Bad Biz Finder, Erin Baldwin, et al.,* OCSC Case No. 30-2009-00126004, filed July 13, 2009. In addition, at all times material to the allegations in this Complaint, Defendant Kohan acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 251734) who, under oath, on or about July 11, 2008, swore to uphold the laws of the State of California. Defendant Kohan attended and graduated from Whittier School of Law in Santa Ana, California. Plaintiff seeks action against Defendant Attorney Kohan in both his official and individual capacities.

170.    Defendant ROSAMUND LOCKWOOD (hereinafter referred to as "Defendant Lockwood") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Lookwood was Attorney of Defendant BKGG, and acted under color of state law in collusion with public officials named in the herein Complaint. Defendant Lockwood was also attorney of record for the following lawsuits against Plaintiff: (a) *Parsa Law Group, APC v. Bad Biz Finder, et al.,* OCSC Case No. 00117752, filed January 26, 2009; (b) *UDR, Inc v. Erin K. Baldwin, et al.* OCSC Case No. 00125305, filed June 29, 2009; and (c) *Jeffrey A. Cancilla, Craig M. Laverty, Solution Law Group, LLC, and Solution Processing, LLC v. Bad Biz Finder, Erin Baldwin, et al.,* OCSC Case No. 30-2009-00126004, filed July 13, 2009. In addition, at all times material to the allegations in this Complaint, Defendant Lockwood acted as an officer of the court in his capacity as a California-licensed

- 51 -

attorney (California State Bar License No. 194718) who, under oath, on or about April 7, 1998, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Lockwood in both his official and individual capacities.

171.    Defendant ORANGE COUNTY DISTRICT ATTORNEY is a public agency in County of Orange, State of California.

172.    Defendant TONY RACKAUCKAS (hereinafter referred to as "Defendant Rackauckas") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Rackauckas acted under color of state law in his capacity as the District Attorney of the County of Orange, State of California. In addition, at all times material to the allegations in this Complaint, Defendant Rackauckas acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 51374) who, under oath, on or about January 5, 1972, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Rackauckas in both his official and individual capacities.

173.    Defendant JOSEPH P. D'AGOSTINO (hereinafter referred to as "Defendant D'Agostino" is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant D'Agostino acted under color of state law in his capacity as the District Attorney of the County of Orange employed by the County of Orange. In addition, at all times material to the allegations in this Complaint, Defendant D'Agostino acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 115774) who, under oath, on or about December 3, 1984, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Attorney D'Agostino in both his official and individual capacities.

174.    Defendant ELIZABETH A. HENDERSON (hereinafter referred to as "Defendant Henderson") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Henderson acted under color of state law in her capacity as a Deputy District Attorney of the County of Orange employed by the County of Orange.  In addition, at all times material to the allegations in this Complaint, Defendant Henderson acted as an officer of the court in her capacity as a California-licensed

- 52 -

1   attorney (California State Bar License No. 138968) who, under oath, on or about December

2   15, 1988, swore to uphold the laws of the State of California.  Plaintiff seeks action against

3   Defendant Attorney Henderson in both her official and individual capacities.

4       175.   Defendant SAN BERNARDINO COUNTY DISTRICT ATTORNEY is a

5   public agency in County of San Bernardino, State of California.

6       176.   Defendant MICHAEL RAMOS (hereinafter referred to as "Defendant Ramos")

7   is a citizen and resident of the State of California.  At all times material to the allegations in

8   this Complaint, Defendant Ramos acted under color of state law in his capacity as the District

9   Attorney of the County of San Bernardino employed by the County of San Bernardino.  In

10  addition, at all times material to the allegations in this Complaint, Defendant Ramos acted as

11  an officer of the court in his capacity as a California-licensed attorney (California State Bar

12  License No. 141025) who, under oath, on or about June 9, 1989, swore to uphold the laws of

13  the State of California.  Plaintiff seeks action against Defendant Attorney Ramos in both his

14  official and individual capacities.

15      177.   Defendant LAURA ROBLES (hereinafter referred to as "Defendant Robles") is

16  a citizen and resident of the State of California.  At all times material to the allegations in this

17  Complaint, Defendant Robles acted under color of state law in her capacity as a Deputy

18  District Attorney employed by the County of San Bernardino.  In addition, at all times material

19  to the allegations in this Complaint, Defendant Robles acted as an officer of the court in her

20  capacity as a California-licensed attorney (California State Bar License No. 134544) who,

21  under oath, on or about June 14, 1988, swore to uphold the laws of the State of California.

22  Plaintiff seeks action against Defendant Attorney Robles in both her official and individual

23  capacities.

24      178.   Defendant WILLIAM GALE (hereinafter referred to as "Defendant Gale") is a

25  citizen and resident of the State of California. At all times material to the allegations in this

26  Complaint, Defendant Gale acted under color of state law in his capacity as a Deputy District

27  Attorney employed by the County of San Bernardino. In addition, at all times material to the

28  allegations in this Complaint, Defendant Gale acted as an officer of the court in his capacity as

    a California-licensed attorney (California State Bar License No. 202908) who, under oath, on

- 53 -

1  or about November 29, 1999, swore to uphold the laws of the State of California. Plaintiff

2  seeks action against Defendant Attorney Gale in both his official and individual capacities.

3      179.    Defendant JONATHAN J. ROBBINS (hereinafter referred to as "Defendant

4  Robbins") is a citizen and resident of the State of California. At all times material to the

5  allegations in this Complaint, Defendant Robbins acted under color of state law in his capacity

6  as a Deputy District Attorney employed by the County of San Bernardino. In addition, at all

7  times material to the allegations in this Complaint, Defendant Robbins acted as an officer of

8  the court in his capacity as a California-licensed attorney (California State Bar License No.

9  253135) who, under oath, on or about December 10, 2007, swore to uphold the laws of the

10  State of California. Plaintiff seeks action against Defendant Attorney Robbins in both his

11  official and individual capacities.

12      180.    Defendant MELINDA D. SPENCER (hereinafter referred to as "Defendant

13  Spencer") is a citizen and resident of the State of California. At all times material to the

14  allegations in this Complaint, Defendant Spencer acted under color of state law in her capacity

15  as Deputy District Attorney employed by the County of San Bernardino. In addition, at all

16  times material to the allegations in this Complaint, Defendant Spencer acted as an officer of

17  the court in her capacity as a California-licensed attorney (California State Bar License No.

18  167549) who, under oath, on or about December 14, 1993, swore to uphold the laws of the

19  State of California. Plaintiff seeks action against Defendant Attorney Spencer  in both her

20  official and individual capacities.

21      181.    Defendant TIMOTHY T. DIXON (hereinafter referred to as "Defendant

22  Dixon") is a citizen and resident of the State of California. At all times material to the

23  allegations in this Complaint, Defendant Dixon acted under color of state law in his capacity

24  as a Deputy District Attorney employed by the County of San Bernardino.  In addition, at all

25  times material to the allegations in this Complaint, Defendant Dixon acted as an officer of the

26  court in his capacity as a California-licensed attorney (California State Bar License No.

27  215963) who, under oath, on or about December 3, 2001, swore to uphold the laws of the State

28  of California.  Plaintiff seeks action against Defendant Attorney Dixon  in both his official and

individual capacities.

- 54 -

1  182.  Defendant ORANGE COUNTY PUBLIC DEFENDER'S OFFICE is a public

2  agency of the County of Orange, State of California.

3  183.  Defendant DEBORAH A. KWAST (hereinafter referred to as "Defendant

4  Kwast") is a citizen and resident of the State of California. At all times material to the

5  allegations in this Complaint, Defendant Kwast acted under color of state law in her capacity

6  as a Public Defender of the County of Orange, employed by the County of Orange.  In

7  addition, at all times material to the allegations in this Complaint, Defendant Kwast acted as an

8  officer of the court in her capacity as a California-licensed attorney (California State Bar

9  License No. 77085) who, under oath, on or about December 21, 1977, swore to uphold the

10  laws of the State of California. Plaintiff seeks action against Defendant Attorney Kwast in both

11  her official and individual capacities.

12  184.  Defendant JEAN M. WILKINSON (hereinafter referred to as "Defendant

13  Wilkinson") is a citizen and resident of the State of California. At all times material to the

14  allegations in this Complaint, Defendant Wilkinson acted under color of state law in her

15  capacity as a Deputy Public Defender employed by the County of Orange.  In addition, at all

16  times material to the allegations in this Complaint, Defendant Wilkinson acted as an officer of

17  the court in her capacity as a California-licensed attorney (California State Bar License No.

18  105020) who, under oath, on or about December 3, 1982, swore to uphold the laws of the State

19  of California. Plaintiff seeks action against Defendant Attorney Wilkinson in both her official

20  and individual capacities.

21  185.  Defendant DENISE M. GRAGG (hereinafter referred to as "Defendant Gragg")

22  is a citizen and resident of the State of California.  At all times material to the allegations in

23  this Complaint, Defendant Gragg acted under color of state law in her capacity as a Deputy

24  Public Defender employed by the County of Orange.  In addition, at all times material to the

25  allegations in this Complaint, Defendant Gragg acted as an officer of the court in her capacity

26  as a California-licensed attorney (California State Bar License No. 98387) who, under oath, on

27  or about May 29, 1981, swore to uphold the laws of the State of California. Plaintiff seeks

28  action against Defendant Attorney Gragg in both her official and individual capacities.

186.  Defendant JENNIFER L. NICOLALDE (hereinafter referred to as "Defendant

- 55 -

Nicolalde") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Nicolalde acted under color of state law in her capacity as a Deputy Public Defender employed by the County of Orange. In addition, at all times material to the allegations in this Complaint, Defendant Nicolalde acted as an officer of the court in her capacity as a California-licensed attorney (California State Bar License No. 231205) who, under oath, on or about June 3, 2004, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Attorney Nicolalde in both her official and individual capacities.

187. Defendant MARTIN F. SCHWARZ (hereinafter referred to as "Defendant Schwarz") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Schwarz acted under color of state law in her capacity as a Deputy Public Defender employed by the County of Orange. In addition, at all times material to the allegations in this Complaint, Defendant Schwarz acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 184062) who, under oath, on or about December 3, 1996, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Schwarz in both his official and individual capacities.

188. Defendant SAN BERNARDINO COUNTY PUBLIC DEFENDER'S OFFICE is a public agency of the County of San Bernardino, State of California.

189. Defendant DOREEN BOXER (hereinafter referred to as "Defendant Boxer") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Boxer was a citizen, resident and practicing attorney of San Bernardino County, California and acted under color of state law in her capacity as a The Public Defender of the County of San Bernardino employed by the County of San Bernardino. In addition, at all times material to the allegations in this Complaint, Defendant Boxer acted as an officer of the court in her capacity as a California-licensed attorney (California State Bar License No. 252911) who, under oath, on or about July 20, 1993, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Boxer in both her official and individual capacities.

- 56 -

190. Defendant GEOFFREY CANTY (hereinafter referred to as "Defendant Canty") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Canty acted under color of state law in his capacity as a Deputy Public Defender employed by the County of San Bernardino. In addition, at all times material to the allegations in this Complaint, Defendant Canty acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 192628) who, under oath, on or about December 9, 1997, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Attorney Canty in both his official and individual capacities.

191. Defendant JEFFREY R. LAWRENCE (hereinafter referred to as "Defendant Lawrence") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Lawrence acted under color of state law in his capacity as a Deputy Public Defender employed by the County of San Bernardino. In addition, at all times material to the allegations in this Complaint, Defendant Lawrence acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 190643) who, under oath, on or about December 4, 1997, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Attorney Lawrence in both his official and individual capacities.

