

1  Erin K. Baldwin
2  Post Office Box 3141
   Beaumont, California  92223
3  (951) 333-1484
   erinbaldwin@rocketmail.com
4  Plaintiff, *Pro Se*

FILED
CLERK, U.S. DISTRICT COURT

NOV 1 4 2011

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION          BY DEPUTY

5

6

7

8               UNITED STATES DISTRICT COURT

9        CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

10

11  ERIN K. BALDWIN, an Individual          Case No.  5:11-CV-01300-DOC-SP

12                                          **SECOND AMENDED COMPLAINT**
                                            FOR MONEY DAMAGES &
13          Plaintiff,                      DECLARATORY & INJUNCTIVE RELIEF
                                            RE VIOLATIONS OF PLAINTIFF'S CIVIL
14  v.                                      RIGHTS UNDER THE FIRST, FOURTH,
                                            FIFTH, EIGHTH, AND FOURTEENTH
15                                          AMENDMENTS TO THE UNITED STATES
                                            CONSTITUTION
16  **BANK OF AMERICA CORPORATION**, *a
    Delaware Corporation;* **Brian T. Moynihan**,
17  *in his personal capacity;* **Sandor Samuels**, *in*   **CLAIMS UNDER**
    *his personal capacity;* **CALIFORNIA**           42 U.S.C. §§1983, 1985, 1986
18  **ATTORNEY GENERAL**, *a state agency;*    28 U.S.C. §1367(a), 28 U.S.C. §1332
    **Kamala Harris**, *individually and in her*
19  *official capacity;* **Edmund G. Brown**,
    *individually and in his former official capacity;*   **DEMAND FOR JURY TRIAL**
20  **UNITED STATES DISTRICT COURT**
    **JUDGE CORMAC J. CARNEY,**            FOURTH REQUEST FOR PRELIMINARY
21  *individually and in his official capacity;*          INJUNCTION
22  **UNITED STATES MAGISTRATE JUDGE**    Request for Special Prosecutor in Relation to
    **SHERI N. PYM**, *individually and in her*   Claims Under 18 U.S.C. §241 and §242
23  *official capacity;* **THE STATE BAR of**
    **CALIFORNIA**, *a public corporation;* **THE**      **VIOLATIONS OF**
24  **CLIENT SECURITY FUND**, *a statutory*      **PLAINTIFF'S PERSONAL**
    *public service;* **THE CALIFORNIA STATE**         **RIGHT TO PROPERTY**
25  **BAR EDUCATION FOUNDATION**, *a
    California Corporation and Registered*        Retaliatory Prosecution - Civil Actions
26  *501(3)(c) nonprofit organization;*         And Conspiracy to Engage in Retaliatory
    **Robert A. Hawley**, *in his individual capacity;*   Prosecution by Civil Litigation
27  **Paul O'Brien**, *in his individual capacity;*
28  **Thomas Layton**, *in his individual capacity;*

- 1 -

| | |
|---|---|
| 1 | John Noonen, *in his individual capacity;* Douglas Winthrop, *in his individual capacity;* Howard Miller, *in his individual capacity;* William Hebert, *in his individual capacity;* Joseph Dunn, *in his individual capacity;* Judy Johnson, *in her individual capacity;* Gwen Moore, *in her individual capacity;* Jon Streeter, *in his individual capacity;* Jeannine English, *in her individual capacity;* THE CALIFORNIA DEPARTMENT OF REAL ESTATE, *a state agency;* The Recovery Account, *a statutory public service;* Traci Stevens, *individually and in her official capacity;* Jeff Davi, *individually and in his former official capacity;* Barbara Bigby, *individually and in her official capacity;* Steven Ellis, *individually and in his official capacity;* Wayne Bell, *individually and in his official capacity;* William Moran, *individually and in his official capacity;* Thomas Pool, *individually and in his official capacity;* Dionne Young, *individually and in his official capacity;* Erik Duckworth, *individually and in his official capacity;* COUNTY OF ORANGE, *a California Municipality;* Nicholas Chrisos, *individually and in his official capacity;* Thomas Mauk, *individually and in his official capacity;* Steve Dunivent, *individually and in his former official capacity;* ORANGE COUNTY BOARD OF SUPERVISORS, *a state agency;* William Campbell, *individually and in his official capacity;* John M.W. Moorlach, *individually and in his official capacity;* Janet Nguyen, *individually and in her official capacity;* Shawn Nelson, *individually and in his official capacity;* Patricia Bates, *individually and in her official capacity;* ORANGE COUNTY DISTRICT ATTORNEY, *a state agency;* Anthony J. Rackauckas, *individually and in his official capacity;* Joseph P. D'Agostino, *individually and in his official capacity;* Elizabeth A. Henderson, *individually and in her official capacity;* ORANGE COUNTY PUBLIC DEFENDER, *a county agency;* Deborah A. Kwast *individually and in her former official capacity;* Frank Ospino, *individually and in* | **VIOLATIONS OF PLAINTIFF'S PERSONAL RIGHT TO LIBERTY**<br><br><u>Retaliatory Prosecution - Criminal Actions</u><br>And Conspiracy to Engage in Retaliatory Prosecution by Criminal Prosecution<br><br>~~~~~<br><br>**<u>Concealment of Evidence</u>**<br>Conspiracy to Conceal Evidence<br><br>**<u>Fabrication of Evidence</u>**<br>Conspiracy to Fabricate Evidence<br><br>**<u>Suppression of Exculpatory Evidence</u>**<br>Conspiracy to Suppress Exculpatory Evidence<br><br>**<u>False Arrest</u>**<br>Conspiracy to Falsely Arrest<br><br>**<u>False Arrest Without Probable Cause</u>**<br>Conspiracy to Arrest w/o Probable Cause<br><br>**<u>False Arrest Without a Warrant</u>**<br>Conspiracy to Arrest Without a Warrant<br><br>**<u>Making False Public Statements</u>**<br>Conspiracy to Make False Public Statements<br><br>**<u>Failure to Train</u>**<br>(California Peace Officer Standards Training)<br><br>**<u>Failure to Supervise</u>**<br>(California Peace Officer Standards Training)<br><br>**<u>False Imprisonment</u>**<br>Conspiracy to Falsely Imprison<br><br>**<u>False Imprisonment Without Probable Cause</u>**<br>Conspiracy to Imprison w/o Probable Cause<br><br>**<u>False Imprisonment Without a Warrant</u>**<br>Conspiracy to Imprison Without a Warrant<br><br>**<u>Excessive Bail & Fines</u>**<br>Conspiracy to Set Excessive Bail & Fines<br><br>**<u>Ineffective Assistance of Counsel</u>**<br>Conspiracy to Provide Ineffective Assistance of Counsel |

- 2 -

| | |
|---|---|
| 1 | *his official capacity;* **Jean Wilkinson**, *individually and in her official capacity;* |
| 2 | **Denise Gragg**, *individually and in her official capacity;* **Martin F. Schwarz**, *individually* |
| 3 | *and in his official capacity;* **Jennifer L. Nicolalde**, *individually and in her official* |
| 4 | *capacity;* **ORANGE COUNTY SHERIFF'S DEPARTMENT**, *a state agency;* **Sandra** |
| 5 | **Hutchens**, *individually and in her official capacity;* **Brian Cossairt**, *individually and in* |
| 6 | *his official capacity;* **Wilfred Moreno**, *individually and in his official capacity;* **T.J.** |
| 7 | **Young**, *individually and in her official capacity;* **COUNTY OF SAN BERNAR-** |
| 8 | **DINO**, *a California Municipality;* **Jean R. Basle**, *individually and in his official capacity;* |
| 9 | **Ruth Stringer**, *individually and in her former official capacity;* **Gregory C. Devereaux**, |
| 10 | *individually and in his official capacity;* **SAN BERNARDINO COUNTY BOARD OF** |
| 11 | **SUPERVISORS**, *a state agency;* **Josie Gonzales**, *individually and in her official* |
| 12 | *capacity;* **Brad Mitzelfelt**, *individually and in his official capacity;* **Neil F. Derry**, |
| 13 | *individually and in his official capacity;* **Janice Rutherford**, *individually and in her official* |
| 14 | *capacity;* **Gary Ovitt**, *individually and in his official capacity;* **George Watson**, *in his* |
| 15 | *individual capacity;* **Jamie Garland**, *in her individual capacity;* **SAN BERNARDINO** |
| 16 | **COUNTY DISTRICT ATTORNEY**, *a state agency;* **Michael Ramos**, *individually and in* |
| 17 | *his official capacity;* **Jim Hackleman**, *individually and in his former official capacity;* |
| 18 | **Dennis Christy**, *individually and in his official capacity;* **Scott Byrd**, *individually and in his* |
| 19 | *official capacity;* **Patrick Christianson**, *individually and in his official capacity;* **Laura** |
| 20 | **Robles**, *individually and in her official capacity;* **William Gale**, *individually and in* |
| 21 | *his official capacity;* **Jonathan Robbins**, *individually and in his official capacity;* |
| 22 | **Melinda Spencer**, *individually and in her official capacity;* **Timothy Dixon**, *individually* |
| 23 | *and in his official capacity;* **SAN BERNARDINO PUBLIC DEFENDER**, *a* |
| 24 | *county agency;* **Doreen Boxer**, *individually and in her former official capacity;* **Lauri** |

**Deprivation of Right to Associate**
Conspiracy to Deprive Plaintiff of
Right to Associate

**Deprivation of Right to Petition the
<u>Government for Redress</u>**
Conspiracy to Deprive Plaintiff of Right to
Petition the Government for Redress

**<u>Excessive Force (At Arrest)</u>**
Conspiracy to Engage in Excessive Force
(At Arrest)

**Failure to Provide Medical Treatment**

**<u>Unlawful Search & Seizure</u>**
Conspiracy to Engage in Unlawful
Search & Seizure

**<u>Malicious Prosecution</u>**
Conspiracy to Engage in Malicious
Prosecution

**<u>Making Arbitrary Accusations</u>**
Conspiracy to Make
Arbitrary Accusations

**Right to be Free of Self-Incrimination
<u>Via Illegally Seized Documents</u>**
Conspiracy to Gain Legal Advantage By Use
of Illegally Seized Documents

**VIOLATIONS OF PLAINITFF'S
<u>PROTECTED LIBERTY INTERESTS</u>**

**<u>Deprivation of Right to Notice of Charges</u>**
Conspiracy to Deprive Plaintiff
of Notice of Charges

**Deprivation of Right to Notice
<u>of Basis of Charges</u>**
Conspiracy to Deprive Plaintiff of Right to
Notice of Basis of Charges

**<u>Deprivation of Right to Be Heard</u>**
Conspiracy to Deprive Plaintiff
of Right to Be Heard

**Deprivation of Right to Substantial and
<u>Credible Evidence to Support Charges</u>**
Conspiracy to Deprive Plaintiff of Right to
Substantial and Credible Evidence
to Support Charges

- 3 -

1  Ferguson, *individually and in her former official capacity;* **Phyllis Morris**, *individually and in her official capacity;* **Geoffrey Canty**, *individually and in his official capacity;* **Jeffrey Lawrence**, *individually and in his official capacity;* **Mark Shoup**, *individually and in his official capacity;* **Kawika Smith**, *individually and in his official capacity;* **SAN BERNARDINO COUNTY SHERIFF'S DEPARTMENT;** *a California state agency;* **Rodney Hoops**, *individually and in his official capacity;* **Bill Abernathy**, *individually and in his official capacity;* **Robert Fonzi**, *individually and in his official capacity;* **John McMahon**, *individually and in his official capacity;* **Brian Williams**, *individually and in his official capacity;* **Christopher Allen**, *individually and in his official capacity;* **Gregory Garland**, *individually and in his official capacity;* **Erroll Bechtel**, *individually and in his official capacity;* **Jay Blankenship**, *individually and in his official capacity;* **Lori Bachelor**, *individually and in her official capacity;* **Douglas Wolfe**, *individually and in his official capacity;* **Craig Harris**, *individually and in his official capacity;* **Detective Kruger**, *individually and in his official capacity;* **Sergeant Mason**, *individually and in his official capacity;* **Bryan Lane**, *individually and in his official capacity;* **Jeremy King**, *individually and in his official capacity;* **Christopher Morsch**, *individually and in his official capacity;* **Alexander Collins**, *individually and in his official capacity;* **Brent Meelker**, *individually and in his official capacity;* **Michael McCracken**, *individually and in his official capacity;* **James Wijnhamer**, *individually and in his official capacity;* **Michael Broadhurst**, *individually and in his official capacity;* **Brian Shedd**, *individually and in his official capacity;* **Deputy J. Long**, *individually and in his official capacity;* **Deputy J. Massey**, *individually and in his official capacity;* **Deputy Jablonsky,** *individually and in his official capacity;* **Pauline Domingue**, *individually and in his official capacity;* **SAN BERNARDINO COUNTY DEPARTMENT**

**Deprivation of Explanation of Adverse Findings**
Conspiracy to Deprive Plaintiff of Right to an Explanation of Adverse Findings

**Deprivation of Access to the Courts**
Conspiracy to Deprive Plaintiff of Right of Access to the Courts

**Deprivation of Right to a Fair Trial**
Conspiracy to Deprive Plaintiff of Right to a Fair Trial

**Deprivation of Right to a Fair Trial Based on Judicial Refusal to Recuse**
Conspiracy to Deprive Plaintiff of Right to a Fair Trial Based on Judicial Refusal to Recuse

**Deprivation of Right to a Fair Trial Based on Improper Extrajudicial *Ex Parte* Communication**
Conspiracy to Deprive Plaintiff of Right to a Fair Trial Based on Improper Extrajudicial *Ex Parte* Communication