192. Defendant MARK S. SHOUP (hereinafter referred to as "Defendant Shoup") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Shoup acted under color of state law in his capacity as a Deputy Public Defender employed by the County of San Bernardino. In addition, at all times material to the allegations in this Complaint, Defendant Shoup acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 126320) who, under oath, on or about December 15, 1986, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Attorney Shoup in both his official and individual capacities.

193. Defendant ERIC A. TETI (hereinafter referred to as "Defendant Teti") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Teti acted under color of state law in his capacity as a Deputy Public

- 57 -

Defender employed by the County of San Bernardino. In addition, at all times material to the allegations in this Complaint, Defendant Teti acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 241941) who, under oath, on or about March 26, 2006, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Attorney Teti in both his official and individual capacities.

194. Defendant KAWIKA SMITH (hereinafter referred to as "Defendant Smith") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Smith acted under color of state law in his capacity as a Deputy Public Defender employed by the County of San Bernardino. In addition, at all times material to the allegations in this Complaint, Defendant Smith acted as an officer of the court in his capacity as a California-licensed attorney (California State Bar License No. 169963) who, under oath, on or about March 14, 1994, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Attorney Smith in both his official and individual capacities.

195. Defendant ORANGE COUNTY SHERIFF'S DEPARTMENT (hereinafter referred to as "Defendant OCSD") is a public agency of the County of Orange, State of California.

196. Defendant SANDRA HUTCHENS (hereinafter referred to as "Defendant Hutchens"), is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Hutchens acted under color of law in her capacity as Sheriff of the County of Orange, State of California. Plaintiff seeks action against Defendant Hutchens in both her official and individual capacities.

197. Defendant, SAN BERNARDINO COUNTY DEPARTMENT OF PUBLIC HEALTH is a public agency of the County of San Bernardino, State of California.

198. Defendant DOUG SMITH (hereinafter referred to as "Defendant Smith"), is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Smith acted under color of law in his capacity as Supervising Animal Control Officer of the San Bernardino County Department of Public Health, State of California. Plaintiff seeks action against Defendant Smith in both his official and individual capacities.

- 58 -

199. Defendant, KELLY PAPP (hereinafter referred to as "Defendant Papp"), is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Papp acted under color of law in her capacity as Animal Control Officer of the San Bernardino County Department of Public Health, State of California. Plaintiff seeks action against Defendant Papp in both her official and individual capacities.

200. Defendant SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT is a public agency of the County of San Bernardino, State of California.

201. Defendant RODNEY HOOPS (hereinafter referred to as "Defendant Hoops"), is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Hoops acted under color of law in his capacity as Sheriff of the County of San Bernardino County, State of California. Plaintiff seeks action against Defendant Hoops in both his official and individual capacities.

202. Defendant JAY BLANKENSHIP (hereinafter referred to as "Defendant Blankenship"), is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Blankenship acted under color of law in his capacity as Director of the Civil Liabilities Division of the San Bernardino Sheriff's Department in the County of San Bernardino, California, employed by the County of San Bernardino. Plaintiff seeks action against Defendant Blankenship in both his official and individual capacities.

203. Defendant LORI BACHELOR (hereinafter referred to as "Defendant Bachelor") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Bachelor acted under color of law in her capacity as Staff of the Civil Liabilities Division of the San Bernardino Sheriff's Department in the County of San Bernardino, State of California. Plaintiff seeks action against Defendant Bachelor in both her official and individual capacities.

204. Defendant GREG GARLAND (hereinafter referred to as "Defendant G. Garland") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant G. Garland acted under color of law in his capacity as a Captain of the Big Bear Sheriff's substation, San Bernardino County Sheriff's Department, County of San Bernardino, State of California. Plaintiff seeks action against Defendant

- 59 -

1  Garland  in both his official and individual capacities.

2      205.    Defendant ERROLL BECHTEL (hereinafter referred to as "Defendant

3  Bechtel") is a citizen and resident of the State of California. At all times material to the

4  allegations in this Complaint, Defendant Bechtel acted under color of law in his capacity as a

5  Lieutenant assigned to the Big Bear Sheriff substation of the San Bernardino County Sheriff's

6  Department, County of San Bernardino, State of California. Plaintiff seeks action against

7  Defendant Bechtel in both his official and individual capacities.

8      206.    Defendant DOUGLAS WOLFE (hereinafter referred to as "Defendant Wolfe")

9  is a citizen and resident of the State of California. At all times material to the allegations in this

10  Complaint, Defendant Wolfe acted under color of law in his capacity as a Sergeant assigned to

11  the Big Bear Sheriff substation of the San Bernardino County Sheriff's Department, County of

12  San Bernardino, State of California. Plaintiff seeks action against Defendant Wolfe in both his

    official and individual capacities.

13      207.    Defendant BRYAN LANE (hereinafter referred to as "Defendant Lane")  is a

14  citizen and resident of the State of California.  At all times material to the allegations in this

15  Complaint, Defendant Lane acted under color of law in his capacity as a Sergeant assigned to

16  the Big Bear Sheriff substation of the San Bernardino County Sheriff's Department, County of

17  San Bernardino, State of California. Plaintiff seeks action against Defendant Lane in both his

18  official and individual capacities.

19      208.    Defendant CHRISTOPHER ALLEN (hereinafter referred to as "Defendant

20  Allen") is a citizen and resident of the State of California. At all times material to the

21  allegations in this Complaint, Defendant Allen acted under color of law in his capacity as a

22  Sergeant of the Internal Affairs Division, San Bernardino Sheriff's Department, County of San

23  Bernardino, State of California.  Plaintiff seeks action against Defendant Allen in both his

24  official and individual capacities.

25      209.    Defendant JEREMY KING (hereinafter referred to as "Defendant King") is a

26  citizen and resident of the State of California. At all times material to the allegations in this

27  Complaint, Defendant King acted under color of law in his capacity as a Sergeant assigned to

28  the Big Bear Sheriff substation of the San Bernardino County Sheriff's Department, County of

- 60 -

1  San Bernardino, State of California. Plaintiff seeks action against Defendant King in both his
2  official and individual capacities.

3  210.  Defendant CHRISTOPHER G. MORSCH (hereinafter referred to as
4  "Defendant Morsch") is a citizen and resident of the State of California. At all times material
5  to the allegations in this Complaint, Defendant Morsch acted under color of law in his capacity
6  as a Deputy assigned to the Big Bear Sheriff substation of the San Bernardino County Sheriff's
7  Department, County of San Bernardino, State of California.  Plaintiff seeks action against
8  Defendant Morsch in both his official and individual capacities.

9  211.  Defendant PAULINE DOMINIGUE (hereinafter referred to as "Defendant
10 Domingue") is a citizen and resident of the State of California. At all times material to the
11 allegations in this Complaint, Defendant Domingue acted under color of law in her capacity as
12 Deputy assigned to the Big Bear Sheriff substation of the San Bernardino County Sheriff's
13 Department, County of San Bernardino, State of California. Plaintiff seeks action against
   Defendant Domingue in both her official and individual capacities.

14 212.  Defendant MICHAEL BROADHURST (hereinafter referred to as "Defendant
15 Broadhurst") is a citizen and resident of the State of California. At all times material to the
16 allegations in this Complaint, Defendant Broadhurst acted under color of law in his capacity as
17 Deputy assigned to the Big Bear Sheriff substation of the San Bernardino County Sheriff's
18 Department, County of San Bernardino, State of California. Plaintiff seeks action against
19 Defendant Broadhurst in both his official and individual capacities.

20 218.  Defendant MASSEY (hereinafter referred to as "Defendant Massey") is a
21 citizen and resident of the State of California. At all times material to the allegations in this
22 Complaint, Defendant Massey acted under color of law in his capacity as Deputy assigned to
23 the Big Bear Sheriff substation of the San Bernardino County Sheriff's Department, County of
24 San Bernardino, State of California. Plaintiff seeks action against Defendant Massey in both
25 his official and individual capacities.

26 219.  Defendant JABLONSKY (hereinafter referred to as "Defendant Jablonsky") is
27 a citizen and resident of the State of California. At all times material to the allegations in this
28 Complaint, Defendant Jablonsky acted under color of law in his capacity as Deputy assigned

- 61 -

to the Big Bear Sheriff substation of the San Bernardino County Sheriff's Department, County of San Bernardino, State of California. Plaintiff seeks action against Defendant Jablonsky in both his official and individual capacities.

220. Defendant ALEXANDER COLLINS (hereinafter referred to as "Defendant Collins") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Collins acted under color of law in his capacity as Deputy assigned to the Big Bear Sheriff substation of the San Bernardino County Sheriff's Department, County of San Bernardino, State of California. Plaintiff seeks action against Defendant Collins in both his official and individual capacities.

221. Defendant JAMES WIJNHAMER (hereinafter referred to as "Defendant Wijnhamer") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Wijnhamer acted under color of law in his capacity as Deputy assigned to the Big Bear Sheriff substation of the San Bernardino County Sheriff's Department, County of San Bernardino, State of California. Plaintiff seeks action against Defendant Wijnhamer in both his official and individual capacities.

222. Defendant MICHAEL McCRACKEN (hereinafter referred to as "Defendant McCracken") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Broadhurst acted under color of law in his capacity as Deputy assigned to the Big Bear Sheriff substation of the San Bernardino County Sheriff's Department, County of San Bernardino, State of California. Plaintiff seeks action against Defendant McCracken in both his official and individual capacities.

223. Defendant BRIAN SHEDD (hereinafter referred to as "Defendant Shedd") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Broadhurst acted under color of law in his capacity as Deputy assigned to the Big Bear Sheriff substation of the San Bernardino County Sheriff's Department, County of San Bernardino, State of California. Plaintiff seeks action against Defendant Shedd in both his official and individual capacities.

224. Defendant J. LONG is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Long acted under color of law in

- 62 -

his capacity as Deputy assigned to the Big Bear Sheriff substation of the San Bernardino County Sheriff's Department, County of San Bernardino, State of California. Plaintiff seeks action against Defendant Long in both his official and individual capacities.

225.    Defendant M. SANCHEZ (hereinafter referred to as "Defendant Sanchez") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Shipley acted under color of law in her capacity as a Deputy, assigned to the San Bernardino Superior Court, San Bernardino Sheriff's Department, County of San Bernardino, State of California. Plaintiff seeks action against Defendant Sanchez in both his official and individual capacities.

226.    Defendant S. SHIPLEY (hereinafter referred to as "Defendant Shipley") is a citizen and resident of the State of California.  At all times material to the allegations in this Complaint, Defendant Shipley acted under color of law in her capacity as a Deputy, assigned to the San Bernardino Superior Court, San Bernardino Sheriff's Department, County of San Bernardino, State of California. Plaintiff seeks action against Defendant Shipley in both her official and individual capacities.

227.    Defendant CITY OF BIG BEAR LAKE (hereinafter referred to as "Defendant City of Big Bear") is a municipality of the County of San Bernardino County, State of California. At all times material to the allegations in this Complaint, Defendant City of Big Bear acted under color of law in its capacity as a California municipality, a local government of the County of San Bernardino, State of California.

228.    Defendant RICK T. HERRICK (hereinafter referred to as "Defendant Herrick") is a citizen and resident of the State of California.  At all times material to the allegations in this Complaint, Defendant Herrick acted under color of law in his capacity as a City Council Member of the City of Big Bear Lake, County of San Bernardino, State of California. Plaintiff seeks action against Defendant Herrick in both his official and individual capacities.

229.    Defendant ELIZABETH A. HARRIS (hereinafter referred to as "Defendant Harris") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Harris acted under color of law in her capacity as a City Council Member of the City of Big Bear Lake, County of San Bernardino, State of

- 63 -

1  California. Plaintiff seeks action against Defendant Harris in both her official and individual

2  capacities.