**Deprivation of Right to a Jury Trial**
Conspiracy to Deprive Plaintiff of Right to a Jury Trial

**Deprivation of Right to a Speedy & Public Trial**
Conspiracy to Deprive Plaintiff of Right to a Speedy & Public Trial

**Deprivation of Right to a Competent Counsel**
Conspiracy to Deprive Plaintiff of Right to Competent Counsel

**Deprivation of Right to Call Witnesses to Speak on One's Own Behalf**
Conspiracy to Deprive Plaintiff of Right to Call Witnesses to Speak on Her Behalf

**Deprivation of Right to Confront Witnesses That Speak Against Plaintiff**
Conspiracy to Deprive Plaintiff of Right to Confront Witnesses Against Her

**Deprivation of Right to Present Evidence**
Conspiracy to Deprive Plaintiff of Right to Present Evidence

- 4 -

1     **OF HEALTH & WELFARE**, *a state agency;*
**Kelly Papp**, *individually and in her official*
2     *capacity;* **Doug Smith**, *individually and in his*
*official capacity;* **CITY OF BIG BEAR**
3     **LAKE**, *a local government;* **Rick Herrick**,
*individually and in his official capacity;*
4     **Elizabeth Harris**, *individually and in her*
*official capacity;* **Bill Jahn**, *individually and in*
5     *his official capacity;* **Darrell Mulvihill**,
*individually and in his official capacity;*
6     **Michael Karp**, *individually and in his official*
*capacity;* **THOMAS V. GIRARDI**, *in his*
7     *individual capacity;* **SARAH L. OVERTON**,
*in her individual capacity;* **FRANZ E.**
8     **MILLER**, *in his individual capacity, as an*
*adjunct professor of law at Whittier Law*
9     *School;* **STACIE TURNER**, *in her individual*
*capacity;* **JODI ROA**, *in her individual*
10    *capacity;* **JANET TAYLOR**, *in her individual*
*capacity;* **KELLI BELTRAN**, *in her*
11    *individual capacity;* **CENTURY LAW**
**GROUP LLP**, *a California Limited Liability*
12    *Partnership;* **Paul J. Virgo**, *in his individual*
*capacity;* **Edward O. Lear**, *in his individual*
13    *capacity;* **WHITTIER LAW SCHOOL**, *a*
*privately-owned, for profit educational*
14    *institution;* **Penelope L. Bryan**, *in her*
*individual capacity;* **John Fitzgerald**, *in his*
15    *individual capacity;* **PARSA LAW GROUP**,
**APC**, *a Professional Law Corporation;* **James**
16    **M. Parsa**, *in his individual capacity;* **Deborah**
**Parsa**, *in her individual capacity;* **Arash**
17    **Dastmalchi**, *in his individual capacity;*
**Michael Ponzillo**, *in his individual capacity;*
18    **Roya Rohani**, *in her individual capacity;*
**MARTIN ANDELMAN**, *in his individual*
19    *capacity;* **JULIA L. GREENFIELD**, *in her*
*individual capacity;* **MARILYN A.**
20    **MOBERG**, *in her individual capacity;*
**KEITH D. WHITE**, *in his individual*
21    *capacity;* **PATRICIA A. WHITE**, *in her*
*individual capacity;* **STARBUCKS, INC.**, *a*
22    *Washington Corporation;* **Paula E. Boggs**, *in*
*her individual capacity;* **Dena Davis**, *in her*
23    *individual capacity;* **Krista Osborne**, *in her*
*individual capacity;* **Kirstin Scotti**, *in her*
24    *individual capacity;* **BURKHALTER**,
**KESSLER, GOODMAN AND GEORGE**,

---

**Deprivation of Right to Obtain Evidence**
Conspiracy to Deprive Plaintiff of
Right to Obtain Evidence

**Deprivation of Right to Self-Representation**
Conspiracy to Deprive Plaintiff of
Right to Self-Representation

**VIOLATIONS OF PLAINTIFF'S**
**PROTECTED PROPERTY INTERESTS**
Unilateral Expectation
Legitimate Claim of Entitlement

**Deprivation of Right to Notice of Charges**
Conspiracy to Deprive Plaintiff
of Notice of Charges

**Deprivation of Right to Notice**
**of Basis of Charges**
Conspiracy to Deprive Plaintiff
of Right to Notice of Basis of Charges

**Deprivation of Right to Be Heard**
Conspiracy to Deprive Plaintiff
of Right to Be Heard

**Deprivation of Right to Substantial and**
**Credible Evidence to Support Charges**
Conspiracy to Deprive Plaintiff of Right to
Substantial and Credible
Evidence to Support Charges

**Deprivation of Explanation**
**of Adverse Findings**
Conspiracy to Deprive Plaintiff of Right to an
Explanation of Adverse Findings

**Deprivation of Access to the Courts**
Conspiracy to Deprive Plaintiff of
Right of Access to the Courts

**Deprivation of Right to a Fair Trial**
Conspiracy to Deprive Plaintiff of
Right to a Fair Trial

**Deprivation of Right to a Fair Trial Based**
**on Judicial Refusal to Recuse**
Conspiracy to Deprive Plaintiff of
Right to a Fair Trial Based on Judicial Refusal
to Recuse

PLAINTIFF'S SECOND AMENDED COMPLAINT

1  LLP, *a California Limited Liability Partnership;* **Alton G. Burkhalter**, *in his*
2  *individual capacity;* **Daniel  J. Kessler**, *in his individual capacity;* **Eric J. Goodman**, *in his*
3  *individual capacity;* **William C. George**, *in his individual capacity;* **Gregory C. Clement**, *in*
4  *his individual capacity;* **Michael Oberbeck**, *in his individual capacity;* **Rosamund**
5  **Lockwood**, *in her individual capacity;*
6  **Amanda McLaughlin**, *in her individual capacity;* **David A. Berstein**, *in his individual*
7  *capacity;* **Nicholas D. Myers**, *in his individual capacity;* **Nicholas P. Kohan**, *in his individual*
8  *capacity;* **M. Masha Rohani**, *in her individual capacity;* **PUBLIC STORAGE, INC., B.**
9  **Wayne Hughes**, *in his individual capacity;*
10 **MINI STORAGE PROPERTIES**
11 **LIMITED, LP,** *a California Limited Partnership;* **Robert J. Abernethy**, *in his*
12 *individual capacity;* **UDR, INC.,** *a Virginia Corporation;* **UNITED DOMINION**
13 **REALTY, LP,** a *Delaware Limited Partnership;* **UDR WESTERN**
14 **RESIDENTIAL, INC.,** *a Virginia Corporation;* **UDR VILLA VENETIA**
15 **APARTMENTS, LP,** *a Delaware Limited Partnership;* **UDR CALIFORNIA**
16 **PROPERTIES, LLC,** *a California Limited Liability Company;* **UDR CALIFORNIA**
17 **G.P., II, LLC,** *a California Limited Liability Company;* **James D. Klingbeil**, *in his*
18 *individual capacity;* **Eric J. Foss**, *in his individual capacity;* **Robert P. Freeman**, *in*
19 *his individual capacity;* **Jon A. Grove**, *in his individual capacity;* **Robert W. Scharar**, *in*
20 *his individual capacity;* **Thomas R. Oliver**, in
21 his *individual capacity;* **Thomas W. Toomey**, *in his individual capacity;* **Lynne B. Sagalyn**,
22 *in her individual capacity;* **Mark J. Sandler**, *in his individual capacity;* **Warren L. Troupe**,
23 *in his individual capacity;* **David L. Messenger**, *in his individual capacity;*
24 **Richard Giannotti**, *in his individual capacity;*
25 **Jerry Davis**, *in his individual capacity;*
26 **Mark M. Culwell, Jr.**, *in his individual capacity;* **Matthew T. Akin**, *in his individual*
27 *capacity;* **Melissa Hurtado**, *in her individual*
28 *capacity;* **Tracy L. Saffos**, *in her individual*

**Deprivation of Right to a Fair Trial Based on Improper Extrajudicial *Ex Parte* Communication**
Conspiracy to Deprive Plaintiff of Right to a Fair Trial Based on Improper Extrajudicial *Ex Parte* Communications

**Deprivation of Right to a Jury Trial**
Conspiracy to Deprive Plaintiff of Right to a Jury Trial

**Deprivation of Right to a Speedy & Public Trial**
Conspiracy to Deprive Plaintiff of Right to a Speedy & Public Trial

**Deprivation of Right to a Competent Counsel**
Conspiracy to Deprive Plaintiff of Right to Competent Counsel

**Deprivation of Right to Call Witnesses to Speak on One's Own Behalf**
Conspiracy to Deprive Plaintiff of Right to Call Witnesses to Speak on Her Behalf

**Deprivation of Right to Confront Witnesses That Speak Against Plaintiff**
Conspiracy to Deprive Plaintiff of Right to Confront Witnesses Against Her

**Deprivation of Right to Present Evidence**
Conspiracy to Deprive Plaintiff of Right to Present Evidence

**Deprivation of Right to Obtain Evidence**
Conspiracy to Deprive Plaintiff of Right to Obtain Evidence

**Deprivation of Right to Self-Representation**
Conspiracy to Deprive Plaintiff of Right to Self-Representation

**VIOLATIONS OF PLAINTIFF'S RIGHT TO EQUAL PROTECTION OF THE LAW**

Deprivation of Access to the Courts Based on Pro Se & Indigent Status

Deprivation of Access to an Article III Judge to Hear Significant Civil Rights Case Based on Pro Se & Indigent Status

- 6 -

capacity; **Karissa Harmon**, *in her individual capacity;* **Debi Froude**, *in her individual capacity;* **SOLUTION LAW GROUP, LLC**, *a California Limited Liability Company;* **SOLUTION PROCESSING LLC**, *a California Limited Liability Company;* **Jeffrey A. Cancilla**, *in his individual capacity;* **Craig M. Laverty**, *in his individual capacity;* **TRAUT LAW GROUP**, *a California Corporation;* **Eric V. Traut**, *in his individual capacity;* **James A. Traut**, *in his individual capacity;* **TODD A. BRISCO & ASSOCIATES, APC**, *a California Professional Law Corporation;* **Todd A. Brisco**, *in his individual capacity;* **Cynthia S. Poer**, *in her individual capacity;* **Daniel Coor**, *in his individual capacity;* **AUTOMATTIC, INC.**, *a California Corporation;* **Matthew Mullenweg**, *in his individual capacity;* **Toni Schneider**, *in his individual capacity;* **Scott Dettmer**, *in his individual capacity;* **Thomas Villeneuve**, *in his individual capacity;* **Michael Estrada, Jr.**, *in his individual capacity;* **THE GO DADDY GROUP, INC.**, *an Arizona Corporation;* **Warren Adelman**, *in his individual capacity;* **Robert Parsons**, *in his individual capacity;* **DOVES OF BIG BEAR VALLEY, INC.**, *a California Corporation and 501(3)(c) nonprofit organization;* **Jane Hewitt**, *in her individual capacity;* **Susan Benson**, *in her individual capacity;* **Kathleen Harper**, *in her individual capacity;* **JASON L. CROW**, *in his individual capacity;* **MICHAEL P. DOLAN**, *in his individual capacity;* **DANA PROPHET**, *in her individual capacity;* **ANNE ZIMMERMAN**, *in her individual capacity;* **DIXIE ALLISON**, *in her individual capacity;* **MICHAEL MASOTTO**, in his individual capacity; **JOHN E. ELERDING**, *in his individual capacity;* **GAIL R. ELERDING**, *in her individual capacity;* **CHARLES KIMBALL**, *in his individual capacity;* **DARA WEINER**, *in her individual capacity;* **CSL COMPUTER SERVICE LANGENBACH, GMBH**, *d.b.a.,* **JOKER.COM**; **Nigel Titley**, *in his individual capacity;* **Remco van Mook**, *in his individual capacity;* **Christian**

Deprivation of Right to Appeal
Based on Pro Se & Indigent Status

Deprivation of Opportunity to Be Heard
Based on Pro Se & Indigent Status

Deprivation of Right to a Fair Trial
Based on Pro Se & Indigent Status

Deprivation of Right to a Public Trial &
Judgment Based on Pro Se & Indigent Status

Deprivation of a Jury Trial
Based on Pro Se & Indigent Status

Deprivation of Right to Bring and Confront
Witness Based on Pro Se & Indigent Status

Deprivation of Right to Present and Obtain
Evidence Based on Pro Se & Indigent Status

Deprivation of Right to Participate in
Court's Electronic Filing Program
Based on Pro Se & Indigent Status

Deprivation of Right to Withhold Consent to
an Article I Judge
Based on Pro Se & Indigent Status

Deprivation of Right to Conduct Adequate
Discovery Based on Pro Se & Indigent Status

Deprivation of Right to Conduct Adequate
Discovery Based on Court-Ordered
Mandatory Alternative Dispute Resolution
(Due to Pro Se & Indigent Status)

Deprivation of Right to Bring Witnesses
Based on Court-Ordered Mandatory
Alternative Dispute Resolution
(Due to Pro Se & Indigent Status)

Deprivation of Right to Appeal Based on
Court-Ordered Mandatory Alternative Dispute
Resolution (Due to Pro Se & Indigent Status)

Deprivation of Right to a Bring and Confront
Witnesses Trial Based on Court-Ordered
Mandatory Alternative Dispute Resolution
(Due to Pro Se & Indigent Status)

Deprivation of Right to a Jury Trial Based on
Court-Ordered Mandatory Alternative Dispute
Resolution (Due to Pro Se & Indigent Status)