3      230.    Defendant WILLIAM E. JAHN (hereinafter referred to as "Defendant Jahn is a

4  citizen and resident of the State of California.  At all times material to the allegations in this

5  Complaint, Defendant Jahn acted under color of law in his capacity as a City Council Member

6  of the City of Big Bear Lake, County of San Bernardino, State of California. Plaintiff seeks

7  action against Defendant Jahn in both his official and individual capacities.

8      231.    Defendant MICHAEL KARP (hereinafter referred to as "Defendant Karp") is a

9  citizen and resident of the State of California.  At all times material to the allegations in this

10  Complaint, Defendant Karp acted under color of law in his capacity as a City Council Member

11  of the City of Big Bear Lake, County of San Bernardino, State of California. Plaintiff seeks

action against Defendant Karp in both his official and individual capacities.

12      232.    Defendant DARRELL MULVIHILL (hereinafter referred to as "Defendant

13  Mulvihill is a citizen and resident of the State of California.  At all times material to the

14  allegations in this Complaint, Defendant Mulvihill acted under color of law in his capacity as a

15  City Council Member of the City of Big Bear Lake, County of San Bernardino, State of

16  California. Plaintiff seeks action against Defendant Mulvihill in both his official and individual

17  capacities.

18      233.    Defendant TODD A. BRISCO & ASSOCIATES, A PROFESSIONAL

19  CORPORATION (hereinafter referred to as "Defendant Brisco & Associates") is a California

20  Corporation, Entity No. C2511058, filed on March 20, 2003, with Jurisdiction held in the State

21  of California.  Defendant Brisco & Associates' principal place of business is 1900 South State

22  College Boulevard, Suite 505, Anaheim, California 92806-6136.  Defendant Brisco &

23  Associates' agent for service of process is Michelle L. Brisco located at 1900 South State

24  College Boulevard, Suite 505, Anaheim, California 92806-6136.

25      234.    Defendant TODD A. BRISCO (hereinafter referred to as "Defendant Brisco")

26  is a citizen and resident of the State of California. At all times material to the allegations in this

27  Complaint, Defendant Brisco was attorney of record for Defendant UDR Villa Venetia

28  Apartments L.P. and owned and operated Todd A. Brisco & Associates, APC. , and acted

- 64 -

under color of state law in collusion with public officials named in the herein Complaint. In addition, at all times material to the allegations in this Complaint, Defendant Brisco acted as an officer of the court in her capacity as a California-licensed attorney (California State Bar License No. 165935) who, under oath, on or about October 29, 1993, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Brisco in both his official and individual capacities.

235. Defendant CYNTHIA S. POER (hereinafter referred to as "Defendant Poer") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Poer was attorney of record for Defendant UDR Villa Venetia Apartments L.P. employed by Defendant Todd A. Brisco & Associates, APC. , and acted under color of state law in collusion with public officials named in the herein Complaint. In addition, at all times material to the allegations in this Complaint, Defendant Poer acted as an officer of the court in her capacity as a California-licensed attorney (California State Bar License No. 252911) who, under oath, on or about December 6, 2007, swore to uphold the laws of the State of California. Plaintiff seeks action against Defendant Attorney Poer in both her official and individual capacities.

236. Defendant AUTOMATTIC, INC. is currently an active and licensed California Corporation, License No. C2804985, filed October 6, 2005. Toni Schneider is Defendant Automattic's agent for service of process. The address for service of process set forth for this entity is incomplete. It states the address as Pier 38 at The Embarcadero, San Francisco, California 94107 which address encompasses 42 business throughout the Pier 38 area,. As such, Defendant Automattic, Inc. is in violation of Corporations Code Section 6210(b) that states, in part: "If a natural person is designated [as agent for service of process], the statement shall set forth the person's complete business or residence address."

237. Defendant WORDPRESS is an affiliate of Automattic, Inc.

238. Defendant MATTHEW MULLENWEG (hereinafter referred to as "Defendant Mullenweg") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Mullenweg is an officer of WordPress/Automattic, Inc. , and acted under color of state law in collusion with public officials named in the herein

- 65 -

1    Complaint.

2        239.    Defendant TONI SCHNEIDER (hereinafter referred to as "Defendant

3    Schneider") is a citizen and resident of the State of California. At all times material to the

4    allegations in this Complaint, Defendant Schneider is an officer of WordPress/Automattic,

5    Inc., and acted under color of state law in collusion with public officials named in the herein

6    Complaint.

7        240.    Defendant SCOTT G. DETTMER (hereinafter referred to as "Defendant

8    Dettmer") is a citizen and resident of the State of California. At all times material to the

9    allegations in this Complaint, Defendant Dettmer acted as an officer of the court in his

10   capacity as a California-licensed attorney (California State Bar License No. 104356) who,

11   under oath, on or about December 3, 1982, swore to uphold the laws of the State of California.

12   Defendant Dettmer also acted under color of state law in collusion with public officials named

13   in the herein Complaint.  Plaintiff seeks action against Defendant Attorney Dettmer in both his

     official and individual capacities.

14       241.    Defendant TYPEPAD, INC., a Delaware Corporation (Corporate No. 3638725)

15   is doing business in California at its principal place of business located at 180 Townsend

16   Street, San Francisco, California 94107.  Its agent for service of process is Incorporating

17   Services Ltd. Located at 3500 South Dupont Highway, Dover, Delaware 19901.

18       242.    Defendant MARILYN A. MOBERG (hereinafter referred to as "Defendant

19   Moberg") is a citizen and resident of the State of California. At all times material to the

20   allegations in this Complaint, Defendant Moberg acted as an officer of the court in his capacity

21   as a California-licensed attorney (California State Bar License No. 104356) who, under oath,

22   on or about December 3, 1982, swore to uphold the laws of the State of California.  Defendant

23   Moberg also acted under color of state law in collusion with public officials named in the

24   herein Complaint.  Plaintiff seeks action against Defendant Attorney Moberg in both her

25   official and individual capacities.

26       243.    Defendant KEITH D. WHITE (hereinafter referred to as "Defendant K. White")

27   is a citizen and resident of the State of Nevada. At all times material to the allegations in this

28   Complaint, Defendant P. White was a citizen and resident of the State of California, and acted

- 66 -

under color of state law in collusion with public officials named in the herein Complaint.

244. Defendant PATRICIA A. WHITE (hereinafter referred to as "Defendant P. White") is a citizen and resident of the State of Nevada. At all times material to the allegations in this Complaint, Defendant P. White was a citizen and resident of the State of California, and acted under color of state law in collusion with public officials named in the herein Complaint.

245. Defendant MICHAEL ESTRADA, JR. (hereinafter referred to as "Defendant Estrada") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Estrada acted as a process server on behalf of Defendant BKGG, and acted under color of state law in collusion with public officials named in the herein Complaint.

246. Defendant MARTIN ANDELMAN (hereinafter referred to as "Defendant Andelman") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Andelman acted under color of state law in collusion with public officials named in the herein Complaint.

247. Defendant MICHAEL P. DOLAN (hereinafter referred to as "Defendant Dolan") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Dolan acted under color of state law in collusion with public officials named in the herein Complaint.

248. Defendant VALERIE COFSKY (hereinafter referred to as "Defendant Cofsky") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Cofsky acted under color of state law in collusion with public officials named in the herein Complaint.

249. Defendant YOLANDA PETERSON (hereinafter referred to as "Defendant Peterson") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Peterson and acted under color of state law in collusion with public officials named in the herein Complaint.

250. Defendant JASON L. CROW (hereinafter referred to as "Defendant Crow") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant J. Crow is the plaintiff in civil actions against Plaintiff and acted under

- 67 -

color of state law in collusion with public officials named in the herein Complaint.

251.   Defendant JOHN ELERDING (hereinafter referred to as "Defendant J. Elerding") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant J. Elerding and acted under color of state law in collusion with public officials named in the herein Complaint.

252.   Defendant GAIL NEALE-ELERDING (hereinafter referred to as "Defendant G. Elerding") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant G. Elerding and acted under color of state law in collusion with public officials named in the herein Complaint.

253.   Defendant CHARLES KIMBALL (hereinafter referred to as "Defendant Dettmer") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Kimball and acted under color of state law in collusion with public officials named in the herein Complaint.

254.   Defendant JANE HEWITT (hereinafter referred to as "Defendant Hewitt") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Hewitt worked as a counselor at DOVES is Big Bear Lake, California and acted under color of state law in collusion with public officials named in the herein Complaint.

255.   Defendant DARA WEINER (hereinafter referred to as "Defendant Weiner") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Weiner acted under color of state law in collusion with public officials named in the herein Complaint.

256.   Defendant RON LANDERS (hereinafter referred to as "Defendant Landers") is a citizen and resident of the State of California. At all times material to the allegations in this Complaint, Defendant Landers acted as a private investigator for the San Bernardino County Sheriff's Department and acted under color of state law in collusion with public officials named in the herein Complaint; and

257.   DOES 1 through 200, inclusive.

- 68 -

1

## **STATEMENT OF FACTS**

2      258.    Plaintiff realleges and incorporates herein by reference the allegations set forth

3   in paragraphs 1-257 of this Complaint.

4                                **June 21, 2008**

5      259.    Plaintiff rented an apartment from Defendant UDR, also known as Defendant

6   UDR Villa Venetia, and Defendant Western Residential.

7                                **August 13, 2008**

8      260.    Plaintiff was hospitalized and had emergency surgery requiring a four-day

9   hospital stay and an eight-week recovery period.  Defendant communicated said facts to

10  Defendant UDR Villa Venetia (specifically Defendant Harmon) due to the fact that she was

11  self-employed and unable to work.  Defendant Harmon on behalf of Defendant UDR Villa

12  Venetia entered into a payment arrangement agreement with Plaintiff.

                                **August 18 – September 30, 2008**

13      261.    As Plaintiff was recovering at home she noticed an overabundance of tenants

14  moving out.  Plaintiff spoke with many of them and learned of the unlawful activities

15  committed by UDR.  Plaintiff reviewed her lease that led to the discovery of unlawful lease

16  clauses.  Plaintiff continued to communicate with fellow tenants and the subject of a class

17  action lawsuit came up and Plaintiff took the lead.

18                                **October 1 – December 1, 2008**

19      262.    Plaintiff began to form a class action lawsuit for seven (7) causes of action

20  against Defendant UDR.  She also informed other tenants of the lawsuit by distributing flyers.

21  During this time, Plaintiff learned of even more extreme tenant abuse and oppression at the

22  hand of Defendant UDR.

23                                **December 15, 2008**

24      263.    As a result of Plaintiff's activities Defendant UDR Villa Venetia (on behalf of

25  Defendant UDR) intentionally reneged on its pre-arranged payment plan agreement with

26  Plaintiff and began to retaliate against Defendant including towing then selling her car after

27  claiming that it did not have the appropriate tenant sticker.

28

                                        - 69 -

264. Plaintiff's activities are protected under the First Amendment including the right to (a) petition the government for a redress of grievances; (b) peaceably assemble for the purpose of petitioning the government for a redress of grievances; and (c) associate with others similarly situated.

### January 9, 2009

265. An anonymous blog called Bad Biz Finder was launched on the host Defendant WordPress, owned by Defendant Automattic and run by Defendants Mullenweg and Schneider. Defendants BKGG and Defendant Attorneys Burkhalter, Kessler, Goodman, Berstein and Myers (on behalf of Defendants Attorneys Parsa, Cancilla, Laverty, and Parsa Law Group, NLMC, Parsa & Associates, UDR, UDR Western Residential, UDR Villa Venetia, Solutions Processing and Solutions Law, violated Plaintiff's right to privacy and First Amendment right to publish anonymously.

266. Defendant BKGG and Defendant Attorneys Burkhalter, Kessler, Goodman, Berstein and Myers were in a frenzy to name a proper defendant in three strategic lawsuits against public participation they were bringing against Plaintiff so they could expeditiously conceal the unlawful activity of their clients by enjoining Plaintiff's First Amendment right to freedom of speech and thereby terminate the blog and eliminate the source of information being distributed to the public.