- 7 -

| | |
|---|---|
| 1    **Kaufmann**, *in his individual capacity;* | **VIOLATIONS OF PLAINITFF'S** |
| 2    **Dmitry Burkov**, *in his individual capacity;* | **PROTECTED PRIVACY INTERESTS** |

1    **Kaufmann**, *in his individual capacity;*
**Dmitry Burkov**, *in his individual capacity;*
2    **Fahad Al Shirawi**, *in his individual capacity;*
and **DOES 1-200**, *inclusive,*
3

4                    Defendants.

**VIOLATIONS OF PLAINITFF'S PROTECTED PRIVACY INTERESTS**

**Deprivation of Right to Privacy**
Conspiracy to Deprive Plaintiff of Right to Privacy

**Deprivation of Right to Familial Bonds by Intentional Government Interference**
Conspiracy to Deprive Plaintiff of Right to Familial Bonds

**Deprivation of Right to Maternal Bonds by Intentional Government Interference**
Conspiracy to Deprive Plaintiff of Right to Maternal Bonds

**Deprivation of Right to Companionship of Pets by Intentional Government Interference**
Conspiracy to Deprive Plaintiff of Right to Companionship of Pets

**Constitutional and Federal Rights Violations That "Shock the Conscience"**
Conspiracy to Engage in Activities Against Plaintiff That "Shock the Conscience"

**Constitutional and Federal Rights Violations That Demonstrate "Deliberate Indifference"**
Conspiracy to Engage in Activities Against Plaintiff That Demonstrate "Deliberate Indifference"

**Deliberate Dereliction of the Duty to Protect: Functional Custody**
Conspiracy to Engage in Activities That Would Place Plaintiff in Danger in Functional Custody

**Deliberate Dereliction of the Duty to Protect: State-Created Danger**
Conspiracy to Engage in Activities That Would Place Plaintiff in Danger in State-Created Danger

**Malicious Prosecution**
Conspiracy to Engage in Malicious Prosecution

**Excessive Force (Pretrial)**
Conspiracy to Engage in Excessive Force (Pretrial)

- 8 -

Conspiracy to Deprive Plaintiff
of Substantive Due Process of Law

**VIOLATIONS OF PLAINITFF'S**
**ASSOCIATED STATE LAW RIGHTS**

Pursuant to 28 U.S.C. §1367(A),
28 U.S.C. §1332, The California Constitution
and the California Civil Rights Statue

**California Civil Rights Statute**
(California Civil Code §52.1)

**California Anti-SLAPP Statute**
(California Code of Civil Procedure §425.16)

**Conversion**
Conspiracy to Convert Plaintiff's
Property for Unlawful Uses

**Legal Malpractice**
Conspiracy to Engage in Legal Malpractice

**Intentional Interference With**
**Business Relations & Prospective**
**Business Relations**
Conspiracy to Interfere with
Plaintiff's Right to Work

Defamation Per Se

Defamation - Libel

Defamation - Slander

**Intentional Infliction of Emotional**
**Distress With Outrageous Conduct**
Conspiracy to Cause Plaintiff
Emotional Distress

**Fraud**
Conspiracy to Defraud

**Intentional Misrepresentation**
Conspiracy to Intentionally Misrepresent
Material Facts and Law to Plaintiff

**Intentional Deceit**
Conspiracy to Intentionally Deceive Plaintiff

**Breach of Fiduciary Duty**
Conspiracy to Encourage
Breach of Fiduciary Duty

- 9 -

**Constructive Fraud**
Conspiracy to Engage in Constructive Fraud

**Abuse of Process**
Conspiracy to Engage in Abuse of Process

**Abuse of Discretion**
Conspiracy to Commit Abuse of Discretion

Constructive Trust & Equitable Lien

Request for Declaratory & Injunctive Relief

Request for Court-Appointed Counsel

*"During times of universal deceit,*
*telling the truth becomes a revolutionary act."*
*~ George Orwell ~*

A Short and Plain Statement Defining Plaintiff's Claim for Relief

In accordance with Federal Rules of Civil Procedure, Rule 8(a), and the Ninth Circuit decision in *Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996), Plaintiff hereby gives fair notice to defendants named herein that she brings this Complaint against them under 42 U.S.C. §§1983, 1985, and 1986 for monetary damages and declaratory and injunctive relief arising from defendants' intentional, retaliatory and malicious actions against Plaintiff that violated her constitutional, federal, and associated state law rights, in furtherance of their objectives to silence Plaintiff's protected speech about matters of public concern that interfered with defendants' ability to defraud California residential tenants, consumers in foreclosure, and County of San Bernardino citizens subjected to arbitrary, corrupt and unconscionable law enforcement practices.

PLAINTIFF'S SECOND AMENDED COMPLAINT

## A.   Nature of the Case

1.     Erin K. Baldwin *("Plaintiff")*, is an investigative reporter and *bona fide* journalist who wrote and published truthful, fact-based and legally-substantiated journalistic articles and investigative reports about matters of public concern. *("Plaintiff's Writings")*

2.     Plaintiff's Writings were published anonymously,[1] in a public forum, without profit motive, for the sole benefit of California residential tenants and consumers in foreclosure.

3.     As such, Plaintiff's Writings constituted "protected speech" under the First Amendment, barring government interference and retaliatory prosecution.

4.     Beginning in late 2008, Plaintiff noticed a series of events unfolding that appeared to be intentional fraud against California residential tenants and consumers in foreclosure, including:

a.     An unusually high number of Californians qualifying for "no down-payment, 1-, 3- and 5-year interest-only" sub-prime mortgage loans they could not afford.

b.     An equally high number of mortgage loan defaults following the "interest only" period resulting in record-breaking foreclosure statistics.

c.     A corresponding increase in the number of residential tenants flowing into the California apartment market causing an escalation of landlord-tenant fraud.

d.     A significant number of vulnerable homeowners desperate to save their homes from foreclosure and an equal amount of unqualified "experts" eager to take their money and capitalize on their misfortune.

e.     A hopelessly flawed, unenforced and ill-conceived consumer safeguard called "The California Foreclosure Consultants Act" *("CFCA")* codified in California Civil Code §2945, *et seq.*

f.     An intentional and premeditated "loophole" in the CFCA that prohibited all loan modification service providers (<u>except</u> California State Bar-licensed attorneys) from taking fees in advance of work performed.

[1] ... until her federal privacy rights were violated by Reed Smith attorney, Marilyn A. Moberg, Esq. *("Defendant Moberg")*, WordPress Chief Executive Officer, Toni Schneider *("Defendant Schneider")*, attorneys Nicholas D. Myers, Esq. *("Defendant Myers")*, Eric J. Goodman, Esq. *("Defendant Goodman")*, and Daniel J. Kessler, Esq. *("Defendant Kessler")* of Burkhalter, Kessler, Goodman & George, LLP *("Defendant BKGG")*.

g.     A rush of "non-attorneys," primarily California Department of Real Estate-licensed subprime mortgage brokers unlawfully associating with California State Bar-licensed attorneys with the express intent of circumventing the CFCA "loophole."

h.     An unprecedented number of newly-formed law firms offering foreclosure rescue services advertised as "attorney-based law firms" with no lawyers on staff.

i.     An inherent and justifiable reliance on the fact that when one hires a "law firm" that the work will be performed by an experienced and qualified lawyer; coupled with the reality that the work was performed by "non-lawyers" with no experience reviewing loan documents for error in order to evaluate and assert the proper and required affirmative defenses to effectively negotiate a loan modification with a lender.

j.     An appalling lack of consumer protection by the California State Bar and California Department of Real Estate, both required by law to protect consumers by (ii) enforcing their respective professional rules of conduct; (ii) disciplining their members when they break the rules, and (ii) making prompt restitution to the clients of the rule-breaking members through their respective consumer protection programs, the "Client Security Fund" and "Recovery Account," respectively.

k.     A historic rise in unemployment rates caused by big corporation lay-offs and small business failure.

l.     A freeze on consumer and business credit and decline in home values.

m.     A bailout for the banks who intentionally sold unconscionable subprime mortgage loans utilizing bad faith predatory tactics to induce consumers mesmerized by the political speeches promising the "American Dream for All."

n.     No bailout for the consumers who bought the unconscionable subprime mortgage loans "guaranteed to make the American Dream a reality," resulting in catastrophic poverty rates, a rise in the number of bankruptcy filings, and record growth in the homeless population.

o.     "Too little, too late" legislation enacted in late 2009 (Senate Bill 94) that prohibited all loan modification service providers, including attorneys, from taking fees in advance of work performed.

- 12 -

p.     In theory, Senate Bill 94 gave Defendants CAG, CSB, and DRE four years to resolve all outstanding consumer claims and put into place consumer protection programs before it expired on January 1, 2013.

q.     Thousands of consumer claims still exist and no legitimate programs have been put into place to counteract the inevitable.  Senate Bill 94 will expire at the same time existing 3- and 5-year interest only loan schedules expire.

r.     Then history will repeat itself, which means new mesmerizing political speeches; new and improved task forces that do nothing but conceal official misconduct (which misconduct caused the vicious cycle in the first place), new names for old companies ready to defraud consumers again, and a new set of consumers eager for the American Dream.

s.     Astonishing wealth was amassed by a few at the expense of many. Plaintiff's Writings championed returning the wealth to the consumers, but "the few" had other ideas.

5.     Plaintiff's Writings about the aforementioned series of events and the participants in said events, made public the individual and collective responsibility and liability of the California Attorney General, California State Bar and California Department of Real Estate, *inter alia,* for intentional fraud against California residential tenants and consumers in foreclosure.

6.     The result was an assault against Plaintiff  "from the top down," to rid the Internet of Plaintiff's Writings documenting said intentional fraud, and to eliminate any lingering memory of Plaintiff's message by destroying her personal and professional credibility, her ability to find work and maintain a secure home, and her capability to foster alliances and friendships to strengthen her will to fight back.

7.     The "top" was (and is) Bank of America, California's single largest beneficiary of mortgage fraud against consumers and the single largest antagonist of  Plaintiff's truthful, fact-based and legally-substantiated Writings.

8.     Plaintiff's Complaint exposes Bank of America's plan to settle (for pennies on the dollar) all outstanding consumer claims with the California Attorney General's Office,

- 13 -

California State Bar, and California Department of Real Estate, thereby circumventing restitution to the claimants altogether.

9. In exchange, the California Attorney General's Office *("Defendant CAG")*, California State Bar *("Defendant CSB")*, and California Department of Real Estate *("Defendant DRE")* agree to stall, then reject, all consumer claims made against Bank of America. This will ultimately unjustly enrich California government officials with money stolen from the citizens that put them into office, courtesy of Bank of America who offers the following mission statement:

> *"We believe, very simply, that it is <u>the actions of individuals working together</u> <u>that build strong communities</u> ... and that business has an obligation to support those actions in the communities it serves."*

10. Since Bank of America *("Defendant BOA")* had no direct method to retaliate against Plaintiff, it called upon Defendants CAG, CSB, and DRE to carry out the objectives set forth in Paragraph 6, *supra,* the ultimate result of same would be that Defendants BOA, CAG, CSB and DRE could finalize their plan to settle Defendant BOAs claims without anyone being the wiser. The retaliatory actions arising from same were planned and implemented *sub rosa* to avoid liability for their actions.

11. Since Plaintiff is not an attorney, mortgage broker or real estate agent, Defendants CAG, CSB, and DRE had no direct method to retaliate against Plaintiff either, so they called upon private parties to implement their plan in joint participation with officials acting under color of state law.

12. Since Plaintiff had done nothing but exercise her constitutionally-protected right to free speech about matters of public concern in an open forum for the benefit of others, defendants named herein had no legitimate reason to retaliate against Plaintiff, so they <u>fabricated reasons</u>.

13. Plaintiff has been the subject of forty (40) legal and law enforcement actions since January of 2009. These actions are discussed in more detail in the Statement of Facts set forth, *infra.* Directly below is a summary of the forty (40) actions that frame this Complaint:

- 14 -

## B.    Forty Actions And Counting

14.    On January 26, 2009, Parsa Law Group sued an anonymous blog.    The Complaint was entitled, Parsa Law Group, APC v. Bad Biz Finder, an unknown business entity.   a subject of Plaintiff's Writings about California loan modification fraud, Parsa Law Group, sued Plaintiff for defamation and interference in its business relations, present and prospective.   Plaintiff's Writings alerted consumers in foreclosure about the fraud perpetrated at Parsa Law Group, *inter alia.*   And she was right, there is no dispute about that fact. However, no argument, motion, appearance or brief by Plaintiff could have prevailed in this action because it was brought in bad faith and with unclean hands, *ab initio.*   *See facts on Action 1 here; and more details, infra:*

**(1)**

*Parsa Law Group, APC v. Bad Biz Finder, Erin Baldwin, et al.*
**Orange County Superior Court, Case No. 30-2009-00117752**
**(Defamation Case: Filed January 26, 2009)**

~ ~ ~ ~ ~

15.    On February 11, 2009, a subject of Plaintiff's Writing sued her for retaliatory unlawful detainer.   It was a another strategic lawsuit against public participation as its singular objective was to prevent Plaintiff from writing the truth about her landlord, UDR's illegal residential lease agreements.   It was heard by Commissioner Richard E. Pacheco.   *See facts on Action 2 here; and more details, infra:*

**(2)**

*UDR Villa Venetia Apartments, L.P. v. Erin Baldwin*
**Orange County Superior Court, Case No. 30-2009-00244203**
**(Unlawful Detainer Case #1:  Filed February 11, 2009)**

~ ~ ~ ~ ~

16.    On March 3, 2009, UDR filed a second retaliatory unlawful detainer action, because they lost the first one on Plaintiff's Motion to Quash Service of Summons, and dismissed it in favor of Plaintiff.    The second action, also heard by It was heard by