267. In *Talley v. California*, 362 U.S. 60 (1960), the United States Supreme Court held:

> "Protecting anonymity is necessary to induce some authors to contribute valuable information to the marketplace of ideas. The Court lauds the contributions anonymous authors historically have made to the 'progress of mankind,' citing political and literary examples. The Court's opinion focuses on benign reasons that an author may choose to remain anonymous: fear of retaliation or reprisal, the desire to avoid social ostracism, the wish to protect privacy, or the fear that the audience's biases will distort the meaning of the work. The Court concludes that 'anonymity is a shield from the tyranny of the majority' without which public discourse would certainly suffer'."

268. Bad Biz Finder published an article entitled, "Bad Biz Finder Fights Loan Modification Scams."

- 70 -

269.   Bad Biz Finder published an article entitled, "Facts About CA Loan Modification Laws."

### January 14, 2009

270.   Five (5) days after the launch of the Bad Biz Finder blog, Defendant Duckworth, on behalf of Defendant DRE, contacted Plaintiff via email claiming that Defendant DRE had been alerted to the Bad Biz Finder blog "because it was getting a lot of attention."   In fact, it had only received approximately sixty (60) hits.  According to Defendant Duckworth, Defendant DRE was conducting an investigation into the unlawful loan modification practices of Defendant Parsa Law Group's affiliate, Defendant NLMC and requested that Plaintiff mail to them all research and evidence she had collected.  When Plaintiff requested a personal meeting, Defendant DRE claimed it could not afford the expense.  Defendant Duckworth refused to answer many of Plaintiff's questions claiming it the answers were "privileged information" and that "it could jeopardize the investigation."  Plaintiff attempted to illicit more information regarding the investigation from Defendant DRE via Defendant Davi, and employees, Defendants Young and Duckworth, however, there was no response.  Plaintiff opted to encourage Defendant DRE and its agents to visit Bad Biz Finder regularly for the information they needed.

### January 15, 2009

271.   Bad Biz Finder published an article entitled, "Another Parsa Law Group Scam: "Crisis on Main Street" TV Ad."   If a statement is determined to be an opinion (i.e., "scam") then it cannot be the subject of a defamation suit. The reason is that opinions are not capable of being proven true or false, and the plaintiff cannot therefore prove one of the elements of a defamation claim. "[S]tatements regarding matters of public concern which are not sufficiently factual to be capable of being proven true or false, and statements which cannot be reasonably interpreted as stating actual facts are absolutely protected. Constitutionally protected opinion cannot support a defamation action." (See, *Milkovich v. Lorain Journal*, 497 U.S. 1 (1990)

### January 18, 2009

- 71 -

272. Bad Biz Finder published an article entitled, "California Department of Real Estate Stopped By to Say Hello" wherein the communications with Defendant DRE were documented.

**January 19, 2009**

273. Bad Biz Finder published an article entitled, "Would Someone Please Explain to Me the CA Foreclosure Consultants Act, Like I'm a Third Grader?" setting forth the basic facts for consumers.

**January 22, 2009**

274. Bad Biz Finder published an article entitled, ***Parsa Law Group-National Loan Modification Center Violates Every Rule Under Sub-Section 2945.4 of the CA Foreclosure Consultant's Act.*** California Civil Code 2945.4 states:

> *"It shall be a violation for a foreclosure consultant to: (a) Claim, demand, charge, collect, or receive any compensation until after the foreclosure consultant has fully performed each and every service the foreclosure consultant contracted to perform or represented that he or she would perform."*

275. Plaintiff obtained a copy of Defendant Parsa Law Group's Retainer Agreement (used by its foreclosure consultant/loan modification affiliate, Defendant NLMC) and noted that it, in fact, was taking fees in advance of work performed.

276. Bad Biz Finder published an article entitled, ***Parsa Law Group / National Loan Modification Center is Not in Compliance with Contract Requirements under the CA Foreclosure Consultant Act.*** Again, Plaintiff used Defendant NLMC's Retainer Agreement and compared it to the contractual elements required under the California Foreclosure Consultants' Act and then wrote the article based on the facts.

277. Bad Biz Finder published an article entitled, ***James Parsa, Parsa Law Group & National Loan Modification Center Face Steep Penalties [For Violating The California Foreclosure Consultant's Act].*** As it was apparent from the Retainer Agreement that they were violating the California Foreclosure Consultant's Act, Plaintiff used them as an example to point out a $10,000 fine per occurrence could be levied against anyone that was found in violation of the California Foreclosure Consultant's Act.

**January 26, 2009**

- 72 -

278.    Bad Biz Finder published an article entitled, *"Next at Bat: Financial Solutions Center in Corona, CA"* profiling a loan modification company in Corona called Financial Solutions Center.

279.    Bad Biz Finder published an article entitled, *"The Truth About James Parsa is Revealed"* wherein facts about Defendant Parsa's serious sexual misconduct and criminal behavior was published as a matter of public concern and consumer alert.  Said facts were based on public records available for anyone to see at the Orange County Superior Court website.  Plaintiff reported on the fact that Defendant Parsa had been charged with seven counts of statutory rape in the year 2000 and was convicted on two of the counts.  Plaintiff included the criminal case numbers and where to find the information published in the article.

280.    Based on the above-stated blog articles Defendant Attorney Kessler, of Defendant BKGG, filed an action in Defendant OCSC for Defamation Per Se, Tortious Interference in Business Relations, and Tortious Interference in Prospective Business Relations, entitled, "*Parsa Law Group, APC v. Bad Biz Finder*, an unknown entity, Case No. 30-2009-00117752.  (This case will hereinafter be referred to as the "Parsa Case.")

281.    Defamation *Per Se* applies to defamation that is so egregious that the plaintiff does not have to prove that the statements harmed his reputation. The classic examples of defamation *per se* are allegations of (a) serious sexual misconduct; (b) serious criminal misbehavior; (c) or that a person is afflicted with a loathsome disease.

282.    Under the circumstances, Plaintiff could not possibly have been legally-liable for Defamation Per Se.  In fact, later that year, the California State Bar suspended Defendant Parsa for "crimes of moral turpitude," in connection with these statutory rape convictions.

283.    Defendant Parsa was the quintessential "libel-proof" plaintiff as these crimes were committed in the year 2000 and not published by Plaintiff until 2009.  Therefore, the criminal charges had been a matter of public record for nine (9) years prior to Plaintiff's publication of same and presumably had already damaged his reputation to such a degree that anything Plaintiff could have written could not merit Defendant Parsa anything but nominal damages for subsequent defamatory statements. (See, *Marcone v. Penthouse Int'l Magazine* for Men, 754 F.2d 1072, 1079 (3rd Cir. 1985)).

- 73 -

284.     Second, tortious interference with business relationships (or prospective relationships) occurs where the tortfeasor acts to prevent the plaintiff from successfully establishing or maintaining business relationships.   However, this only applies if the business relationship to be "established or maintained" is legal.  Such is not the case here.  The "business relationships" of Defendant Parsa Law Group were never legally formed because the relationship was fraudulently induced, and as such was void *ab initio*.  Plaintiff could not be possibly be liable for tortious interference because the business relationships formed (or to be formed in the future) were not even "form-able" based on fraud.

285.     In addition, Defendant Parsa Law Group violated California State Bar Rules of Professional Conduct, Rule 1-320 by sharing legal fees with non-attorneys.  Defendant Parsa Law Group also violated Rule 1-400 by unlawfully soliciting prospective clients with false advertising. There were no lawyers at Defendant Parsa Law Group nor at its affiliate Defendant NLMC. This fact is demonstrated by an investigation commenced on August 12, 2009 by California Attorney General's Office demanding Defendant Parsa Law Group to corroborate his advertising claims and establish affirmative evidence that California-licensed attorneys performed the work at Defendant Parsa Law Group, Defendant NLMC, to wit:

> *"I am writing regarding certain advertising for your mortgage loan modification business. Under Business and Professions Code section 17508, the California Attorney General may require any person doing business in California to substantiate advertising claims, including claims that (1) purport to be based on factual, objective, or clinical evidence, (2) compare the product's effectiveness or safety to that of other brands or products, or (3) purport to be based on any fact. This is a formal demand under section 17508 that, no later than 20 days from receipt of this letter, you provide evidence of the facts on which the following advertising claims listed below are based.*
>
> *"a.     Evidence and documentation corroborating online testimonials of the company's services from clients:*
> *"Please provide the full name and address of each consumer, information showing the services your company provided to each consumer, who provided the services (including time spent by each person who worked on the file), and the result that your company obtained for each consumer., and him for:" [then the letter name 14 past clients from California and Nevada];*
>
> *"b.     Evidence and documentation corroborating the company's claims of success for past clients:*

- 74 -

1
2
3
4
5
6
7

> "On your website, your company states: "In Previous Loan Modifications or Home Mortgage Modifications, the Parsa Law Group Has Negotiated ... Reduced, Fixed Interest Rates; Lower Monthly Mortgage Payments; Extension of Loan Term; Restructuring of Missed or Delinquent Payments; In Some Cases, Principal Balance Reduction; In Some Cases, Reduction or Short Pay Off Settlement of 2nd or 3rd Mortgages; [and] Lender Compliance with Terms of Making Home Affordable Program." Please substantiate these claims with the name and address of each consumer for whom you achieved one of these results. For each consumer, please provide information showing the services your company provided, who provided the services (including time spent by each person who worked on the file), and the result that your company obtained for each consumer ");

8
9

> " (and)  c.    Evidence that the company was not violating Rule of Professional Conduct 1-320 forbidding attorneys from sharing legal fees with non-attorneys:

10
11
12

> "On your website, you state: "Our attorneys are recognized in the industry as being insightful and innovative leaders in their respective areas of practice." Please substantiate this claim by providing the identity of each such attorney, including yourself, each attorney's area(s) of practice, and information showing his or her experience in the area(s) of practice identified."

13
14
15

286.    Defendant Parsa Law Group never complied with the above requests because the California State Bar suspended his license for crimes of moral turpitude and Mr. Diehl abandoned his investigation.

16
17
18
19
20
21
22
23
24

287.    The case was assigned to Defendant Judge Miller and its sole objective from the outset was to strategically prevent Plaintiff from participating in matters of public concern. This case was never just about Defendants Parsa Law Group, NLMC, or its founders, Defendants Parsa and Dastmalchi.  Nor was it just about Defendant' attorneys, Defendant BKGG and Defendant Attorneys Burkhalter, Kessler, Goodman, Berstein, Myers, *et al*.  The case was intended to censor, intimidate and silence Plaintiff by burdening her with the cost of a legal defense until she abandoned her reports telling the truth to consumers about the California State Bar and the California Department of Real Estate.  California Code of Civil Procedure, Section 425.16 states:

25
26

> "The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process."

27
28

288.    This case and the two that follow after it, represented unconstitutional prior restraint and should never have seen the light of a courtroom.  Any other judge not embroiled

in the conspiracy would have ever let it happen. (Hereinafter, *Parsa Law Group, APC v. Bad Biz Finder*, an unknown entity, et al,. Case No. 30-2009-00117752 will be referred to as the "*Parsa Law Group Case*.")

### January 27, 2009

289. In the Parsa Law Group case, Plaintiff was personally served with a deposition subpoena as an "interested party." The deposition was scheduled for February 11, 2009.