1    Commissioner Richard E. Pacheco, alleged the exact same facts and law as the first one which

2    was dismissed five days earlier.  Again, this was another strategic lawsuit against public

3    participation as its singular objective was to prevent Plaintiff from writing the truth about her

4    landlord, UDR's illegal residential lease agreements.  *See facts on Action 3 here; and more*

5    *details, infra:*

6                                        **(3)**

7              **UDR Villa Venetia Apartments, L.P. v. Erin Baldwin**
               **Orange County Superior Court, Case No. 30-2009-00248999**

8                    **(Unlawful Detainer Case #2:  Filed March 3, 2009)**

9                                   ~ ~ ~ ~ ~

10

11           17.     On June 16, 2009, an associate of UDR, Robert J. Abernethy of Public Storage,

     filed another retaliatory unlawful detainer action but this time it was for the contents of
12
     Plaintiff's storage unit in Costa Mesa, California.  Both UDR and Public Storage are Officers
13
     of AllianceBernstein Real Estate Investment Fund, Inc. Commissioner Pacheco gave Mr.
14
     Abernethy possession of Plaintiff's property without notice to Plaintiff.  *See facts on Action 4*
15
     *here; and more details, infra:*
16
                                         **(4)**
17
                **Robert J. Abernethy (Public Storage) v. Erin Baldwin**
18              **Orange County Superior Court, Case No. 30-2009-00276399**
                     **(Unlawful Detainer Case #3:  Filed June 16, 2009)**
19
                                   ~ ~ ~ ~ ~
20

21           18.     On June 29, 2009, once UDR had unlawfully evicted Plaintiff on June 16,

22   2009; unlawfully searched and seized the entire contents of her apartment on June 19, 2009;

23   then worked with associate Robert Abernethy to seize the remainder of Plaintiff's property

24   from her storage unit; they believed that Plaintiff could not possibly defend herself against a

25   defamation action as a homeless person with no property.  They hired the same law firm as the

26   Parsa Case and made sure to get in front of the same judge, Judge Franz Miller.  *See facts on*

27   *Action 5 here; and more details, infra:*

28                                       **(5)**

                                        - 16 -

1

2

3

4

*UDR, Inc. v. Bad Biz Finder, Erin Baldwin, et al.*
**Orange County Superior Court, Case No. 30-2009-00125305**
**(Defamation Case:  Filed June 29, 2009)**

~ ~ ~ ~ ~

5

6

7

8

9

10

11

19.     On July 13, 2009, a subject of Plaintiff's Writings sued her for defamation and intentional interference in business and prospective business relations.  It was another strategic lawsuit against public participation as its singular objective was to prevent Plaintiff from writing the truth about the loan modification fraud perpetrated at Solutions Law Group, LLC; Solutions Processing, LLC by Jeffrey A. Cancilla and Craig M. Laverty.  They hired the same law firm as the Parsa and UDR Defamation Cases and made sure it got in front of the same judge, Judge Franz E. Miller. *See facts on Action 6 here; and more details, infra:*

12

13

14

**(6)**

*Solutions Law Group, LLC; Solutions Processing, LLC;*
*Jeffrey A. Cancilla; Craig M. Laverty v. Bad Biz Finder, Erin Baldwin, et al.*
**Orange County Superior Court, Case No 30-2009-00126004**
**(Defamation Case: Filed July 13, 2009)**

15

16

~ ~ ~ ~ ~

17

18

19

20

21

22

23

24

20.     On July 14, 2009, soon after Parsa Law Group obtained a Permanent Injunction against Plaintiff without a hearing on the merits, without identifying one single statement made by Plaintiff that was false; and without identifying the parties about which Plaintiff was prohibited from writing; Parsa Law Group filed criminal charges of contempt against Plaintiff. However, they called it "civil contempt," so they wouldn't have to leave the safety of Judge Miller's courtroom.   Plaintiff also had a Judgment entered against her in the amount of $604,515.66 with no Default Prove-up Package. *See facts on Action 7 here; and more details, infra:*

25

26

27

28

**(7)**

*Parsa Law Group, APC v. Bad Biz Finder, Erin Baldwin, et al.*
**Orange County Superior Court, Case No. 30-2009-00117752**
**Judge Miller/Burkhalter/UDR File it as Civil Contempt**
**(Criminal Contempt Case:  Filed July 14, 2009)**
~ ~ ~ ~ ~

- 17 -

21.     On July 20, 2009, a subject of Plaintiff's Writings sued her for defamation and intentional interference in business and prospective business relations.  It was another strategic lawsuit against public participation as its singular objective was to prevent Plaintiff from writing the truth about the loan modification fraud perpetrated at Traut Law Group by Eric V. Traut and James R. Traut.  They represented themselves and the matter was dismissed in favor of Plaintiff.  *See facts on Action 8 here; and more details, infra:*

**(8)**

**Traut Law Group, Eric V. Traut, et al. v. Bad Biz Finder, Erin Baldwin, et al.**
**Orange County Superior Court, Case No. 30-2009-00126328**
**(Defamation Case:  Filed July 20, 2009)**

~ ~ ~ ~ ~

22.     On September 2, 2009, Plaintiff filed an Appeal on the Permanent Injunction and Default Judgment in the Parsa Law Group Case.  Plaintiff filed her Designation of Record and waived her right to court reporter's transcripts for the Record on Appeal due to the cost.  However, the Court of Appeal dismissed Plaintiff's Appeal and issued a Remittitur due to fact that Plaintiff failed to pay court reporter transcript fees.  At that time, Plaintiff was not aware that Judge Franz E. Miller had been the senior staff attorney at that Court of Appeal for fourteen (14) years immediately preceding his appointment to the bench in 2002. *See facts on Action 9 here; and more details, infra:*

**(9)**

**Parsa Law Group, APC v. Bad Biz Finder, Erin Baldwin, et al.**
**Ninth Circuit Court of Appeal**
**Fourth District, Division Three, Case No. G042561**
**(Appeal of Judgment/Injunction:  Filed September 2, 2009)**

~ ~ ~ ~ ~

23.     Plaintiff moved to Big Bear on July 21, 2009.  On September 17, 2009, at 8:30 in the morning, Plaintiff's roommate was highly intoxicated.  She was delusional from chronic alcoholism and called the Big Bear Sheriffs claiming Plaintiff was "trying to kill her after they

- 18 -

had an argument about Plaintiff soaking her feet in an old cooking pot." *See facts on Action 10 here; and more details in, infra:*

### (10)

**Big Bear Sheriffs Incident Report, Case No. BB092699910**
**False Report of Battery by Baldwin - No Citation/No Fault**
**(Investigated and Closed:  Filed September 17, 2009)**

~ ~ ~ ~ ~

24.    On September 19, 2009, Plaintiff's former roommates, Keith and Patty White assaulted Plaintiff in Starbucks.  On August 6, 2009, Plaintiff called UDR about her property and they traced her call.  On August 9, 2009, Parsa Law Group and UDR's process server showed up at the front door of Keith and Patty White's house with the UDR and Cancilla Complaints.  It was shortly thereafter that Keith and Patty White decided to act as the Big Bear connection in joint participation with the Big Bear Sheriffs, Parsa Law Group, UDR, and the San Bernardino District Attorney, *inter alia,* to maintain retaliatory prosecution efforts. *See facts on Action 11 here; and more details, infra:*

### (11)

**Big Bear Sheriffs Incident Report, Case No. 160901554**
**Starbucks Corporate Case Report No. 7457256**
**K & P White Assault Plaintiff in Starbucks**
**(SBSD Fails to Investigate; SBDA Fails to Prosecute;**
**Starbucks Fails to Cooperate: Filed September 19, 2009)**

~ ~ ~ ~ ~

25.    In keeping with Keith and Patty White's joint participation agreement, they filed a "late counter report" on behalf of Plaintiff's drunken roommate, Bernadine Krueger, to make the incident something it was not.  They were not present on September 17, 2009, nor did they obtain Krueger's consent until the end of the meeting, just so she could sign a "Private Party Arrest Warrant" for Plaintiff's arrest.  *See facts on Action 12 here; and more details, infra:*

- 19 -

**(12)**

***Big Bear Sheriffs Incident Report, Case No. 060901492***
**Whites File Late Counter Report on Crime of Battery**
**Re: September 17, 2009 Closed Big Bear Sheriffs Case**
**(Private Party Arrest Warrant Issued - Filed September 23, 2009)**

~ ~ ~ ~ ~

26.     On September 25, 2009, with the "Private Party Arrest Warrant" for Plaintiff's arrest signed by Krueger in hand, Deputy Michael McCracken, on probation for DUI, sought out Plaintiff's landlords and business clients to question and warn them about Plaintiff.  He informed them that Plaintiff had beaten up Krueger, trashed her house and stolen her property. He gave them advice as to how they should have researched Plaintiff prior to signing a rental agreement with her or allowing her to provide consulting services.   Deputy McCracken searched Plaintiff's property and wrote down computer equipment serial numbers.   Then he traveled with Plaintiff's landlords to interrogate Plaintiff.  When he left, he issued Plaintiff a Notice to Appear for the crime of Battery.   *See facts on Action 13 here; and more details, infra:*

**(13)**

***Big Bear Sheriffs Citation No. 2662647 - Part I***
**Deputy Michael McCracken Interrogation**
**Re: September 17, 2009 Closed Big Bear Sheriffs Case**
**(Notice to Appear PC§242 - Filed September 25, 2009)**

~ ~ ~ ~ ~

27.     On September 26, 2009, Plaintiff made a formal complaint about the unlawful actions of Deputy McCracken directly with Big Bear Sheriff Sergeant Bryan Lane, specifically about how Deputy McCracken had claimed all his actions were legal pursuant to the written "Private Party Arrest Warrant" he had with him   Plaintiff questioned Sergeant Lane about this specifically and he agreed with Deputy McCracken that this was standard policy. *See facts on Action 14 here; and more details, infra:*

**(14)**

***Big Bear Sheriffs Citation No. 2662647 - Part II***

- 20 -

**Citizen Complaint of McCracken Interrogation
Re: September 17, 2009 Closed Big Bear Sheriffs Case
(Sergeant Bryan Lane Follow-up  - Filed September 26, 2009)**

~ ~ ~ ~ ~

28.     On September 30, 2009, in response to Plaintiff's reports to Sergeant Lane about Defendant K & P White's threatening comments left on Plaintiff's blog, and emails sent to her and to her clients, Defendants K & P White file formal criminal charges against Plaintiff for California Penal Code §653M(b), making vexatious and annoying telephone calls and emails.   Despite repeated requests, these emails could never be produced even though Defendant SBSD claims they are in the Evidence Locker at the Big Bear Sheriff substation. *See facts on Action 15 here; and more details, infra:*

**(15)**

***Big Bear Sheriffs Incident Report, Case No. 060901539***
**Whites Report of Annoying Emails and Telephone Calls
(Penal Code §653M(b) - Filed September 30, 2009**

~ ~ ~ ~ ~

29.     On October 5, 2009, to ensure Plaintiff does not apply for a restraining order against Defendants K & P White pursuant to the suggestion of Defendant Sheriff Deputy Wijnhamer (and in accordance with Big Bear Sheriffs Incident Report, Case No. 160901554 and Starbucks Corporate Case Report No. 7457256), Defendants K & P White deny that the assault ever took place, and apply for an emergency *ex parte* application for a temporary restraining order <u>against Plaintiff</u>.    Defendants K & P White justified their need for an emergency hearing based on what they believed "Plaintiff might be capable of doing in the future" based on no history of same. *See facts on Action 16 here; and more details, infra:*

**(16)**

***Keith D. White, Patricia A. White v. Erin K. Baldwin* - Part I**
**San Bernardino Superior Court, Case No. CIVHS-900261
Emergency Ex Parte Application for Temporary Restraining Order
(Civil Harassment - Filed October 5, 2009)**

~ ~ ~ ~ ~

- 21 -

30.     On October 6, 2009, due to the fact that Defendants K & P White failed to notify Plaintiff of the *ex parte* hearing, Judge Gilbert Ochoa grants the Whites a temporary restraining order by default. *See facts on Action 17 here; and more details, infra:*

**(17)**

**Keith D. White, Patricia A. White v. Erin K. Baldwin - Part II**
**San Bernardino Superior Court, Case No. CIVHS-900261**
**Emergency Ex Parte Application for Temporary Restraining Order**
**(Temporary Restraining Order Granted - Filed October 6, 2009)**

~ ~ ~ ~ ~

31.     On October 8, 2009, Big Bear Sheriff Deputy Morsch claimed to be following up on Defendant K & P White's charges against Plaintiff for PC §653M(b) (making vexatious and annoying telephone calls). During the course of this follow-up call Defendant K. White, informs Defendant Morsch where Plaintiff is at that precise moment and that he should go see her. How he knew is unclear; however, one wonders if the restraining order was issued to the wrong person. Defendant Morsch stated he still needed to conduct an interview with Plaintiff about the PC §653M(b) charges but claimed Plaintiff's address was unknown to the Big Bear Sheriffs. As such, he labeled Plaintiff a "vagrant" on the Citation. However, the Big Bear Sheriffs had been to Plaintiff's home on September 25, 2009 (*supra*), on September 26, 2009 (*supra*) and on October 5, 2009 when Defendant K. White was crank-calling Plaintiff.

32.     However, the record had to reflect that Plaintiff's address was unknown so that Deputy Morsch so he would have a reason to detain her at her client's office at rush hour on a busy public boulevard. Plaintiff was outside sitting in the car of Defendant Masotto who was dropping her off. Defendant Morsch approached the vehicle as if Plaintiff was wanted for armed robbery in the death of twelve innocent bystanders. His demeanor and questions were designed to evoke a response from Plaintiff that would justify him arresting her and bringing her into custody. California State Bar Investigator Tom Layton was at the scene.