290. Bad Biz Finder published an article entitled, *"Joe Smith at The Financial Solution Center Gives Us the Scoop"*

291. Bad Biz Finder published an article entitled, *"Ex-Parsa Law Group Customer Gets Free Loan Modification Services from HUD on Bad Biz Finder's Blog."*

292. Bad Biz Finder published an article entitled,: *"Parsa Law Group / National Loan Modification's Prospective Customers Are Swarming to Bad Biz Finder For Help."*

### January 28, 2009

293. Bad Biz Finder published an article entitled, *"The Financial Solution Center Welcomes You to Act Fast."*

### January 29, 2009

294. Bad Biz Finder published an article entitled, *"Letter to Cambridge Funding Group, Inc., Another Waste of Space"*

295. Bad Biz Finder published an article entitled, *"Letter to James Parsa's Attorneys, Alton Burkhalter and Dan Kessler."*

### January 30, 2009

296. Bad Biz Finder published an article entitled, *"The Financial Solution Center's Contract is Posted Here."*

297. Bad Biz Finder published an article entitled, *"Contract Requirements Under the CA Foreclosure Consultants Act Revisited-The Financial Solution Center is in Violation of Every Requirement."*

298. Bad Biz Finder published an article entitled, *"Contract Requirements Under The CA Foreclosure Consultant Act Revisited – The Financial Solution Center is in Violation of Every Requirement."*

- 76 -

**January 31, 2009**

299.   Bad Biz Finder published an article entitled, "*A Parsa Law Group Clone: Feldman Law Center = Federal Loan Modification Center = Federal Loan Mod Program.*"

**February 1, 2009**

300.   Bad Biz Finder published an article entitled, "*Better Business Bureau Drops Parsa Law Group's Rating From A+ to B- Due to Bad Biz Finder's Reports.*"

**February 2, 2009**

301.   Bad Biz Finder published an article entitled, "*Tax Accountant Comes to Bad Biz Finder for Answers About Loan Modifications.*"

**February 3, 2009**

302.   Bad Biz Finder published an article entitled, "*How Much Money Does it Take to Bribe the Better Business Bureau?*"

303.   Bad Biz Finder published an article entitled, "*HUD is Free - Why Pay Loan Modification Scams Thousands?*"

304.   Bad Biz Finder published an article entitled, "*We Used to Be Able to Count on Reputable Loan Mod Options Posted on the DRE Website - Not Anymore.*"

305.   Bad Biz Finder published an article entitled, "*Consumer Fraud Alert: Don't Sign a Loan Mod Contract Without Reading This First.*"

306.   Bad Biz Finder published an article entitled, "*Consumer Fraud Alert: Don't Be Fooled By a Law Firm Providing Loan Modification Services.*"

307.   Bad Biz Finder published an article entitled, "*Consumer Fraud Alert: Questions to Ask a Loan Modification Company / Foreclosure Consultant Before Your Work With Them.*"

**February 4, 2009**

308.   Bad Biz Finder published an article entitled, "*Talk is Cheap at the California Department of Real Estate.*"

309.   Bad Biz Finder published an article entitled, "*Our Request to the Orange County Bar Association to Protect Consumers is Rejected.*"

**February 5, 2009**

310. Bad Biz Finder published an article entitled, *"Consumer Fraud Alert From the California Attorney General's Office."*

311. Bad Biz Finder published an article entitled, *"The Bad Biz Finder Philosophy - In Case You Were Wondering."*

312. Bad Biz Finder published an article entitled, *"Questions to Ask a Lawyer Before You Work With Them On Your Loan Modification."*

313. Bad Biz Finder published an article entitled, *"It is Against the Law for Attorneys to Share Legal Fees With Non-Attorneys."*

314. Bad Biz Finder published an article entitled, *"Even Attorneys Have Rules to Follow."*

315. Bad Biz Finder published an article entitled, *"Important Consumer Information: Even Attorneys Have Rules to Follow Regarding Advertising and Soliciting for Clients – Imagine That."*

316. Bad Biz Finder published an article entitled, *"Important Consumer Information: It is Against the Law for Attorneys to Share Legal Fees with Non-Attorneys, a.k.a., Foreclosure Consultants."*

**February 6, 2009**

317. Bad Biz Finder published an article entitled, *"Update on Steven Feldman and Greg Feldman of Feldman Law Center."*

318. Bad Biz Finder published an article entitled, *"What the Bleep is a Forensic Loan Audit? The Financial Solution Center Swears By Them."*

319. Bad Biz Finder published an article entitled, *"Parsa Law Group Lies on Their Blog on WordPress – What a Surprise!"*

**February 8, 2009**

320. Bad Biz Finder published an article entitled, *"Bad Biz Finder's Hit List of 20 CA Law Firms Doing Illegal Loan Modifications."*

**February 9, 2009**

321. Plaintiff sent an introductory email to Defendant Orange County Deputy District Attorney Elizabeth Henderson, at 4:46 PM, who, at the time, was running the Major

- 78 -

1    Fraud Unit (Elizabeth.Henderson@da.ocgov.com) to actively combat loan modification fraud.

2    The email was entitled *"Major Fraud Information-Orange County Loan Modification Scams."*

3    Defendant Attorney Henderson never even replied to the email.

4           *Ms. Henderson:  Since November of 2008 we have been investigating*
     *illegal loan modification companies as well as law firms that are forming*
5    *simply to circumvent the California Foreclosure Consultant Act.  Since January*
     *13 we have reached almost 4,000 people and have written more than 60 posts*
6    *on our blog, http://badbizfinder.wordpress.com.  As a result, hundreds of*
     *California consumers have learned about their rights and have found legal loan*
7    *modification options through HUD and DRE.*

8
           *We've informed them of the contents of The California Foreclosure*
9    *Consultant Act and Assembly Bill No. 180.  We've warned thousands how to*
     *never pay an advanced fee for loan modification services, how to know if your*
10   *loan modification contract is in compliance with the Act,  as well as the*
     *required licensure of these companies.  What questions to ask a foreclosure*
11   *consultant and/or attorney before doing business with that company, and many*
     *more subjects that are vital to begin putting an end to one of the largest*
12   *catastrophes in this state.*

13
           *Most recently we have posted the Attorney General's warning on our*
14   *blog and through persistent efforts got the California Department of Real*
     *Estate to post a whole section on their website about this dilemma.  We*
15   *requested that the Orange County Bar Association post a similar consumer*
     *alert/warning on their website but they refused stating, "we are not a*
16   *regulatory body."  However, we believe it is because the new President of the*
     *OCBA, Mr. Yoder of O'Melveny & Myers is nervous because they are agent for*
17   *service of process on some of the companies we are investigating.  Burkhalter,*
     *Kessler, Goodman & George LLP is a horrible offender in this regard,*
18   *representing Parsa Law Group/National Loan Modification Center among*
     *others.*
19

20
           *We have volumes and volumes of information to share but companies*
21   *that we have exposed in Orange County are still in business even though their*
     *violations are horribly egregious.  We believe we need local support for each*
22   *county and that's why we are writing to you.  Following is more information*
     *about our organization.  We could be very helpful to you if you so desire and*
23   *we don't ask for anything in return whatsoever.  Our greatest reward would be*
     *a successful campaign to alleviate the hardship facing so many homeowners*
24   *today.*

25
           *Biz Finder is a non-profit, anonymous consumer advocacy organization.*
26   *...  We hold true one singular mission: To offer consumers a source of*
     *unbiased facts vital to making informed decisions about issues facing them*
27   *every day.*

28
                                    - 79 -
─────────────────────────────────────────────────────────────
COMPLAINT FOR MONEY DAMAGES, DECLARATORY & INJUNCTIVE RELIEF FOR 42 U.S.C. §1983 CLAIMS, ETC. (AGTG)

*The organization seeks to unearth unethical, illegal and unconscionable practices by individuals, businesses, and organizations and to set the record straight so those who have been harmed have a remedy and those who have not are warned. Bad Biz Finder has championed hundreds of causes and has been an agent for positive change so that the so-called "little guy," becomes a giant with purpose and power.*

*Bad Biz Finder is self-supporting and asks for nothing in return.  Not one day goes by that the organization has not helped scared and hopeless consumers gain footing again, armed with facts that empower them, and for that we are proud.  We do not accept payment, donations, or gifts.  In order for our work to be effective, we must be free of bias and completely objective.  We simply ask the people we help to "pay it forward," and help someone else for free that is in perhaps the same dire straits they once were and pass along our name as a trusted resource.*

*We would like to find out how we can make quicker progress shutting down some of the companies we have already identified as gross offenders stealing thousands of dollars from folks every day.  We hope this email reaches you and that you will be able to help.  Please contact us if you want more information at badbizfinder@aol.com or badbizfinder@gmail.com or simply post a comment on our blog at: http://badbizfinder.wordpress.com.*

*Thank you Elizabeth, Bad Biz Finder*

322.   Plaintiff received no response but confirmed that Defendant Attorney Henderson received the email because, on the same day, Plaintiff included her in an email to Defendant DRE entitled, *"Why Is Parsa Law Group / Nat'l Loan Modification Still In Business???"* and Defendant Attorney Henderson apparently wanted to forward it to someone, but accidentally replied to Plaintiff instead, with only two words:  "Another email."

**February 10, 2009**

323.   Bad Biz Finder published an article entitled, *"Systematic Foreclosure Prevention & Mortgage Modification Act of 2009."*

324.   Bad Biz Finder published an article entitled, *"Let's See Some Action!!! Rep. Maxine Waters (D-CA) and the "Systematic Foreclosure Prevention and Mortgage Modification Act of 2009."*

**February 11, 2009**

325.   Bad Biz Finder published an article entitled, *"House Burning Down?  Call the OCBA!  Its Members Scamming You?  You're On Your Own."*

- 80 -

326.    Bad Biz Finder published an article entitled, *"Why Would Burkhalter, Kessler, Goodman & George LLP Be a Subscribing Member to Leads 411 – Loan Modification Exchange?"*

327.    Bad Biz Finder published an article entitled, *"Burkhalter, Kessler, Goodman & George LLP is in the Thick of Things On Corrupt Loan Mods: Part I."*

328.    Bad Biz Finder published an article entitled, *"Burkhalter, Kessler, Goodman & George LLP is in the Thick of Things On Corrupt Loan Mods: Part II."*

### February 12, 2009

329.    Bad Biz Finder published an article entitled, *"Leland Moglen Want to Make a Donation to Bad Biz Finder."*

330.    Bad Biz Finder published an article entitled, *"Feldman Law Center (Among Many Others) Are Practicing Law in States Where They Are Not Licensed."*

### February 13, 2009

331.    Bad Biz Finder published an article entitled, *"Are Attorneys and Law Firms Exempt From the California Foreclosure Consultants Act?  A Must Read Before Signing."*

332.    Bad Biz Finder published an article entitled, *"Five Safety Measures to Help Consumers Find the Best Solution for Loan Modifications."*

333.    Bad Biz Finder published an article entitled, *"See Feldman Law Center Agreement - We Can't Decide Which is Worse: Feldman's, Parsa Law Group's, or The Financial Solution Center's - You Be the Judge, They're All on Our Blog."*

### February 14, 2009

334.    Bad Biz Finder published an article entitled, *"Bad Biz Finder Will Answer Your Questions and Check Out Your Loan Mod Company or Law Firm for Free Before You Sign So You Are Safe & Informed"*

335.    Bad Biz Finder published an article entitled, *"We Love Comments and Input on Our Blog and This is Why ... We Can Make Important Clarifications If There is Vagueness."*

336.    Bad Biz Finder published an article entitled, *"The Bad Biz Finder 'Approved Attorneys List' is Shelved."*

- 81 -

337.    Bad Biz Finder published an article entitled, *"Another Feldman Law Center Casualty - He Even Created an Email Address to Commemorate the Occasion."*

**February 15, 2009**

338.    Bad Biz Finder published an article entitled, *"CA Bar Issues Ethics Advisory - They Fear Attorneys May Be Duped By Foreclosure Consultants."*

**February 16, 2009**

339.    Bad Biz Finder published an article entitled, *"Consumers Asked Us to Check it Out - 2nd Chance Legal Services."*

340.    Bad Biz Finder published an article entitled, *"Nevada and Alabama Consumers Seek Out Bad Biz Finder - Links for Help Are Here."*

**February 17, 2009**

341.    Defendant Brisco & Associates (on behalf of Defendant UDR Villa Venetia) filed a lawsuit against Plaintiff in Defendant OCSC entitled, *UDR Villa Venetia Apartments LLP v. Erin K. Baldwin* for Unlawful Detainer, Case No. 30-2009-00244203.  The case was assigned to Defendant Commissioner Pacheco.  *(Hereinafter this case will be referred to as the "First UDR Unlawful Detainer Case.")*

342.    Bad Biz Finder published an article entitled, *"Consumers Asked Bad Biz Finder to Check it Out - The Firm Group, Inc. (Irvine, CA)."*

343.    Bad Biz Finder:    *"Rep. Maxine Waters is All Talk and No Action and So Is the OC DA's Office, Orange County Bar, California State Bar and Attorney General Jerry Brown."*

**February 18, 2009**

344.    In the ***First UDR Unlawful Detainer Case***, Plaintiff filed a Motion to Quash Service of Summons and Complaint and the hearing was scheduled for February 23, 2009.