33.     Once in custody, Plaintiff was severely beaten and burned by five male sheriff deputies while one female watched and kept screaming "Taser her, Taser her!!!" At one point Defendant Deputy King came within an inch of Plaintiff's face and told her "We all think you

- 22 -

1  should go back down the mountain where you come from, we don't think you fit in here," then

2  burned her with a liquid substance on all open skin surfaces.

3       34.     Plaintiff was transferred to West Valley Detention Center, seen by a nurse, who

4  ordered her immediate release for emergency medical treatment. *See facts on Action 18 here;*

5  *and more details, infra:*

6                                  **(18)**

7                    ***Big Bear Sheriffs Citation No. 3051942***
                **Re: Follow-up on Big Bear Sheriffs Case No. 060901539**

8           **In Custody Beating - 5 Male Sheriffs  - Tom Layton Present**
            **(Penal Code §§148.9(a)(1) - Filed October 8, 2009)**

9

10                              ~ ~ ~ ~ ~

11       35.     On October 19, 2009, Defendants K & P White filed criminal contempt

12  charges against Plaintiff (PC §166(4)(a)).  They claimed that because Plaintiff was  chronicling

13  the events of her life on her blog and some of those events included Defendant K & P White,

14  that Plaintiff was in violation of a stay away order.  California Civil Rights Statute, California

15  Civil Code §52.1(k) states:

16       *"No order issued in any proceeding brought pursuant to subdivision (a) or (b)*
         *shall restrict the content of any person's speech. An order restricting the time,*

17       *place, or manner of any person's speech shall do so only to the extent*
         *reasonably necessary to protect the peaceable exercise or enjoyment of*

18       *constitutional or statutory rights, consistent with the constitutional rights of the*
         *person sought to be enjoined."*

19

20       *See facts on Action 19 here; and more details, infra:*

21                                  **(19)**

22                 ***Big Bear Sheriffs Incident Report, Case No. 060901645* - Part I**
              **Keith & Patty White File Criminal Contempt Charges**

23           **Against Plaintiff For Writing on Her Blog (First Charge)**
              **(California Penal Code §166(4)(a) - October 19, 2009)**

24

25                              ~ ~ ~ ~ ~

26       36.     On October 25, 2009, Defendants K & P White filed additional criminal

27  contempt charges against Plaintiff, because they claimed she added new entries into her blog.

28

                                 - 23 -

If Defendants K & P White believed that the blog entries were not true, they had a civil remedy and that was to sue Plaintiff, like so many before, for defamation. However, it was not a crime. In filing these charges, Defendants K. & P White were doing three things:

a.   building a case for themselves so they could get a permanent injunction against Plaintiff on October 28, 2009;

b.   fabricating additional events to support Defendant SBDA's Complaint against Plaintiff to mitigate SB County's liability for the actions of Big Bear Sheriffs against Plaintiff on October 8-9, 2009; and

c.   giving the Court of Appeal additional "insight" into whether Plaintiff needed to be restrained by Judge Miller's permanent injunction against Plaintiff that was currently on Appeal. *See facts on Action 20 here; and more details, infra:*

(20)

*Big Bear Sheriffs Incident Report, Case No. 060901645* - Part II<br>
Keith & Patty White File Criminal Contempt Charges<br>
Against Plaintiff For Writing on Her Blog (Second Charge)<br>
(California Penal Code §166(4)(a) - October 25, 2009)

~ ~ ~ ~ ~

37.   On October 27, 2009, Defendants K & P White filed criminal contempt charges one more time before (a) they appeared at the hearing for their permanent restraining order; and (b) before the SBDA filed its Complaint against Plaintiff, Count 5 being Criminal Contempt of a Restraining Order, PC §166(4)(a) charges against Plaintiff were filed. *See facts on Action 21 here; and more details, infra:*

(21)

*Big Bear Sheriffs Incident Report, Case No. 060901645* - Part III<br>
Keith & Patty White File Criminal Contempt Charges<br>
Against Plaintiff For Writing on Her Blog (Third Charge)<br>
(California Penal Code §166(4)(a) - October 27, 2009)

~ ~ ~ ~ ~

38.   On October 28, 2009, Defendants K & P White were granted a three-year (maximum) sentence restraining order against Plaintiff. On the same date, SBDA Defendant

- 24 -

Robles filed San Bernardino Superior Court, Case No. MSB906348 against Plaintiff for one count of resisting arrest; two counts of battery on a peace officer, one count of giving false information to a peace officer; and one count of violating a restraining order. *See facts on Actions 22 and 23 here; and more details, infra:*

**(22)**

**Keith D. White, Patricia A. White v. Erin K. Baldwin - Part III**
**San Bernardino Superior Court, Case No. CIVHS-900261**
**Application for Permanent Restraining Order**
**(Permanent Restraining Order Granted - Filed October 28, 2009)**

**(23)**

**The People of the State of California v. Erin K. Baldwin**
**San Bernardino Superior Court, Criminal Complaint Case No. MSB906348**
**Re:  Big Bear Sheriffs Citation No. 3051942 -  Filed October 8, 2009**
**Resisting Arrest, Battery on Peace Officer, Criminal Contempt, False Info**
**(San Bernardino District Attorney - Filed Charges on October 28, 2009)**

~ ~ ~ ~ ~

39.    On November 18, 2009, Plaintiff filed an Appeal of the Permanent Restraining Order entered against her in the Keith and Patty white case.  Judge Steve Malone threw it out claiming there had already been resolution in the matter and the court no longer had jurisdiction to hear an appeal. *See facts on Action 24 here; and more details, infra:*

**(24)**

**Keith D. White, Patricia A. White v. Erin K. Baldwin - Part IV**
**San Bernardino Superior Court, Case No. CIVHS-900261**
**(Appeal on Permanent Restraining Order - Filed November 18, 2009)**

~ ~ ~ ~ ~

40.    On January 25, 2010, Defendant SBDA filed charges against Plaintiff for the crime of Battery.   The origin of this charge began on September 17, 2009, supra, where Plaintiff was absolved of all her roommates claims.  However, six days later, Defendant K & P White reported a battery "on behalf of Krueger," without Krueger's knowledge or consent.

- 25 -

1    Toward the end of the meeting Defendant P. White called Krueger and asked her to come over

2    and sign a "Private Party Arrest Warrant."   This action instigated a frantic series of interviews

3    by Defendant Deputy McCracken on September 25, 2009, resulting in Plaintiff being cited for

4    Battery.   However, Defendant SBDA never filed charges even though Plaintiff was arraigned

5    on December 1, 2009, and had her preliminary hearing on December 15, 2009.   Without a

6    Complaint.   Defendant SBDA finally filed one when they believed they would need it in

7    connection with Criminal Complaint No. 906348.   *See facts on Action 25 here; and more*

8    *details, infra:*

9

10                                          **(25)**

11              ***The People of the State of California v. Erin K. Baldwin***
         **San Bernardino Superior Court, Criminal Complaint Case No. MSB905837**
12         **Re: Big Bear Sheriffs Case - Investigation/Case Closed - September 17, 2009**
           **Re: Bear Sheriffs Citation No. 2662647 of Battery - Filed September 25, 2009**
13           **(San Bernardino District Attorney - Filed Charges on January 25, 2010)**

14

15                                        ~ ~ ~ ~ ~

16       41.     On February 24, 2010, Plaintiff's neighbor, Doreen Martin, took her to DOVES,

17   a domestic violence program in Big Bear to learn about options for alternative housing as a

18   result of Defendant Crow's abusiveness.   Defendant Hewitt performed a full assessment lasting

19   two hours and highly suggested that Plaintiff enter a shelter for her safety.   Plaintiff agreed to

20   return the next day, went home and under the direction of Hewitt put a chair under the door

21   knob of her bedroom door to keep Defendant Crow out.   When Defendant Crow got home he

22   noticed a chair missing and tried to break down Plaintiff's bedroom door to get the chair.

23       42.     Defendants Big Bear Sheriffs Lane and Jablonsky arrived at which time

24   Plaintiff explained her situation at DOVES and her plan to move to a shelter until she could

25   start her new job.   Instead of supporting Plaintiff they threatened her with petty theft if she

26   took Defendant Crow's chair again.   *See facts on Action 26 here; and more details, infra:*

                                            **(26)**

27

28              ***Big Bear Sheriffs Incident Report, Case No. (Unknown)***

                                          - 26 -

**Investigation of Domestic Violence by Jason Crow**
**Threaten Plaintiff with Petty Theft**
**(SBSD Fails to Investigate; SBDA Fails to Prosecute - February 24, 2010)**

~ ~ ~ ~ ~

43.     The next morning, Defendant Crow filed a false report that Plaintiff had thrown a large drinking glass at his head and Plaintiff was arrested for assault with a deadly weapon, a felony, and went to jail for 35 days during which time she was not charged with a crime nor did she receive a preliminary hearing.

44.     There had been no witnesses, no injuries to Defendant Crow or to his property, and no deadly weapon.   The police report stated "simple assault" but Defendant SBDA enhanced it to a felony without probable cause.   There was also no warrant so they used a $5,000 Orange County civil bench warrant issued by Judge Franz Miller on August 31, 2009 for failure to appear at a hearing for which she was not timely noticed.   During the 35 days, Plaintiff was not charged with a crime nor did she receive a preliminary hearing.   And the facts from the night before conveniently disappeared.

45.     However, prior to Plaintiff's arrest, Plaintiff posted an article on her blog chronicling the events from the day before, mentioned her trip to DOVES entitled, "Big Bear Sergeant Bryan Lane Threatens Baldwin With Petty Theft Over a Chair."   It was written and published during the exact period of time Plaintiff was accused of committing a felony.

46.     While in jail, Defendant SBDAs Spencer and Dixon told the Judge that Plaintiff was also in custody on Criminal Case Nos. MSB906348 and MSB905837 so they could raise her bail from $50,000 to $500,000.   They also told the Judge that Plaintiff had "waived time" on the felony charges which was not true; Plaintiff had only "waived time" on  Criminal Case Nos. MSB906348 and MSB905837 so that she could have more time to prepare for trial.

47.     Defendants SBSD and SBDA incarcerated Plaintiff to prevent her from preparing for trial, filing a Pitchess Motion against the sheriffs who beat her in custody, and to force her to sign a plea bargain on the two cases for which she was not in custody.  Plaintiff signed a plea bargain on March 26, 2010, but on April 1, 2010, requested that San Bernardino

- 27 -

Public Defender Doreen Boxer set it aside.   This request was never fulfilled. *See facts on Action 27 here; and more details, infra:*

### (27)

***The People of the State of California v. Erin K. Baldwin***
**San Bernardino Superior Court, Criminal Complaint Case No. FSB905837**
**Re: Investigation of Domestic Violence by Jason Crow - February 24, 2010**
**(San Bernardino District Attorney - Filed Charges on February 25, 2010)**

~ ~ ~ ~ ~

48.     At the suggestion of Defendant SBDA, one week after Plaintiff went to jail, Defendant Crow went to the court and requested an emergency *ex parte* hearing for domestic violence by Plaintiff against him.   Defendant Crow filed these charges when he knew they were false and knew Plaintiff was in jail and could not defend herself.   To conceal and mitigate his own wrongdoing, he retaliated against Plaintiff with civil litigation that had no merit, was ill-conceived and was a direct fraud upon the court. *See facts on Action 28 here; and more details, infra:*

### (28)

***Jason L. Crow v. Erin K. Baldwin***
**San Bernardino Superior Court, Case No. FAMHS1000015**
**Emergency Ex Parte Application for Temporary Restraining Order**
**(Domestic Violence - Restraining Order:  March 2, 2009)**

~ ~ ~ ~ ~

49.     Also when Plaintiff was in jail, Defendant SBDA appeared before Judge Michael Dest on behalf of Defendants K & P White to obtain a Criminal Protective Order for them against Plaintiff. *See facts on Action 29 here; and more details, infra:*

### (29)

***The People of the State of California v. Erin K. Baldwin***
**San Bernardino Superior Court, Criminal Complaint Case No. FSB905837**
**Re:  SBDA Appear on Behalf of Whites for Criminal Protective Order**
**(San Bernardino District Attorney Obtains Order - March 24, 2010)**

~ ~ ~ ~ ~

- 28 -

50.     When Plaintiff was released from jail, she was ordered to appear before Judge Franz Miller on the bench warrant that held her in custody for 35 days.  She appeared on June 1, 2010 and on June 8, 2010, was arraigned on Criminal Contempt charges (even though the Judge Miller insisted it was "civil contempt, quasi-criminal, specialty court contempt."  If it was not criminal, it is difficult to understand why Defendant Miller appointed Plaintiff a Public Defender from the Orange County Public Defender's Office.  *See facts on Action 30 here; and more details, infra:*

**(30)**

***Parsa Law Group, APC v. Bad Biz Finder, Erin Baldwin, et al.***
**Orange County Superior Court, Case No. 30-2009-00117752**
**Ordered to Appear Before Judge Miller - Assigns Public Defender**
**Judge Miller/Burkhalter/UDR File Maintains Its Civil Contempt**
**(Criminal Contempt Case Arraignment - June 1, 2010)**

~ ~ ~ ~ ~

51.     On September 13, 2010, the Contempt Charges were dismissed in favor of Plaintiff.  However, the underlying Permanent Injunction and Default Judgment are in full force because Plaintiff's public defender did not insist of Plaintiff receiving a trial on her factual innocence.