**February 19, 2009**

345.    Bad Biz Finder published an article entitled, *"Consumers Asked Us to Check Out: Consumer Debt Advocate (aka Apply 2 Save)."*

346.    Bad Biz Finder published an article entitled, *"Law Offices of Leland L. Moglen and M3 Legal Services is Up Next."*

- 82 -

347. Bad Biz Finder published an article entitled, *"Dark Connections Between Parsa, Dastmalchi, Lindsey, the Butler Family, and, of Course, the Ringleader is Alton Burkhalter."*

**February 20, 2009**

348. Bad Biz Finder published an article entitled, *"Consumers Asked Us to Check Out: Law Offices of Leland L. Moglen and M3 Legal Services."*

**February 22, 2009**

349. In the ***First UDR Unlawful Detainer Case***, Defendant Attorney Poer on behalf of Defendant UDR Villa Venetia filed a Request for Default against Plaintiff. Defendant Attorney Poer then contacted Plaintiff and intentionally misrepresented that she had filed a Request for Dismissal and that Plaintiff's presence would not be necessary at the hearing on the Motion to Quash the next day.

350. Bad Biz Finder published an article entitled, *"Feldman Law Center Fan is Very Confused: We Straighten Her Out."*

**February 23, 2009**

351. In the ***First UDR Unlawful Detainer Case***, the Court entered a "Notice to Filing Party" stating that Defendant Attorney Poer had filed a Request for Default (not a Request for Dismissal as she claimed) but that the Court had rejected the Request for Default due to fact that Plaintiff had already filed a Motion to Quash and as such, a default could not be entered.

352. In the ***First UDR Unlawful Detainer Case***, Plaintiff appeared for the hearing on the Motion to Quash and Defendant Attorney Poer was already present before the Court. Plaintiff demanded a copy of the Request for Dismissal Defendant Attorney Poer allegedly filed the day before and she could not produce said document. At the hearing, Defendant Attorney Poer orally dismissed the action and a Request for Dismissal was entered into the court record on February 27, 2009.

353. Bad Biz Finder published an article entitled, *"Griswold & Agdeppa Cover Letter: They've Coined a New Alias for an Attorney - 'Mortgage Investigator.'"*

- 83 -

354. Bad Biz Finder published an article entitled, *"More Information Reaches the Surface on Griswold & Agdeppa Thanks to an Insider."*

355. Bad Biz Finder published an article entitled, *"Griswold & Agdeppa's Contract is Here."*

356. Bad Biz Finder published an article entitled, *"Griswold & Agdeppa's Third Party Authorization and Limited Power of Attorney."*

357. Bad Biz Finder published an article entitled, *"Steven C. Feldman - Are You Out There? We Have Questions For You From A Consumer (And James Parsa - Why Don't You Answer the Same)"*

358. Bad Biz Finder published an article entitled, *"Griswold & Agdeppa Are Running a Close Second to the Scams at Parsa Law Group and Feldman Law Center."*

359. Bad Biz Finder published an article entitled, *"Griswold & Agdeppa's Contract is Here - Haunting Memories of Parsa Law Group and Feldman Law Center."*

360. Bad Biz Finder published an article entitled, *"Griswold & Agdeppa's Third-Party Authorization and Limited Power of Attorney."*

## February 24, 2009

361. Bad Biz Finder published an article entitled, *"Consumer Complaints Drive the Investigations of Bad Biz Finder."*

362. Bad Biz Finder published an article entitled, *"Parsa Law Group/National Loan Modification Center Strikes Again!!"*

363. Bad Biz Finder published an article entitled, *"Feldman Law Center Has Joined our Blog Space - Now We're All Neighbors - Including Parsa Law Group."*

## February 25, 2009

364. Bad Biz Finder published an article entitled, *"Solution Law Group - Jeffrey A. Cancilla, etc. - What a Scam."*

365. Bad Biz Finder published an article entitled, *"Another Parsa Law Group Scam: www.HomeForeClosureFighter.com."*

- 84 -

366. Bad Biz Finder published an article entitled, *"Solution Law Group, Jeffrey A. Cancilla & Associates, The Law Offices of Jeffrey A. Cancilla, and Solution Processing LLC: How Many Names Does It Take to Scam a Consumer?"*

<u>**February 26, 2009**</u>

367. In the ***Parsa Case***, Defendant BKGG Attorneys filed an *Ex Parte* Application for an Order Shortening Time to File a Motion to Compel Appearance at Deposition in connection with the Deposition Subpoena served on Plaintiff as an "interested party" on January 27, 2009, *supra*. The hearing was set for the next day, February 27, 2009.

368. In the ***Parsa Case***, Defendant Attorneys Berstein and Parsa submitted Declarations in support of the *Ex Parte* Application for an Order Shortening Time to File a Motion to Compel Appearance at Deposition," *supra*.

369. Bad Biz Finder published an article entitled, *"Can a Lawyer Charge Fees in Advance for a Loan Modification?"*

370. Bad Biz Finder published an article entitled, *"Consumer Calls Feldman Law Group, 'The Biggest Scums of the Earth.'"*

<u>**February 27, 2009**</u>

371. In the ***First UDR Unlawful Detainer Case***, the Court entered a Minute Order granting Plaintiff's Motion to Quash. In addition, the Request for Dismissal that Defendant Attorney Poer claimed to have filed on February 23, 2009, was entered into the record.

372. In the ***Parsa Case***, the *Ex Parte* for an Order Shortening Time to File a Motion to Compel Appearance at Deposition took place and Judge Miller granted Defendant Parsa Law Group's request and set the hearing for March 10, 2009..

<u>**March 2, 2009**</u>

373. After dismissal of the ***First UDR Unlawful Detainer Case***, Defendant OCSC (specifically, Harbor Justice Center) concealed the case docket from public view and Plaintiff could not access the records. Plaintiff questioned the court clerk who responded: *"It's standard procedure to block from public view any unlawful detainer case where the tenant wins."*

- 85 -

374.   In the ***Parsa Case***, Defendant Parsa Law Group (through its Attorneys Defendant BKGG) filed its "Motion to Compel Appearance at Deposition" and the Motion scheduled for March 10, 2009.

375.   Bad Biz Finder published an article entitled, *"Consumers Ask Us to Check Out Danny Bowz - Part I: Licensing Information."*

376.   Bad Biz Finder published an article entitled, *"Consumers Ask Us to Check Out Danny Bowz – Part 1 – Licensing Information"*

377.   Bad Biz Finder published an article entitled, *"Law Offices of Danny Bowz - Part 2: Homewell Realty Website is Packed Full of Lies."*

378.   Bad Biz Finder published an article entitled, *"Harsh Words From a Consumer About Warren Quann & 2nd Chance Legal Services."*

379.   Bad Biz Finder published an article entitled, *"How Many Lives Have to Be Destroyed Before Feldman Law Center is Shut Down For Good?"*

380.   Bad Biz Finder published an article entitled, *"Consumer Debt Advocate is Cut Off at the Pass."*

### March 3, 2009

381.   Two court days after Defendant UDR Villa Venetia dismissed its ***First UDR Unlawful Detainer Case***, Defendant Brisco & Associates (on behalf of Defendant UDR Villa Venetia) filed a <u>second unlawful detainer lawsuit in which it set forth the exact same claims</u> as the first case, entitled, *UDR Villa Venetia Apartments LLP v. Erin K. Baldwin*, Case No. 30-2009-00248999.   The case was once again assigned to Defendant Commissioner Pacheco. *(This case is hereinafter referred to as the "**Second UDR Villa Venetia Case**.")*

382.   Plaintiff received an email at 4:46AM from t@toni.org, the email belonging to Defendant Schneider, CEO of Defendant Automattic who owns Defendant WordPress. This was the first of hundreds of emails Plaintiff would receive from Defendant Schneider who as blog host to millions of blogs, spent an inordinate amount of time threatening Plaintiff, shutting down blogs he presumed belonged to her, ordering her to remove articles at a whim and became embroiled in the conspiracy.   It stated:

> *Hi:   We host your blog at WordPress.com. We've received multiple subpoenas and emails from the law firm representing James Parsa in this lawsuit against*

- 86 -

1    *you. Among other things, they are asking us to remove the posts on your blog*
     *who mention them. What is your position on their lawsuit? Regards, Toni*
2    *Toni Schneider | CEO Automattic Inc. | 415.717.1314 | www.automattic.com*

3    366.    Plaintiff's response:

4        *"We haven't seen any subpoenas, so it's hard to comment. Could you scan*
         *them and email them to us? What's the WordPress protocol for things like this;*
5        *we can't find it on the WordPress site anywhere. Bad Biz Finder*

6
     383.    Bad Biz Finder published an article entitled, *"Breaking News: Griswold &*
7
*Agdeppa Has Joined Forces with Fransen & Molinaro: Double Scam Time."*
8
                              **March 4, 2009**
9
     384.    Bad Biz Finder published an article entitled, *"More Insight Into 2nd Chance*
10
*Legal Services."*
11
     385.    Bad Biz Finder published an article entitled, *"Breaking News: Parsa Law*
12
*Group Tells a Florida Consumer, 'Pay Us - Don't Pay Your Mortgage.'"*
13
     386.    Bad Biz Finder published an article entitled, *"A New Player on the Radar:*
14
*Adjustable Rate Mediators - "Attorney-Based" Does Not Mean "Law Firm" - Thus, They*
15
*Cannot Ask You to Pay Upfront Fees."*
16
     387.    Bad Biz Finder published an article entitled, *"Consumer Faces Off With Warren*
17
*Quann and at 2nd Chance Legal Services and Discovers the True Definition of Scum Bag."*
18
                              **March 5, 2009**
19
     388.    Bad Biz Finder published an article entitled, *"Marriage of Griswold & Agdeppa*
20
*to Fransen & Molinaro Leaves Prospective Clients Confused and Concerned."*
21
                              **March 7, 2009**
22
     389.    Bad Biz Finder published an article entitled, *"Bad Biz Finder Writes to Head*
23
*Honchos at CA State Bar."*
24
                              **March 10, 2009**
25
     390.    ***In the Parsa Case***, a Motion to Compel Appearance at Deposition came before
     the Court.
26
     391.    ***In the Parsa Case***, Defendant Parsa Law Group (through its attorneys
27
Defendant BKGG) filed a First Amended Complaint.
28

- 87 -

392. *In the Second UDR Unlawful Detainer Case*, Defendant UDR Villa Venetia (through its attorneys Defendant Brisco & Associates) filed an Application & Order to Serve Summons By Posting Re Unlawful Detainer by UDR Villa Venetia Apartments, L.P. The application was granted.