52.     Why would he make such a careless mistake?  Because he wasn't appointed to protect Plaintiff's constitutional rights, <u>he was appointed to protect Judge Miller for egregiously violating Plaintiff's constitutional rights</u>.  Public Defender, Martin Schwarz ("Defendant Schwarz") primary job was to make sure the Permanent Injunction and Default Judgment stayed in place even though the contempt charges were dismissed based on the fact that the underlying order was an unconstitutional prior restraint, overbroad, void for vagueness and failed to comport with Plaintiff's rights under due process of law.  *See facts on Action 31 here; and more details, infra:*

**(31)**

***Parsa Law Group, APC v. Bad Biz Finder, Erin Baldwin, et al.***
**Orange County Superior Court, Case No. 30-2009-00117752**
**Contempt Charges Dismissed - Permanent Injunction and**

- 29 -

**$604,515.66 Default Judgment Still in Place**
**(Contempt Trial - September 13, 2010)**

~ ~ ~ ~ ~

53.     On November 10, 2010, nearly a year after Defendant UDR obtained a Permanent Injunction against Plaintiff without a hearing on the merits, without identifying one single statement made by Plaintiff that was false; and without identifying the parties about which Plaintiff was prohibited from writing; Defendant UDR filed criminal charges of contempt against Plaintiff.  However, they called it "civil contempt," so they wouldn't have to leave the safety of Judge Miller's courtroom.  Plaintiff also had a Judgment entered against her in the amount of $104,210.55 without having to provide corroborating evidence of said sum. *See facts on Action 32 here; and more details, infra:*

**(32)**

***UDR, Inc. v. Bad Biz Finder, Erin Baldwin, et al.***
**Orange County Superior Court, Case No. 30-2009-00125305**
**Judge Miller/Burkhalter/UDR File it as Civil Contempt**
**(Criminal Contempt Case:  Filed November 10, 2010)**

~ ~ ~ ~ ~

54.     On February 1, 2011, Plaintiff was ordered to appear before Judge Miller for her arraignment.  Once again, he appointed Plaintiff a public defender to shield him from liability for his misconduct.  Plaintiff filed both a Marsden Motion and a Faretta Motion to remove the public defender but both were rejected by the Court.   This case is active and there is continuing retaliatory action from the parties named herein despite four separate requests from Plaintiff to this Court to issue  a preliminary injunction to protect Plaintiff from same. *See facts on Action 33 here; and more details, infra:*

**(33)**

***UDR, Inc. v. Bad Biz Finder, Erin Baldwin, et al.***
**Orange County Superior Court, Case No. 30-2009-00125305**
**Judge Miller/Burkhalter/UDR File Maintains Its Civil Contempt**
**Ordered to Appear Before Judge Miller - Assigns Public Defender**
**(Criminal Contempt Case Arraignment - February 1, 2011)**

~ ~ ~ ~ ~

- 30 -

55.     On February 24, 2011, Plaintiff prepared and served on Judge Miller a Verified Statement and Challenge for Cause in the Parsa Law Group case.   On March 3, 2011 Defendant Miller filed a Verified Answer and refused to recuse himself.   On March 13, 2011, the Acting Presiding Judge, David A. Thompson, referred Plaintiff's Challenge to Judge Carolyn Kuhl for an independent review.   On March 16, 2011, Plaintiff adamantly opposed the choice of Judge Carolyn Kuhl and on March 17, 2011 filed a Writ of Mandate Re Disqualification with the Court of Appeal.   Judge Miller had been the senior research attorney at that Court of Appeal for fourteen (14) years immediately preceding his appointment to the bench in 2002.   Judge Carolyn Kuhl denied Plaintiff's request for disqualification and the Court of Appeal denied Plaintiff's petition.   *See facts on Action 34 here; and more details, infra:*

**(34)**

***Erin K. Baldwin v. Orange County Superior Court (Parsa Case)***
**Writ of Mandate Re Disqualification of Judge Franz E. Miller**
**Ninth Circuit Court of Appeal, Fourth District, Division Three**
**(Case No. G044953:  Filed March 17, 2011)**

~ ~ ~ ~ ~

56.     On April 18, 2011, Plaintiff filed a second Writ requesting that the Court of Appeal review Judge Carolyn Kuhl's Order denying disqualification of Defendant Miller. Again, Plaintiff's petition was denied.   *See facts on Action 35 here; and more details, infra:*

**(35)**

***Baldwin v. The Superior Court of Orange County (Parsa Case)***
**Writ of Mandate Re Disqualification of Judge Franz E. Miller**
**Ninth Circuit Court of Appeal, Fourth District, Division Three**
**(Case No. G045100:  Filed April 18, 2011)**

~ ~ ~ ~ ~

57.     It was obvious the true motivations of Plaintiff's public defender in the UDR case and Plaintiff sought to have them removed.   On April 13, 2011, Plaintiff filed a Marsden

- 31 -

1  Motion which was rejected by the Court. On May 17, 2011, Plaintiff filed a Marsden Motion
2  which was also rejected by the Court.

3      58.    Plaintiff is now in a very difficult position. Defendant OCPD claims they are
4  still Plaintiff's attorneys of record which means Plaintiff cannot act on her own. However,
5  Defendant OCPD refuses to do any work on behalf of Plaintiff claiming there is an Order of
6  the Court stating as much.

7      59.    Therefore, all activities in the UDR Contempt Case are stalled due to the fact
8  that Defendant OCPD has not completed its objectives laid out by Judge Miller and the Orange
9  County Board of Supervisors ("Defendant OCBS").

10      a.    Defendant OCPD's actions prevent Plaintiff from exercising her
constitutional right to self-representation.

11
12      b.    At the same time, Defendant OCPD's actions all prevent her from
13  exercising another constitutional right to effective assistance of counsel during all stages of a
criminal proceeding.

14
15      c.    The fact that this case is "in limbo" <u>does not mean that the Younger
16  Abstention Doctrine can dispose of this case quickly until such time as the contempt matter is
17  solved in Superior Court</u>. That rule applies only to criminal prosecutions. Plaintiff was
18  charged with <u>Civil Contempt under CCP §1209, et seq</u>. so that the criminal "case within a
case" would not be separated from the underlying civil action.

19      d.    When U.S. District Court Judge, Defendant Carney remanded this case
20  back to Defendant Miller, his order stated: "On February 1, 2011, Ms. Baldwin was arraigned
21  on charges of <u>criminal</u> contempt and a trial was set for April 19, 2011." So, if that is the
22  strategy, please further into the details of the civil contempt proceedings.

23      e.    Plaintiff should have been charged with Criminal Contempt under Penal
24  Code §166(4)(a) and she would have been afforded all the right of the criminal defendant,
25  including a jury trial. However, a jury trial would have exposed the hundreds of millions of
26  dollars publicly-traded landlord/REIT, UDR, Inc. has stolen from its tenants over the past
27  seven (7) years. Therefore, the Orange County Board of Supervisors directed Defendant
28  OCPD Kwast to "act as if" it's civil contempt "even though your office only handles criminal

1  matters."  However, the public defender assigned to Plaintiff spilled the beans.  OCPD

2  Defendant Jennifer Nicolalde said to Plaintiff the first time they spoke, "This is the first civil

3  contempt matter this office has ever handled, don't you feel special?"  No, "special" was not

4  how Plaintiff felt; angry is what Plaintiff felt, and ever since that day, Plaintiff has been trying

5  to get rid of her court-appointed counsel and represent herself.

**(36)**

***UDR, Inc. v. Erin Baldwin, Bad Biz Finder, et al.***
**Orange County Superior Court, Case No. 30-2009-00125305**
**Criminal Complaint Case: Removal of Public Defender**
**(Marsden Motion Rejected by the Court:  April 13, 2011)**
**(Faretta Motion Rejected By the Court: May 15, 2011)**

~ ~ ~ ~ ~

60.    On April 22, 2011, Plaintiff prepared and served on Judge Miller a Verified

Statement and Challenge for Cause in the UDR case.  Defendant Miller refused to recuse

himself, so Plaintiff asked the Court of Appeal to disqualify him via a Writ of Mandate Re

Disqualification and Motion for an Emergency Stay in Proceedings filed on March 17, 2011.

Both requests for review were denied. *See facts on Action 34 here; and more details in "The*

*Statement of Facts," infra:*

**(37)**

***Baldwin v. The Superior Court of Orange County (UDR Case)***
**Writ of Mandate Re Disqualification of Judge Franz E. Miller**
**& Motion for Emergency Stay of Proceedings**
**Ninth Circuit Court of Appeal, Fourth District, Division Three**
**(Case No. G045132:  Filed April 25, 2011)**

~ ~ ~ ~ ~

61.    On May 9, 2011, Plaintiff filed a Notice of Removal in the UDR Case to the

Unites States District Court based on Federal Question & Diversity Jurisdiction.  U.S. District

Court Judge Carney J. Cormac vacated the scheduled hearing on the Motion to Remand and

remanded the case on June 26, 2011, *sua sponte*, based procedural defects and lack of subject

matter jurisdiction.

- 33 -

62. In *Kelton Arms Condo Owners Ass'n, Inc. v. Homestead Ins. Co.,* 346 F3d 1190, 1193 (9th Cir. 2003) the Court held, *inter alia,* that a district court cannot remand a case *sua sponte* for procedural defects. Therefore, Judge Cormac Carney remanded the case, sua sponte, based exclusively on subject matter jurisdiction.

63. There is one glaring oversight on page one, in the paragraph entitled, "Introduction and Background." It states, in relevant part, "On February 1, 2011, Ms. Baldwin was arraigned on charges of **criminal** contempt and a trial was set to begin April 19, 2011."

64. The oversight is that the contempt proceedings were filed as civil contempt under California Code of Civil Procedure §§1209, *et seq.* In fact, a completely irrelevant family law Judicial Council form was used to bring the contempt action that is intended to be used by an individual in distress that needs protection.

65. Criminal contempt is brought under California Penal Code §166(4)(a) by a District Attorney representing the State of California. The hearing is conducted before a criminal judge in a case separate from the underlying civil action.

66. This was far from reality on February 1, 2011. In fact, Judge Miller, who signed the civil contempt orders heard the case and UDR's attorneys in the underlying action were substitute DAs. Plaintiff was given a public defender by Judge Miller but they didn't have the slightest idea what they were doing in civil court on a contempt action even admitting they had never handled a civil contempt action.

67. Therefore, it appears as if Plaintiff's Notice of Removal was denied on the basis that it was a "criminal action," as opposed to a civil action noted in 28 U.S.C. §1441(a), *i.e.,* "A defendant may remove a civil action that is brought in a state court but over which a federal court may exercise original jurisdiction." This oversight which will be addressed herein.

68. In light of the present cause of action of civil rights litigation, Judge Cormac Carney's June 27, 2011 Order stated, in relevant part:

> *"Notwithstanding Ms. Baldwin's assertions in her opposition to the motion to remand that the state court's permanent injunction and the related contempt proceedings violated her rights under the First, Fourth and Fifth Amendments to the United States Constitution, there is no basis for federal question jurisdiction over any claim alleged in Plaintiff's Complaint.*

- 34 -

*"In order to establish federal question jurisdiction, Ms. Baldwin must show that a question 'arising under' federal law appears on the face Plaintiff's well-pleaded Complaint at the time of removal.*

*"A defendant may not remove a case by asserting a defense based in federal law, and original jurisdiction is lacking even if a defense is alleged to be based exclusively on federal law.*

*"Here, Plaintiffs' claims for trade libel, tortious interference with contractual relations and prospective economic advantages, and civil harassment are purely state-law claims, and the state court entered a permanent injunction based on those claims.*

*"Ms. Baldwin's attempt to assert a defense or her own counterclaims based on alleged violations of her constitutional rights does not establish federal question jurisdiction over Plaintiff's complaint."*

69.   With respect to Judge Carney's statement, *supra*, ""In order to establish federal question jurisdiction, Ms. Baldwin must show that a question 'arising under' federal law appears on the face Plaintiff's well-pleaded Complaint at the time of removal."

70.   Plaintiff asserts that most strategic lawsuits against public participation do not advertise its intent to violate the defendant's constitutional rights "on the face of its well-pleaded Complaint." First, it is not well-pleaded. Second, one only need look at the complete absence of due process of law preceding the issuance of the permanent injunction as well as the text of the injunction to determine, retrospectively, whether or not it was an intentional attempt to chill Plaintiff's protected speech about matter of public concern.

**(38)**

***UDR, Inc. v. Bad Biz Finder, Erin Baldwin, et al.***
**Notice of Removal to the United States District Court**
**Federal Question/Diversity Jurisdiction - Judge Carney Cormac**
**(SACV-8:11-cv-00708-CJC-AN - May 9, 2011)**

~ ~ ~ ~ ~

71.   On May 17, 2011, Plaintiff filed a Notice of Removal in the Parsa Case to the Unites States District Court based on Federal Question & Diversity Jurisdiction. Again, it was assigned to U.S. District Court Judge Carney J. Cormac who remanded the case back to Judge

- 35 -

Franz E. Miller, in six weeks, via an almost identical *sua sponte* Order for lack of subject matter jurisdiction.

**(39)**

*Parsa Law Group v. Bad Biz Finder, Erin Baldwin, et al.*
**Notice of Removal to the United States District Court**
**Federal Question/Diversity Jurisdiction - Judge Carney Cormac**
**(SACV-8:11-cv-00708-CJC-AN - May 17, 2011)**

~ ~ ~ ~ ~

72.     On August 16, 2011, Plaintiff filed the herein Section 1983 Civil Rights case and was automatically sent to the bottom of the barrel with other cases brought by pro se litigants chiefly because they are indigent and cannot afford to hire an attorney. Plaintiff's case was given a "194" case status which is assigned to all pro se litigants including prison inmates. All pro se litigant are automatically referred to an Article I Magistrate Judge as was Plaintiff to U.S. Magistrate Judge Sheri Pym, who had been sworn into office four months earlier, and promptly gave Plaintiff's case to her Pro Se Law Clerk.