393. Bad Biz Finder published an article entitled, *"Is Aleshire & Wynder, LLP Harboring a Loan Mod Scam Fugitive or Are They In Business?"*

394. Bad Biz Finder published an article entitled, *"Breaking News: Holly Fujie, CA State Bar President, Takes Action!"*

395. Bad Biz Finder published an article entitled, *"What Happened? Holly Fujie, CA State Bar President is All Talk and No Action."*

396. Bad Biz Finder published an article entitled, *"Fort Worth, Texas Couple Gets Scammed By 2nd Chance Legal Services."*

## March 11, 2009

397. *In the Parsa Case*, the Court entered Minutes regarding the March 10, 2009 Motion hearing, which doesn't appear to have taken place.

398. Bad Biz Finder published an article entitled, *"Parsa Law Group is At It Again: Not Only Did They NOT Help This Guy, But They Left Him In a Way Worst Position Than When He Came to Them!"*

## March 12, 2009

399. Bad Biz Finder published an article entitled, *"Another Consumer Saved From Griswold & Agdeppa-Fransen & Molinaro's Lies and Destruction."*

## March 13, 2009

400. Bad Biz Finder published an article entitled, *"A Current Feldman Law Center Employee Tells the Truth."*

401. Bad Biz Finder published an article entitled, *"A Very Savvy Consumer Saves Herself From Parsa Law Group Today: And Learns A Thing or Two About How a REAL Attorney Retains Clients."*

## March 15, 2009

- 88 -

402.    Bad Biz Finder published an article entitled, "By Far the Stupidest Comment Received on Bad Biz Finder's Blog in Two Months."

403.    Bad Biz Finder published an article entitled, *"Breaking News:  Bad Biz Finder Has a New Game Plan – Read Carefully."*

404.    Bad Biz Finder published an article entitled, *"Bad Biz Finder Calendar."*

### March 16, 2009

405.    ***In the Parsa Case***, Defendant Attorney Moberg (of Reed Smith, LLP in Los Angeles, California) at the request of Defendant Attorney Myers of Defendant BKGG composed and signed a letter as counsel of record for AOL.com that stated:

> *"This letter confirms follows up our letter of February 26 and our telephone call today during which you informed me that you have not received any objection, motion to quash or other communication from the subscriber or any attorney on its behalf regarding the production of information by AOL. Accordingly, the following letter provides the information we agreed as set forth in the prior letter.*
>
> *"The name and telephone number of the subscriber having been assigned the address* badbizfinder@aol.com *is:  **Beverly Sullivan**, Day and Eve phone number: (454) 247-1084.*
>
> *"Additional IP addresses at which this account was accessed:  IP 64.74.98.14 and 201.161.143.6."*

406.    Plaintiff researched whether AOL.com was represented by Reed Smith and discovered that one of Reed Smith's attorneys (now operating out of its London office) was in-house counsel for AOL.com at one time.  However, seemingly, Defendant Moberg had no affiliation whatsoever.  Also, the "additional IP addresses" stated in Defendant Moberg's letter are static (dedicated) corporate IP addresses for "Linked In Corporation" in Mountain View, California (IP 64.74.98.14) and "Cablevision" located in Arandas, Jalisco, in Mexico (201.161.143.6).  Lastly, Defendant Moberg identified the name of the owner of badbizfinder@aol.com as Beverly Sullivan, not Plaintiff.

407.    In the ***Second UDR Unlawful Detainer Case***, Plaintiff filed a "Motion to Quash Service of Summons (and Complaint)" and the hearing is set for March 27, 2009.

- 89 -

408. Also, in the ***Second UDR Unlawful Detainer Case***, Plaintiff filed and was granted a "Waiver of Court Fees and Costs."

**March 17, 2009**

409. ***In the Second UDR Unlawful Detainer Case***, Plaintiff filed a Motion to Quash Service of Summons & Complaint and the date for the Motion hearing was set for March 27, 2009. At the same time Plaintiff filed an Application for Waiver of Court Fees and Costs.

410. ***In the Parsa Case***, Defendant Parsa Law Group (through its attorneys, Defendant BKGG) attempted to file its Second Amended Complaint and it was rejected by the Court on the same day because Defendant BKGG attorneys had failed to request Leave to Amend the First Amended Complaint and according to the Notice to Filing Party, the clerk reminded Defendant BKGG, "NO WHITE OUT ALLOWED ON DOCUMENTS!"

411. Bad Biz Finder published an article entitled, *"Review: Dickinson & Associates / Dickinson Legal / Steven Lee Dickinson, Esq."*

**March 18, 2009**

412. ***In the Parsa Case***, Defendant Parsa Law Group (through its attorneys, Defendant BKGG) filed an Ex Parte Application for Leave to Amend the Second Amended Complaint and it was set for hearing the next day.

413. Bad Biz Finder published an article entitled, *"Review: Marc Tow & Associates / Marc R. Tow & Associates / Law Offices Of Marc R. Tow / Marc R. Tow & Associates Lawyers / Marc Raymond Tow, Esq."*

**March 19, 2009**

414. ***In the Parsa Case***, Defendant Parsa Law Group (through its attorneys, Defendant BKGG) appeared Ex Parte for Leave to File a Second Amended Complaint. Defendant Parsa Law Group added two (2) causes of action to the already existing causes of action of Defamation Per Se and Tortious Interference. They were: (a) Trade Libel and (b) Unfair Competition and Business Practices (California Business & Professions Code section 17200, et seq.) They also added, "Erin K. Baldwin, an individual; and Beverly Sullivan, an individual." The Complaint also stated:

> *"Co-Defendants BALDWIN, SULLIVAN and DOES 1-10 are liable for the acts of Defendant BBF [Bad Biz Finder] alleged in this Complaint as its alter ego.*

- 90 -

*Recognition of the privilege of separate existence would promote injustice because Co-Defendants BALDWIN, SULLIVAN and DOES 1-10 organized and controlled BBF so that it is now and at all times mentioned in this Complaint, was merely an instrumentality, agency, conduit or adjunct of Co-Defendants BALDWIN, SULLIVAN and DOES 1-10 and Co-Defendants BALDWIN, SULLIVAN and DOES 1-10 , in bad faith dominated and controlled Defendant BBF* ***such that Co-Defendants BALDWIN, SULLIVAN and DOES 1-10 and Defendant BBF are jointly and severally liable for the acts complained of in this Complaint****."*

415.    There is a common thread through each case filed by Defendant BKGG against Plaintiff.  It appears that the rules don't apply to Defendant BKGG and its documents are consistently rejected by the Civil Unlimited Clerk.  However, each time Defendant BKGG appears before Defendant Judge Miller ex parte and seems to overcome each and every rejection notice.  Perhaps that is because Defendant Judge Miller and BKGG partners, Defendants Goodman and Kessler were adjunct professor of law at the same time at Defendant Whittier Law School and this extrajudicial affiliation worked to the advantage of Defendants UDR and Parsa Law Group and to the extreme disadvantage of Plaintiff.

416.    Bad Biz Finder published an article entitled, *"Bad Biz Finder Kicks It Up a Notch – Bam! Let's Start With Feldman Law Center."*

417.    Bad Biz Finder published an article entitled, *"Bad Biz Finder Celebrates Over 20,000 Blog Hits Today!!"*

### March 20, 2009

418.    In the ***Second UDR Unlawful Detainer Case***, Plaintiff files her Proof of Service Re Motion to Quash Service of Summons and Complaint.

### March 21, 2009

419.    Bad Biz Finder published an article entitled, *"Marc Tow Asks His Employees to Come to His Defense!  It's Really Pathetic When You Have to Pay For Testimonials."*

420.    Bad Biz Finder published an article entitled, *"Review:  Law Offices of Lillian Sedaghat / Lillian Sarah-Sedaghat, Esq."*

421.    Bad Biz Finder published an article entitled, *"Who is Worse:  Marc Tow or James Parsa?  Consumers Weigh In."*

### March 22, 2009

- 91 -

422.    Bad Biz Finder published an article entitled, *"Marc Tow Review Update: Is Ashish Patel a Common Name? One of Our Consumer Attorneys Sets Us Straight."*

423.    Bad Biz Finder published an article entitled, *"Not Only is Marc Tow a Crook, But He's a Cheap Crook."*

424.    Bad Biz Finder published an article entitled, *"Feldman Law Center (Fed Mod) Buys Apply 2 Save."*

**March 23, 2009**

425.    Bad Biz Finder published an article entitled, *"Marc R. Tow: Part 2 – A Tangled Web of Companies."*

426.    Bad Biz Finder published an article entitled, *"Breaking News!!! Legal Aid Offers Bad Biz Finder Free Loan Modifications and Legal Advice and There Is No Income Qualification."*

**March 24, 2009**

427.    ***In the Second UDR Unlawful Detainer Case***, Defendants UDR Villa Venetia (through its attorneys, Defendant Brisco & Associates) filed its Opposition to Plaintiff's Motion to Quash Service of Summons and Complaint.

428.    Bad Biz Finder published an article entitled, *"Review: Marc R. Tow – Parts 1 & 2 Combined."*

**March 26, 2009**

429.    Bad Biz Finder published an article entitled, *"Breaking News!! The King of Subprime Mortgage and Loan Mod Scams, Alex Dastmalchi and His Loyal Attorney, Alton Burkhalter, Are Exposed!!!"*

**March 27, 2009**

430.    ***In the Second UDR Unlawful Detainer Case***, the hearing for Plaintiff's "Motion to Quash Service of Summons (and Complaint)" came before the Court as scheduled before Defendant Commissioner Pacheco.  Plaintiff anticipated that Defendant Commissioner Pacheco would deny her Motion and demand that she answer the Complaint.  So when Defendant Commissioner Pacheco denies Plaintiff's Motion and states, "Miss Baldwin, it's time to file a responsive pleading," Plaintiff states, "I have your Honor" and served Defendant

- 92 -

1  Attorney Brisco with a Demurrer to the Complaint. The hearing on the Demurrer was

2  scheduled for April 10, 2009.

3       431.    Bad Biz Finder published an article entitled, *"Reminder of Bad Biz Finder*

4  *Rule."*

5       432.    Bad Biz Finder published an article entitled, *"Consumer Alert!!! M3 Legal*

6  *Services is a Scam and Leland Moglen is a Crook: Warning to Consumers in Foreclosure and*

7  *Prospective Employee Recruits."*

**March 28, 2009**

8

9       433.    Bad Biz Finder published an article entitled, *"Feldman Law Center Gets a 'C'*

10  *From the BBB, Not an 'A' As Their Ads Claim."*

11       434.    Bad Biz Finder published an article entitled, *"We Have the Wrong 'Julie' /*

12  *'Julia' Greenfield - Bad Biz Finder Sets the Record Straight and Prints Necessary*

13  *Retraction."*

**March 29, 2009**

14

15       435.    Bad Biz Finder published an article entitled, *"What Do All These Companies*

16  *Have in Common? Alton Burkhalter and Alex Dastmalchi - Uncovering the Common*

17  *Denominator in Real Estate Scams in CA and a Ring of Fronts for Illegal Activity Across the*

18  *United States."*

**March 30, 2009**

19       436.    ***In the Parsa Case***, Defendant Parsa Law Group (through its attorneys,

20  Defendant BKGG attorneys) filed a Proof of Service of Summons of the Second Amended

21  Complaint.  However, the docket in this case also states that Defendant BKGG attorneys also

22  filed a Proof of Service on April 6, 2009 ___**and**___ April 7, 2009.