**(40)**

*Erin K. Baldwin v. Bank of America, et al.*
**§1983 Civil Rights Complaint**
**(EDCV-5:11-cv-01300-DOC-SP - August 16, 2011)**

~ ~ ~ ~ ~

73.     On August 25, 2011, Plaintiff Served a Verified Statement and Challenge For Cause on Judge Miller along with and a Demand that the below matters be transferred to the Presiding Judge, The Honorable Thomas S. Borris to:

(a)  Vacate all Orders by Judge Franz E. Miller on the grounds they are unconstitutional and that Judge Franz E. Miller knew they were unconstitutional when he made them;

(b)  Grant a Change of Venue; and

(c)  Recall the retaliatory bench warrant issued against Erin Baldwin by Judge Franz E. Miller on August 18, 2011, two days after he was served with a Section 1983 Complaint I which he was a defendant.

- 36 -

*Parsa Law Group, APC v. Bad Biz Finder, Erin Baldwin, et al.*
**Orange County Superior Court, Case No. 30-2009-00117752**
**Judge Miller/Burkhalter/UDR File it as Civil Contempt**
**(Criminal Contempt Case:  Filed July 14, 2009)**

*UDR, Inc. v. Bad Biz Finder, Erin Baldwin, et al.*
**Orange County Superior Court, Case No. 30-2009-00125305**
**Judge Miller/Burkhalter/UDR File it as Civil Contempt**
**(Criminal Contempt Case:  Filed November 10, 2010)**

74.     To underscore the blatant disregard for Plaintiff's constitutional rights and disrespect for the honor of the court, on September 14, 2011, a case was entered into the docket system of the Orange County Superior Court under Plaintiff's name, entitled, "*Kathryn Taylor Lafazan v. Steven John G. George,*" Case No.  30-2011-00508097-CU-HR-CJC, for Civil Harassment.  None of the documents of the alleged case are viewable but Plaintiff performed a cursory search of the parties to the case.

75.     Kathryn Taylor Lafazan died at 49, in 2006, a member of the Lafazan Crime Family who had a horrible life.  If this is meant to be a joke, exactly why is it funny?  And why is it that when Plaintiff calls the Court and inquires, none of the clerks can find the case?

*Kathryn Taylor Lafazan v. Steven John G. George*
**Case No. 30-2011-00508097-CU-HR-CJC**
**Civil Harassment - September 14, 2011**

~ ~ ~ ~ ~

76.     Plaintiff asserts that the extraordinary efforts undertaken to silence Plaintiff's Writings would not have occurred had they not been truthful, reliable, authentic, fact-based, and legally-substantiated.  Furthermore, at no time during the past two and one-half years has even one defendant named herein been able to identify one single fact written by Plaintiff that was not true.  Truth is an absolute defense and that issue was never questioned.

77.     Nonetheless, Plaintiff is the subject of two permanent injunctions representing unconstitutional prior restraint and has over $700,000 in default judgments.  At first, the violations were expressly intended to silence Plaintiff.  When Plaintiff refused to be silenced,

- 37 -

1   and instead, documented in public forums the intentional violations of her rights, the

2   retaliation split evenly between new acts of retaliation and acts designed to conceal the original

3   violations. Each time Plaintiff fought back and exposed the violations of her rights, new harm

4   would come her way in the hope she would simply give up.

5       78.   But Plaintiff never gave up and now brings the herein action to federal court for

6   redress of her constitutional and federal rights, on the authority of federal legislation, 42

7   U.S.C. §1983 that states:

8       *"Every person who, under color of any statute, ordinance, regulation,*

9   *custom, or usage, of any State or Territory or the District of Columbia,*
   *subjects, or causes to be subjected, any citizen of the United States or other*

10   *person within the jurisdiction thereof to the deprivation of any rights,*
   *privileges, or immunities secured by the Constitution and laws, shall be liable*

11   *to the party injured in an action at law, suit in equity, or other proper*
   *proceeding for redress, except that in any action brought against a judicial*

12   *officer for an act or omission taken in such officer's judicial capacity,*
   *injunctive relief shall not be granted unless a declaratory decree was violated*

13   *or declaratory relief was unavailable..."*

14       79.   Plaintiff asserts that the seven above cases did not occur in single, random acts;

15   rather, they occurred by way of several conspiratorial engagements in joint participation with

16   state officials acting under color of state law.   This is the only way defendants could have

17   managed to commit these crimes and violate Plaintiff's rights.   Officials acting under color of

18   state law have a tremendous amount of power, and that  authority is not available to Plaintiff

19   except in this Court with this federal civil rights action.

20       80.   Plaintiff, in no way, claims a "grand conspiracy" of all defendants named herein

21   working in collusion with all other defendants.   However, common objectives exact common

22   results and the governance under which officials acting under color of state law operate, has,

23   so far, shielded them from accountability, punishment and restitution to Plaintiff.   This is, in

24   part, why Plaintiff also employs 42 U.S.C. §1985 that states:

25       *"If two or more persons in any State or Territory conspire [...] for the*
   *purpose of depriving, either directly or indirectly, any person or class of*

26   *persons of the equal protection of the laws, or of equal privileges and*
   *immunities under the laws; or for the purpose of preventing or hindering the*

27   *constituted authorities of any State or Territory from giving or securing to all*
   *persons within such State or Territory the equal protection of the laws;[...] or if*

28   *two or more persons conspire to prevent by force, intimidation, or threat, any*

*citizen [...] in any case of conspiracy set forth in this section; and if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."*

81.    In addition, Plaintiff calls on the authority of 42 U.S.C. §1986 to provide a remedy for injuries caused by intentional acts of omission by officials and institutions that owe a duty to respond when a citizen asks for help.  This federal avenue to remedy states:

*"Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action [...]. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."*

82.    In accordance with 28 U.S.C. §1367(a), Plaintiff incorporates herein state law claims that are directly associated with the federal and constitutional rights violations brought herein.  Plaintiff asserts that these claims are "from part of the same case or controversy under Article III of the United States Constitution and that supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties."

83.    The California Civil Rights Act (codified in California Civil Code §52.1) includes a specific related clause in subsection "k." relevant to the herein action.  It states:

*"No order issued in any proceeding brought pursuant to subdivision (a) or (b) shall restrict the content of any person's speech. An order restricting the time, place, or manner of any person's speech shall do so only to the extent reasonably necessary to protect the peaceable exercise or enjoyment of constitutional or statutory rights, consistent with the constitutional rights of the person sought to be enjoined." [See, fn. 10 for "(a)"][2] [See, fn. 11 for "(b)"][3]*

---

[2] (a) If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate

- 39 -

84.     As referenced in Paragraph 16, *supra*, the content of Plaintiff's speech was forever restricted via two permanent injunctions without concern for "the peaceable exercise or enjoyment of constitutional or statutory rights, consistent with the constitutional rights of the person sought to be enjoined." These facts will be fully briefed herein.

85.     Plaintiff hereby demands a jury trial as a matter of right, in accordance with the Seventh Amendment of the United States Constitution, and specifically in view of the U.S. Supreme Court decision in *Byrd v. Blue Ridge Cooperative*, 356 U.S. 525 (1958) that states, in relevant part:

> *"In light of the influence of the Seventh Amendment, the function assigned to the jury is an essential factor in the process for which the Federal Constitution provides."*

86.     Once again, Plaintiff requests that the Court order a preliminary injunction enjoining further retaliatory action against Plaintiff by defendants named herein and participants in the following two active cases:

a.      *Parsa Law Group, APC v. Bad Biz Finder, Erin Baldwin, et al.,* Orange County Superior Court, Case No. 30-2009-00117752; and

b.      *UDR, Inc. v. Erin Baldwin, Bad Biz Finder, et al.,* Orange County Superior Court, Case No. 30-2009-00125305.

87.     On October 28, 2011, Plaintiff petitioned this Court for a preliminary injunction enjoining continuing acts of retaliation, most recently a notice sent to Plaintiff from Defendant Orange County Sheriff's Department that threatens her liberty interests.   The herein action

---

equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. An action brought by the Attorney General, any district attorney, or any city attorney may also seek a civil penalty of twenty-five thousand dollars ($25,000). If this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated this section and the penalty shall be awarded to each individual whose rights under this section are determined to have been violated.

[3]  (b) Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured.

contains several claims of arbitrary harassment from sheriffs threatening Plaintiff's liberty interests without probable cause.  This is just another example:

> "Warrant of arrest notice:  a warrant has been issued for your immediate arrest as a result of the following:  <u>A complaint filed charging you with a violation of the law</u>.  Agency Assigned: Orange County Sheriff's Dept.   877-872-2122.  Failure to comply will result in your immediate arrest at your home or place of business."

88.    Plaintiff has no knowledge of a criminal complaint filed against her.  If the Orange County District Attorney, named herein as a defendant, is retaliating against Plaintiff by threatening prosecution; any future prosecution would be an unconstitutional act of retaliation.

89.    In bringing this Section 1983 Complaint, Plaintiff is engaged in constitutionally-protected activity, *i.e.,* petitioning the court for redress of grievances.    Yet, the very nature of her claims continue unabated even after notice of said retaliatory actions to this Court.  In order to prevail with a preliminary injunction, Plaintiff need only demonstrate a reasonable probability that her claims would succeed on the merits and to this end, Plaintiff filed the October 28, 2011 Notice.  To date, an Order of the Court has not been made to ensure that the proceedings before this Court are fair and equitable.

90.    Plaintiff requests that a special prosecutor be appointed to investigate the viability of bringing criminal charges against defendants named herein pursuant to 18 U.S.C. §241 and §242.

91.    Plaintiff also requests that the Court appoint her counsel as requested on many occasions.  United States Code §1915(e)(1) states: "The court may request an attorney to represent any person unable to afford counsel."

92.    In certain cases, the Court "may appoint counsel . . . only under 'exceptional circumstances.'"  (See, *Burns v. County of King*, 883 F.2d 819, 824 (9th Cir. 1989) (per curiam) and *Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir.1984)).  "A finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the ability of the petitioner to articulate his claims pro se in light of the complexity of the issues involved. Neither of these factors is dispositive and both must be viewed together

1  before reaching a decision." Terrell, 935 F.2d at 1017 (citing Wilborn v. Escalderon, 789 F.2d

2  1328, 1331 (9th Cir. 1986) (§ 1983 action)); see also $292,888.04 in U.S. Currency, 54 F.3d at

3  569; Wood v. Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).

4      93.   Appointment of counsel may be justified when proceedings will go forward

5  "more efficiently and effectively." Johnson v. California, 207 F.3d 650, 656 (9th Cir. 2000) .

6      94.   The Ninth Circuit reviews for abuse of discretion a district court's decision

7  whether to appoint counsel under §1915 (See, Terrell, 935 F.2d at 1017).   It is an abuse of

8  discretion to grant defendant's motion to dismiss or motion for summary judgment prior to

9  ruling on plaintiff's motion for appointment of counsel.   (See, Miles v. Dep't of Army, 881

10  F.2d 777, 784 (9th Cir. 1989) and McElyea v. Babbitt, 833 F.2d 196, 199 (9th Cir. 1987).

11     95.   If the Court continues to believe that Plaintiff's request is unmeritorious,

12  Plaintiff strongly requests that it comply with the Ninth Circuit holding in Eldridge v. Block,

13  832 F.2d 1132, 1137 (9th Cir. 1987) regarding liberal pleading standards.

14     96.   In Eldridge, it stated:

15     *"The Supreme Court has instructed the federal courts to liberally construe the
       inartful pleading of pro se litigants. It is settled that the allegations of a pro se
16     litigant's complaint, however inartfully pleaded, are held to less stringent
       standards than formal pleadings drafted by lawyers."*

17  [Also, see, Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam); Boag v.
    MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520
18  (1972) (per curiam); Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008); Johnson v.
    California, 207 F.3d 650, 653 (9th Cir. 2000) (per curiam).]
19

20     97.   In Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992), the Ninth Circuit

21  also held:   ***"The rule of liberal construction is 'particularly important in civil rights cases'."***

22     98.   In Merrell v. J.R. Block, [4] the Ninth Circuit Court of Appeal decided that "*Pro*

23  *se* litigants are not entitled to fees under the statute, but they are <u>entitled to expenses</u>."

24  Accordingly, Plaintiff hereby requests reimbursement for all expenses.

25     99.   And finally, in Burt v. Hennessey,[5] pro se litigants are entitled "to recover

26  actual costs reasonably incurred to the extent that an attorney could have received these costs

27  ────────────────

28  [4] 809 F.2d 639, 642 (9th Cir. 1987).
    [5] 929 F.2d 457, 459 (9th Cir. 1991).

- 42 -

under a §1988 attorney's fees award."[6]  Plaintiff reserves her right to reimbursement for costs so specified in fn. 11, *infra*.

### C.    Jurisdiction and Venue

100.    This Court has original jurisdiction over Plaintiff's constitutional and federal law claims pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343(a).

101.    This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a) because "they are part of the same case and controversy described by Plaintiff's federal claims.   In addition, this Court has independent original jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1332 because this action is between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

102.    Plaintiff asserts that the California State Attorneys' Oath, codified in Business and Professions Code §6068, is state law; any violations of same are actionable offenses herein. Attorneys, like any other private party (including public defenders) are "persons" under §1983.  Federal jurisdiction pre-empts state law jurisdiction and, as such, all attorneys named herein are individuals subject to the Joint Participation Doctrine, which association converts them to private parties acting under color of state law.