23       437.    Bad Biz Finder published an article entitled, *"Parsa Law Group Threatens*

24  *WordPress CEO, Toni Schneider, and Bad Biz Finder's First Amendment Right to Free*

25  *Speech."*

**March 31, 2009**

26

27       438.    Bad Biz Finder published an article entitled, *"No More Chances For 2nd*

28  *Chance!!!! And The Walls Come Tumblin' Down ..."*

- 93 -

**April 2, 2009**

439.   In the ***Second UDR Unlawful Detainer Case***, Defendant UDR Villa Venetia (through its attorneys Defendant Brisco & Associates) filed an Amended Complaint.

**April 3, 2009**

440.   Bad Biz Finder published an article entitled, *"Scott Drexel, Chief Trial Counsel for the State Bar of CA Seeks 2nd 4-Yr Term: His Job is To Prosecute Loan Mod Scams – How's He Doing? He's Asking For Public Comment So Let's Give it To Him!"*

441.   Bad Biz Finder published an article entitled, *"Wanna See Marc Tow Squirm? He's Appearing at Your Local Courthouse on April 20, 2009"*

442.   Bad Biz Finder published an article entitled, *"Bad Biz Finder – Back to Basics."*

**April 4, 2009**

443.   Bad Biz Finder published an article entitled, *"2nd Chance May Be Out of Commission But Superior Properties and Chris Mesunas Are There to Pick Up the Pieces"*

444.   Bad Biz Finder published an article entitled, *"We Try to Warn Consumers About Loan Mod Predators and We Just Get Hassled By Spineless Organizations (WordPress)That Don't Practice What They Preach."*

**April 6, 2009**

445.   ***In the Parsa Case***, Defendant Parsa Law Group (through its attorneys, Defendant BKGG) filed a Proof of Service of Summons of the Second Amended Complaint. However, the docket in this case states that Defendant BKGG attorneys also filed a Proof of Service on March 30, 2009 and April 7, 2009.

**April 7, 2009**

446.   ***In the Parsa Case,*** Defendant Parsa Law Group (through its attorneys, Defendant BKGG) filed a Proof of Service of Summons of the Second Amended Complaint. However, the docket in this case states that Defendant BKGG attorneys also filed a Proof of Service on March 30, 2009 and April 6, 2009.  The reason why Defendant BKGG kept re-filing its Proof of Service is because it was waiting for a response from a subpoena it had issued to Time Warner to provide confidential personally-identifying information about

- 94 -

Plaintiff's cable account so they could name her to the Complaint but it never came because it's illegal to request that kind of information without a court order.

447. In the *Second UDR Unlawful Detainer Case*, Plaintiff discovered that Defendant UDR, together with its unlawful detainer attorneys, Defendant Brisco & Associates, Defendant Attorneys Brisco and Poer, maintained an improper and unethical relationship with Defendant Commissioner Pacheco whereby they collectively worked together to dispose of 10-12 unlawful detainer cases per month in the year 2009. This "working relationship" garnered a substantial financial benefit to Defendant UDR based on the aforementioned illegal contract clauses resulting in unjust enrichment. This substantial financial benefit was shared with Defendant Commissioner Pacheco, Brisco & Associates, and Attorneys Brisco and Poer.

448. As such, Plaintiff filed a 170.6 Challenge against Defendant Commissioner Pacheco, in the *Second UDR Unlawful Detainer Case.*

449. Bad Biz Finder published an article entitled, *"Is Moe Bedard Stupid, a Bad Businessman, a Racist and Woman-Hater, or All of the Above?"*

450. Bad Biz Finder published an article entitled, *"Marc Tow is Being a Tool Again: EZ Access Funding LLC and USA Wealth Institute."*

451. Bad Biz Finder published an article entitled, *"2nd Chance Heir, Chris Mesunas, is Just Another Patsy for Alex Dastmalchi, Alton Burkhalter, and Daniel Kessler."*

452. Bad Biz Finder published an article entitled, *"Rodis Law Group Pulls a Fast One on Their Retainer Agreement."*

453. Bad Biz Finder published an article entitled, *"Moe Bedard Reigns As Fool of the Century."*

### April 8, 2009

454. *In the Second UDR Unlawful Detainer Case:* Defendant Commissioner Pacheco Finalized Minutes for Chambers Work and granted Plaintiff's 170.6 Peremptory Challenge.

455. Bad Biz Finder published an article entitled, *"James Burns, Esq.: Top Ten Reasons Why You Shouldn't Call Him For a Loan Modification."*

- 95 -

456.   Bad Biz Finder published an article entitled, *"John McConnin is a Jack of All Trades..."*

457.   Bad Biz Finder published an article entitled, *"Say It Isn't So!! James Parsa on You Tube? Consumers — Change the Channel!!"*

458.   Bad Biz Finder published an article entitled, *"Update on Consumer Debt Advocate / Apply 2 Save / Sleeping Giant Media Works Inc."*

459.   Bad Biz Finder published an article entitled, *"John McConnin Hasn't Decided What He Wants to Be When He Grows Up."*

### April 9, 2009

460.   In the ***Second UDR Unlawful Detainer Case***, Plaintiff demands a Jury Trial and it is scheduled for April 20, 2009.

461.   Bad Biz Finder published an article entitled, *"Angry 2nd Chance Consumers Want Dan Kessler's Contact Information"*

462.   Bad Biz Finder published an article entitled, *"Feds Target Fed Mod and National Loan Mod Ctr."*

463.   Bad Biz Finder published an article entitled, *"Do You Want to See a True Con Man at Work? Moe Bedard Comments on Mark Cuban's Blog."*

### April 10, 2009

464.   ***In the Second UDR Unlawful Detainer Case:***  Plaintiff's case is reassigned to criminal court judge, Defendant Judge Robison, in H-04, famous for his tough DUI sentencing.  It is still not clear why an Unlawful Detainer action was reassigned to a criminal judge.

465.   ***In the Second UDR Unlawful Detainer Case***, the hearing on Plaintiff's Demurrer to the Complaint is rescheduled to May 1, 2011.

466.   ***In the Second UDR Unlawful Detainer Case***, Defendant UDR Villa Venetia filed a response to Plaintiff's Demurrer to the Complaint.

467.   Bad Biz Finder published an article entitled, *"Another Parsa Law Group Adventure '321 Foreclosure' Sounds Like They're Counting Down to Your Foreclosure .. At Least They're Finally Being Honest"*

- 96 -

468.    Bad Biz Finder published an article entitled, *"Apply 2 Save Employee Jumps Ship - Smart Guy - Hear What He Has To Say"*

### April 11, 2009

469.    ***In the Parsa Case***, Defendant Judge Miller signed a court order demanding Time Warner Cable's compliance with Defendant BKGG's request for personally identifying information for I.P. address 76.87.33.0.   This was a violation of Plaintiff's right to publish anonymously. In *Lovell v. Griffin* (303 U.S. at 303 U. S. 452) the United States Supreme Court held:

> *"There can be no doubt that such an identification requirement would tend to restrict freedom to distribute information, and thereby freedom of expression. Liberty of circulating is as essential to that freedom as liberty of publishing; indeed, without the circulation, the publication would be of little value."*

### April 13, 2009

470.    ***In the Parsa Case***, a Notice of Ruling is filed by BKGG regarding the Order to Time Warner to for personally identifying information for I.P. address 76.87.33.0, a violation of Plaintiff's privacy and right to publish anonymously..

471.    Bad Biz Finder published an article entitled, *"Steve Dibert at MFI-Mod Squad Gives Consumer Debt Advocate a Thumbs Up But Apply 2 Save a Thumbs Down???"*

472.    Bad Biz Finder published an article entitled, *"Who Is Oleg Artichoke? We Mean, Artischuk. And Why All of a Sudden Are We Buried With Requests for Information, Tips and Complaints About This Guy?"*

### April 14, 2009

473.    Bad Biz Finder published an article entitled, *"Steven C. Feldman Finally Got What's Comin' To Him."*

474.    Bad Biz Finder published an article entitled, *"Comment From 2nd Chance Victim."*

475.    Bad Biz Finder published an article entitled, *"Oleg Artishuk Fights Back – Probably Not a Fair Fight."*

476.    Bad Biz Finder published an article entitled, *"WordPress Orders Bad Biz Finder to Stop Hurting the Feelings of Parsa, McConnin and Molinaro."*

- 97 -

**April 15, 2009**

477.    Bad Biz Finder published an article entitled, *"Loan Mod Victims Can Get Money Back From CA State Bar's 'Client Security Fund.'"*

478.    Bad Biz Finder published an article entitled, *"Another Hit and Run By Rodis Law Group"*

**April 16, 2009**

479.    Bad Biz Finder published an article entitled, *"A Loan Goddess & Freedom Equity Will 'Rescue' Your Home: Or So Steven Duplain, Susan Herman & Seth Trejo Claim."*

480.    ***In the Second UDR Unlawful Detainer Case***, Plaintiff filed a Demurrer to the Amended Complaint and it is scheduled for May 1, 2009.

481.    Bad Biz Finder published an article entitled, *"Loan Mod Scam Attys Are Being Protected, Not Prosecuted, By Drexel at the CA State Bar."*

**April 19, 2009**

482.    Bad Biz Finder published an article entitled, *"Bad Biz Finder Reorganizes Blog to Help Consumers Find Information Quicker and to Help the Lazy Bureaucrats Plagiarize Our Information Easier."*

**April 21, 2009**

483.    Bad Biz Finder published an article entitled, *"Rodis Law Group = America's Law Group (aka Law Offices of Ronald P. Rodis = Law Offices of Nicholas Chavarela)"*

484.    Bad Biz Finder published an article entitled, *"Rodis Law Group = America's Law Group = Tax Relied ASAP."*

485.    Bad Biz Finder published an article entitled, *"The Foreclosure Education Center" is Not for the Benefit of Consumers: Founding Fathers Are Jeffrey Cancilla, Nathan Fransen & James King."*

486.    Bad Biz Finder published an article entitled, *"James Parsa:  Personal Injury Attorney or Mortgage and Real Property Attorney??  You Decide."*

487.    Bad Biz Finder published an article entitled, *"James Parsa's Criminal Past is Revealed: Must Be 18 Years of Age or Older to View This Post."*

- 98 -

**April 22, 2009**

488.    Bad Biz Finder published an article entitled, *"James Parsa's 'American Dream' Is Not for the Faint of Heart."*

489.    Bad Biz Finder published an article entitled, *"We Love Parsa Law Group, Says CA Dept. of Real Estate & OC District Attorneys' Office."*

**April 23, 2009**

490.    Bad Biz Finder published an article entitled, *"About Loan Mods (FAQs)"*

491.    Bad Biz Finder published an article entitled, *"Fake Consumer Help"*

492.    Bad Biz Finder published an article entitled, *"What Are the Laws Governing Loan Modification in CA?"*

**April 24, 2009**

493.    **In the Second UDR Unlawful Detainer Case**, Plaintiff filed the Proof of Service on the Demurrer to the Amended Complaint.

494.    **In the Second UDR Unlawful Detainer Case**, Defendant UDR Villa Venetia filed its Opposition to Plaintiff's Demurrer to the Amended Complaint.

495.    Bad Biz Finder published an article entitled, *"Jordan Thomas Wallick, Attorney Brian J. Colombana, Mortgage Relief Law Ctr, Federal Resolutions, and a Poodle Named 'Sam'."*

496.    Bad Biz Finder published an article entitled, *"Comments From Our Readers: Questions & Answers."*

**April 25, 2009**

497.    Bad Biz Finder published an article entitled, *"DRE's Erik Duckworth Is Suspected of Criminally Aiding & Abetting Parsa Law Group."*

**April 27, 2009**

498.    Bad Biz Finder published an article entitled, *"Feldman Lies About Association With 'FedMod' & 'Federal Loan Modification Center': Feldman January 2009 Press Release Announcing The Programs Is Here."*

- 99 -

COMPLAINT FOR MONEY DAMAGES, DECLARATORY & INJUNCTIVE RELIEF FOR 42 U.S.C. §1983 CLAIMS, ETC. (AGTG)