103.    The following are laws applicable to <u>all attorneys</u> including those names herein as defendants in this action.  Plaintiff incorporates herein these laws in connection with all attorney defendants named herein by way of this Court's supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) of Plaintiff's state law claims irrevocably connected to the violations of Plaintiff constitutional and federal , federal and is action under federal law  requests that the Court acknowledge same in and It is irrelevant their position or immunity or

*It is the duty of an attorney to do all of the following:*

---

[6] The following may be included in an award of costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses and costs of special interpretation services under 28 U.S.C. § 1828. (Also see, 28 U.S.C. § 1920).

*a.      To support the Constitution and laws of the United States and of this state;*

*b.      To maintain the respect due to the courts of justice and judicial officers.*

*c.      To counsel or maintain those actions, proceedings, or defenses only as appear to him or her legal or just, except the defense of a person charged with a public offense.*

*d.      To employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law.*

*e[1].      To maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client.*

*e[2][1]. Notwithstanding paragraph, an attorney may, but is not required to, reveal confidential information relating to the representation of a client to the extent that the attorney reasonably believes the disclosure is necessary to prevent a criminal act that the attorney reasonably believes is likely to result in death of, or substantial bodily harm to, an individual.*

*f.      To advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he or she is charged.*

*g.      Not to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest.*

*h.      Never to reject, for any consideration personal to himself or herself, the cause of the defenseless or the oppressed.*

*i.      To cooperate and participate in any disciplinary investigation or other regulatory or disciplinary proceeding pending against himself or herself. However, this subdivision shall not be construed to deprive an attorney of any privilege guaranteed by the Fifth Amendment to the Constitution of the United States, or any other constitutional or statutory privileges. This subdivision shall not be construed to require an attorney to cooperate with a request that requires him or her to waive any constitutional or statutory privilege or to comply with a request for information or other matters within an unreasonable period of time in light of the time constraints of the attorney's practice. Any exercise by an attorney of any constitutional or statutory privilege shall not be used against the attorney in a regulatory or disciplinary proceeding against him or her.*

*j.      To comply with the requirements of Section 6002.1.*

*k.*      To comply with all conditions attached to any disciplinary probation, including a probation imposed with the concurrence of the attorney.

*l.*      To keep all agreements made in lieu of disciplinary prosecution with the agency charged with attorney discipline.

*m.*      To respond promptly to reasonable status inquiries of clients and to keep clients reasonably informed of significant developments in matters with regard to which the attorney has agreed to provide legal services.

*n.*      To provide copies to the client of certain documents under time limits and as prescribed in a rule of professional conduct which the board shall adopt.

*o.*      To report to the agency charged with attorney discipline, in writing, within 30 days of the time the attorney has knowledge of any of the following:

*o[1].*      The filing of three or more lawsuits in a 12-month period against the attorney for malpractice or other wrongful conduct committed in a professional capacity.

*o[2].*      The entry of judgment against the attorney in a civil action for fraud, misrepresentation, breach of fiduciary duty, or gross negligence committed in a professional capacity.

*o[3].*      The imposition of judicial sanctions against the attorney, except for sanctions for failure to make discovery or monetary sanctions of less than one thousand dollars ($1,000).

*o[4].*      The bringing of an indictment or information charging a felony against the attorney.

*o[5].*      The conviction of the attorney, including any verdict of guilty, or plea of guilty or no contest, of a felony, or a misdemeanor committed in the course of the practice of law, or in a manner in which a client of the attorney was the victim, or a necessary element of which, as determined by the statutory or common law definition of the misdemeanor, involves improper conduct of an attorney, including dishonesty or other moral turpitude, or an attempt or a conspiracy or solicitation of another to commit a felony or a misdemeanor of that type.

*o[6].*      The imposition of discipline against the attorney by a professional or occupational disciplinary agency or licensing board, whether in California or elsewhere.

*o[7].*      Reversal of judgment in a proceeding based in whole or in part upon misconduct, grossly incompetent representation, or willful misrepresentation by an attorney.

- 45 -

*o[8].   As used in this subdivision, "against the attorney" includes claims and proceedings against any firm of attorneys for the practice of law in which the attorney was a partner at the time of the conduct complained of and any law corporation in which the attorney was a shareholder at the time of the conduct complained of unless the matter has to the attorney's knowledge already been reported by the law firm or corporation.*

*o[9].   The State Bar may develop a prescribed form for the making of reports required by this section, usage of which it may require by rule or regulation.*

*o[10]. This subdivision ["o," only, <u>not the balance of the §6068</u>] is only intended to provide that the failure to report as required herein may serve as a basis of discipline.*

105.   Venue is proper in the Central District of California, Eastern Division, pursuant to 28 U.S.C. §§1391(b)(1), (2), and (3) because Plaintiff resides in Riverside County. In addition, many of the named defendants reside or are employed in San Bernardino County. A substantial part of the events giving rise to these claims occurred in the jurisdiction of the Central District of California, Eastern Division.

106.   Plaintiff demands the full panoply of rights afforded any other citizen bringing a §1983 action whether she proceeds pro se or with counsel.  She is aware of and hereby denounces any attempt to dispose of this case for any reason other than that which is prescribed by law.

107.   Plaintiff also demands that the Court's Mandatory Arbitration assignment be vacated and that a *de novo* review of Magistrate Judge Pym's denial of Plaintiff's request to participate in the Court's Electronic Filing Program be scheduled.

108.   Finally, Plaintiff demands that all other matters pertaining to this action be heard before a Section III United States District Court Judge.

### D.   Statute Of Limitations

109.   Because 42 U.S.C. §1983 contains no specific statute of limitations, federal courts borrow state statutes of limitations for personal injury actions.  (*See,* U.S. Supreme

- 46 -

1    Court decisions in *Wallace v. Kato*[7] *and Wilson v. Garcia,*[8] superseded by statute on other

2    grounds.  In California, the personal injury statute of limitation is two years.

3        110.    However, federal law determines when a cause of action accrues and the statute

4    of limitations begins to run for a §1983 claim.   *In Bagley v. CMC Real Estate Corp.,* 923 F.2d

5    758, 760 (9th Cir. 1991) the U.S Supreme Court held:

6        *"A federal claim accrues when the plaintiff knows or has reason to know of the*
         *injury which is the basis of the action."*

7        111.    Plaintiff asserts two very important factors for the Court to consider:

8        a.    For the past two years, Plaintiff's principal objective was to "survive"

9    the retaliatory onslaught of legal actions against her.  It was not until early-2011 that Plaintiff

10   found stability to the extent she could begin forming the causes of action for the herein

11   Complaint.

12       b.    Notwithstanding "a.," supra, Plaintiff wishes to remind the Court that on

13   three separate occasions (June 19, 2009; on or about August 31, 2009; and on or about

14   February 25, 2010) defendants named herein seized the sum total of Plaintiff's property in her

15   residence and in her storage unit.

16       c.    The  advantage  defendants  named  herein  have  realized  by  its

17   unconstitutional search and seizure of Plaintiff's property is tremendous.  Imagine trying to

18   write a book with ten words, when you know there are 200.  That has been Plaintiff's

19   experience each time she had been deprived of her property interest.

20       d.    How can a party to an action be expected to defend that action when the

21   other party has taken all her documents, pleadings, research, notes, correspondence, emails,

22   articles, transcripts, court order and so on?

23       112.    The Fundamental-Fairness Doctrine is a rule that applies the principles of due

24   process to a judicial proceeding.  Fundamental-Fairness is considered synonymous with due

25   process. The due process guarantees under the Fifth and Fourteenth Amendments to the U.S.

26   Constitution Clause provide that the government shall not take a person's life, <u>liberty, or</u>

27   <u>property without due process of law.</u>  Nonetheless, it's occurred countless times.

---

[7] 549 U.S. 384, 127 S. Ct. 1091, 1094 (2007)

28   [8] 471 U.S. 261, 276 (1985).

113.     In this Second Amended Complaint, Plaintiff has included two federal officers as defendants to her action.  Plaintiff does not take this decision lightly and has given it tremendous thought.   In order to comprehensively articulate the nature of her claims, particularly those that deal with constitutional issues, Plaintiff must include facts (supported by the law) surrounding decisions that do not comport with Plaintiff's constitutional rights and privileges.  She need not be concerned that, as a result, she may not be favored, as Plaintiff asserts that the integrity of her claim is tantamount.

a.     Plaintiff added Judge Cormac J. Carney *("Defendant Carney")* as a result of Plaintiff's May, 2011 removal of two strategic lawsuits against public participation from state court to district court based on federal question and diversity jurisdiction.  Both cases were assigned to Defendant Carney who ultimately remanded them back to Orange County Superior Court Judge Franz E. Miller.  In addition to his surprising *sua sponte* remand orders, the remand circumstances were unusual and not in compliance with the Federal Rules of Civil Procedure.  (Please see more details in the "Statement of Facts," *infra*.)

b.     Plaintiff added Magistrate Judge Sheri N. Pym *("Defendant Pym")* who was assigned Plaintiff's case on August 16, 2011.  It's no great revelation that *pro se* litigants are not favored by the district courts; that they are relegated to the bottom of the barrel and nobody wants to be bothered with them.  However, rather than appearing *in forma pauperis*, Plaintiff paid the filing fee of $350.00 and would like her day in court.  Plaintiff fears that it is not likely to happen in this particular arrangement.   (Please see more details in the "Statement of Facts," *infra*.)

114.     Accordingly, Plaintiff adds a *Bivens* claim herein.

### E.     Parties To The Action

115.     **Erin K. Baldwin** *("Plaintiff")* is an investigative reporter and journalist who wrote and published truthful, fact-based, and legally-substantiated articles and reports about matters of great public concern.  At all times relevant to the herein action, Plaintiff was a resident of the State of California and citizen of the United States of America.

- 48 -

## DEFENDANTS [9]

116.    **Bank Of America Corporation** *("Defendant BOA")* is a Delaware corporation, doing business under the same name in California since December 28, 1998, Corporate Number C2128692.  It maintains its principal place of business in Charlotte, North Carolina and maintains a California agent for service of process at CT Corporation System, 818 West Seventh Street, Los Angeles, CA 90017.

117.    **Brian T. Moynihan** *("Defendant Moynihan")* was at all times relevant to this action President and Chief Executive Officer of Defendant BOA and upon information and belief, is a citizen and resident of the state of North Carolina.  Defendant Moynihan is named herein as: (a) a BOA official in collusion with other defendants named herein; and (b) an individual in collusion with public officials, acting under color of state law. Plaintiff seeks action against Defendant Moynihan in both his official and individual capacities.

118.    **Sandor Samuels** *("Defendant Samuels")* was at all times relevant to this case General Counsel of Countrywide Financial purchased by Bank of America on July 1, 2008, and upon information and belief, is a citizen and resident of the state of California.  Defendant Samuels is named herein as: (a) an official of Defendant  BOA in collusion with other defendants named herein; and (b) an individual in collusion with public officials, acting under color of state law. Plaintiff seeks action against Defendant Samuels in both his official and individual capacities.

119.    **California Attorney General**, is a California State Agency *("Defendant CAG")*.

120.    **Kamala Harris** *("Defendant Harris")* was at all times relevant to this case the California Attorney General employed by a California State Agency, Defendant CAG, and upon information and belief, is a citizen and resident of the state of California. Defendant Harris is named herein as: (a) an official of Defendant CAG in collusion with other defendants named herein; and (b) an individual, in collusion with public officials, acting under color of

---

[9] All Defendants named herein acted in reckless and callous disregard for, deliberate indifference to, and with intent to interfere with, Plaintiff's constitutional rights, federal rights and California state law rights, actionable herein via supplemental jurisdiction pursuant to 28 U.S.C §1367.

state law. Plaintiff seeks action against Defendant Harris in both his official and individual capacities.

121.    **Edmund G. Brown** *("Defendant Brown")* was at all times relevant to this case the California Attorney General employed by a California State Agency, Defendant CAG, and upon information and belief, is a citizen and resident of the state of California. Defendant Brown is named herein as: (a) a former official of Defendant CAG who acted in collusion with other defendants named herein; and (b) an individual, who acted in collusion with public officials, acting under color of state law. Plaintiff seeks action against Defendant Brown in both his official and individual capacities.

122.    **United States District Court Judge Cormac J. Carney** ("*Defendant Judge Carney*") was at all times relevant to this case a United States District Court Judge appointed for life in good behavior by the President of the United States and assigned to the Central District of California. In May of 2011, Defendant Judge Carney was selected to determine two cases removed by Plaintiff to federal court based on federal question and diversity jurisdiction: Plaintiff seeks action against Defendant Judge Carney in both his official and individual capacities.

123.    **United States Magistrate Judge Sheri N. Pym** ("*Defendant Judge Pym*") was at all times relevant to this case the U.S. Magistrate Judge assigned to Plaintiff's herein case assisted by the Court's Pro Se Clerks. Upon filing on August 16, 2011, Plaintiff was automatically referred to Defendant Judge Pym based solely on Plaintiff's *pro se* status. Plaintiff is a *pro se* litigant because: (a) she lacks the funds to pay an attorney; and (b) even if she had the funds, no California-licensed attorney would represent a litigant in an action against the State Bar of California without severely jeopardizing their career. The herein action was deemed a "194 Case" status indicating her pro se status. The only other category given the "194" case status is "550 - Civil Rights - Prisoners," *pro se* civil rights claims filed by inmates currently in prison.   Plaintiff seeks action against Defendant Judge Pym in both her official and individual capacities.

124.    **The State Bar of California** *("Defendant CSB")* is a California state agency. Created by the state legislature in 1927, the State Bar is a public corporation within the judicial