1012. Plaintiff was denied the right to be informed of the nature and cause of the accusation when charged with the crime of contempt on August 31, 2009.

## COUNT TWO

*The People of the State of California v. Erin K. Baldwin*

(San Bernardino Superior Court, Criminal Case No. MSB906348)

1013. Plaintiff was denied the right to be informed of the nature and cause of the accusation when charged with crimes associated with MSB906348 on October 28, 2009.

## COUNT THREE

*The People of the State of California v. Erin K. Baldwin*

(San Bernardino Superior Court, Criminal Case No. MSB905837)

1014. Plaintiff was denied the right be informed of the nature and cause of the accusation when charged with the crime of battery on January 25, 2010.

## COUNT FOUR

*The People of the State of California v. Erin K. Baldwin*

(San Bernardino Superior Court, Criminal Case No. FSB1000789)

1015. Plaintiff was denied the right to be informed of the nature and cause of the accusation when charged with the crime of assault with a deadly weapon on February 25, 2010.

## COUNT FIVE

*UDR, Inc. v. Erin Baldwin, Bad Biz Finder, et al.*

Criminal Contempt Case

(Orange County Superior Court, Case No. 30-2009-00125305)

1016. Plaintiff was denied the right to be informed of the nature and cause of the accusation when charged with the crime of contempt on November 10, 2010.

## COUNT SIX

*Keith D. White v. Erin Baldwin*

Civil Harassment Case Converted into Criminal Protective Order

(San Bernardino Superior Court, Case No. CIVHS900261)

PLAINTIFF'S SECOND AMENDED COMPLAINT

1017. Plaintiff was denied the right to be informed of the nature and cause of the accusation when charged with the crime of contempt on March 24, 2010.

### COUNT SEVEN

*Jason Crow v. Erin Baldwin*

Family Court Harassment Case Converted into Criminal Stay Away Order

(San Bernardino Superior Court, Case No. FAMHS1000015)

1018. Plaintiff was denied the right to be informed of the nature and cause of the accusation when charged with the crime of contempt on March 24, 2010.

~ ~ ~ ~ ~

### TWENTY-NINTH (29th) CAUSE OF ACTION

**Deprivation of Right to Be Heard**

**in Violation of 42 U.S.C. §1983**

**(Protected Liberty Interest)**

~ ~ ~ ~ ~

### COUNT ONE

*Parsa Law Group, APC v. Bad Biz Finder, Erin Baldwin, et al.*

Criminal Contempt Case

(Orange County Superior Court, Case No. 30-2009-00117752)

931. Plaintiff was denied the opportunity to be heard when charged with the crime of contempt on August 31, 2009.

### COUNT TWO

*The People of the State of California v. Erin K. Baldwin*

(San Bernardino Superior Court, Criminal Case No. MSB906348)

933. Plaintiff was denied the opportunity to be heard when charged with crimes associated with police brutality and excessive force case filed on October 28, 2009.

### COUNT THREE

*The People of the State of California v. Erin K. Baldwin*

(San Bernardino Superior Court, Criminal Case No. MSB905837)

934. Plaintiff was denied the opportunity to be heard when charged with the crime of battery on January 25, 2010.

## COUNT FOUR

*The People of the State of California v. Erin K. Baldwin*

(San Bernardino Superior Court, Criminal Case No. FSB1000789)

935. Plaintiff was denied the opportunity to be heard when charged with the crime of assault with a deadly weapon on February 25, 2010.

## COUNT FIVE

*UDR, Inc. v. Erin Baldwin, Bad Biz Finder, et al.*

Criminal Contempt Case

(Orange County Superior Court, Case No. 30-2009-00125305)

932. Plaintiff was denied the right denied the opportunity to be heard when charged with the crime of contempt on November 10, 2010.

## COUNT SIX

*Keith D. White v. Erin Baldwin*
(San Bernardino Superior Court, Civil Case No. CIVHS900261)
and
*The People of the State of California v. Erin K. Baldwin*
(San Bernardino Superior Court, Criminal Case No. MSB906348)

932. On November 25, 2009, Plaintiff was denied the right to be heard by Defendant SBDA, acting under color of law, and in joint participation with Defendants K & P White, also acting under color of state law pursuant to the Joint Participation Doctrine, established by the U.S. Supreme Court in *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970); and *United States v. Price* 387 U.S. 787 (1966).

932. On November 25, 2009, Plaintiff appeared in Court for the arraignment on Criminal Case No. MSB906348, filed on October 28, 2009. This case was brought by Defendant SBDA to mitigate the liability of Defendant SB County for the excessive force and cruel and unusual punishment against Plaintiff in custody on October 8-9, 2009.[54]

---

[54] *See,* Sixteenth Cause of Action for Excessive Force, Count One; and Twenty-Fifth Cause of Action for Excessive Force -

934. When she arrived at the arraignment, Plaintiff noticed that Defendants K & P White were present in the courtroom but did not know why since they were not a party to the case. As of November 25, 2009, Plaintiff was not aware of Defendant SBDA's joint participatory relationship with Defendants K & P White, so Plaintiff inquired and learned they were there at the request of SBDA Defendant Laura Robles. [55]

934. On November 25, 2009, Defendant SBDA (acting under color of state law) appeared before Judge Kyle Brodie on behalf of, and in joint participation with, civil litigants Defendants K & P White, to request that the Court grant Defendants K & P White a Criminal Protective Order against Plaintiff. Plaintiff did not learn these facts until much later, however, she did hear Judge Kyle Brodie state, "No, I'm not going to do that" although at the time she did not know what it meant.

935. With the *sub rosa* assistance of Defendant SBDA, Defendants K & P White obtained a meritless restraining order against Plaintiff on October 28, 2009, to aid in Defendant SBDA's construction of a case againt Plaintiff to use against her in defense of Criminal Case No. MSB906348. In fact, Defendant Robles filed Criminal Complaint Case No. MSB906348 on the same day Defendants K & P White were granted a 3-year permanent restraining order against Plaintiff. Defendant SBDA's request for a Criminal Protective Order was just one step up in severity from a civil restraining order and would serve to enhance Defendant SBDA's defense claims that Plaintiff was "a dangerous and mentally unstable criminal that has to be restrained." [56]

936. Defendants K & P White <u>were not</u> parties to this action, therefore Plaintiff see no legal justification for Defendant SBDA's actions that day.

937. Nonetheless, Defendant SBDA had a duty to give Plaintiff notice of its intention to bring a motion before the Court in Criminal Case No. MSB906348. They failed to do so.

---

Cruel & Unusual Punishment, Count One.
[55] Defendant Laura Robles was the district attorney originally assigned to Criminal Case No. MSB906348 and her name is on the Complaint filed on October 28, 2009.
[56] Of course, it also helped Defendant Orange County Superior Court Judge Franz E. Miller to justify the unconstitutional permanent injunction he entered against Plaintiff on June 2, 2009 which was, at that time, on Appeal.

938. Defendant SBDA knew that as of November 25, 2009, Plaintiff was not represented by counsel as it was her first appearance and a public defender had not yet been appointed. Therefore, Defendant SBDA acted in bad faith.

932. Defendant SBDA also had a duty to bring the motion for a Criminal Protective Order in open court with Plaintiff present to afford Plaintiff an opportunity to be heard. They failed to do so.

933. On November 25, 2009, Defendant SBDA, acting under color of state law, in joint participation with Defendants K & P White, and as such, also acting under color of state law, denied Plaintiff's constitutional right to be heard, violated the Fundamental Fairness Doctrine, and committed a fraud upon the court.

934. On November 25, 2009, Defendants SBDA, K. White and P. White acted in reckless and callous disregard for, deliberate indifference to, and with intent to interfere with Plaintiff's constitutional rights, federal rights and California state law via supplemental jurisdiction under 28 U.S.C §1367.

## COUNT SEVEN

*Keith D. White v. Erin Baldwin*
(San Bernardino Superior Court, Civil Case No. CIVHS900261)
and
*The People of the State of California v. Erin K. Baldwin*
(San Bernardino Superior Court, Criminal Case No. FSB1000789)

932. On March 24, 2009, Plaintiff was denied the right to be heard by Defendant SBDA, acting under color of law, and in joint participation with Defendants K & P White, also acting under color of state law pursuant to the Joint Participation Doctrine, established by the U.S. Supreme Court in *Adickes v. S. H. Kress & Co.,* 398 U.S. 144 (1970); and *United States v. Price* 387 U.S. 787 (1966).

933. On March 24, 2009, Plaintiff was also denied the right to be heard by Judge Michael Dest, who may or may not be entitled to absolute immunity; that is at the discretion of the Court.

934. Nonetheless, Defendants . Although Defendant Dest also acted in joint participation with Defendants K & P White, also acting under color of state law pursuant to the

Joint Participation Doctrine, established by the U.S. Supreme Court in Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970); and United States v. Price 387 U.S. 787 (1966).

932. On November 25, 2009, Plaintiff appeared in Court for the arraignment on Criminal Case No. MSB906348, filed on October 28, 2009. This case was brought by Defendant SBDA to mitigate the liability of Defendant SB County for the excessive force and cruel and unusual punishment against Plaintiff in custody on October 8-9, 2009.[57]

934. When she arrived at the arraignment, Plaintiff noticed that Defendants K & P White were present in the courtroom but did not know why since they were not a party to the case. As of November 25, 2009, Plaintiff was not aware of Defendant SBDA's joint participatory relationship with Defendants K & P White, so Plaintiff inquired and learned they were there at the request of SBDA Defendant Laura Robles.[58]

934. On November 25, 2009, Defendant SBDA (acting under color of state law) appeared before Judge Kyle Brodie on behalf of, and in joint participation with, civil litigants Defendants K & P White, to request that the Court grant Defendants K & P White a Criminal Protective Order against Plaintiff. Plaintiff did not learn these facts until much later, however, she did hear Judge Kyle Brodie state, "No, I'm not going to do that" although at the time she did not know what it meant.

935. With the *sub rosa* assistance of Defendant SBDA, Defendants K & P White obtained a meritless restraining order against Plaintiff on October 28, 2009, to aid in Defendant SBDA's construction of a case agaknt Plaintiff to use against her in defense of Criminal Case No. MSB906348. In fact, Defendant Robles filed Criminal Complaint Case No. MSB906348 on the same day Defendants K & P White were granted a 3-year permanent restraining order against Plaintiff. Defendant SBDA's request for a Criminal Protective Order was just one step up in severity from a civil restraining order and would serve to enhance Defendant SBDA's defense claims that Plaintiff was "a dangerous and mentally unstable criminal that has to be restrained."[59]

---

[57] *See,* Sixteenth Cause of Action for Excessive Force, Count One; and Twenty-Fifth Cause of Action for Excessive Force - Cruel & Unusual Punishment, Count One.

[58] Defendant Laura Robles was the district attorney originally assigned to Criminal Case No. MSB906348 and her name is on the Complaint filed on October 28, 2009.

[59] Of course, it also helped Defendant Orange County Superior Court Judge Franz E. Miller to justify the unconstitutional

936. Defendants K & P White <u>were not</u> parties to this action, therefore Plaintiff see no legal justification for Defendant SBDA's actions that day.

937. Nonetheless, Defendant SBDA had a duty to give Plaintiff notice of its intention to bring a motion before the Court in Criminal Case No. MSB906348. They failed to do so.

938. Defendant SBDA knew that as of November 25, 2009, Plaintiff was not represented by counsel as it was her first appearance and a public defender had not yet been appointed. Therefore, Defendant SBDA acted in bad faith.

932. Defendant SBDA also had a duty to bring the motion for a Criminal Protective Order in open court with Plaintiff present to afford Plaintiff an opportunity to be heard. They failed to do so.

933. On November 25, 2009, Defendant SBDA, acting under color of state law, in joint participation with Defendants K & P White, and as such, also acting under color of state law, denied Plaintiff's constitutional right to be heard, violated the Fundamental Fairness Doctrine, and committed a fraud upon the court.

934. On November 25, 2009, Defendants SBDA, K. White and P. White acted in reckless and callous disregard for, deliberate indifference to, and with intent to interfere with Plaintiff's constitutional rights, federal rights and California state law via supplemental jurisdiction under 28 U.S.C §1367.

## COUNT SIX

*Keith D. White v. Erin Baldwin*

(San Bernardino Superior Court, Civil Case No. CIVHS900261)

932. On March 24, 2010, while Plaintiff was incarcerated on Criminal Case No. FSB1000789, Plaintiff was denied the opportunity to be heard when Defendant SBDA (acting under color of state law) appeared in Criminal Case No. MSB906348 before Judge Michael Dest on behalf of, and in joint participation with, civil litigants Defendants K & P White, to request that the Court grant a Criminal Protective Order against Plaintiff in connection with a permanent injunction he entered against Plaintiff on June 2, 2009 which was, at that time, on Appeal.

- 257 -

PLAINTIFF'S SECOND AMENDED COMPLAINT

Civil Restraining Order Defendants K & P White had fraudulently obtained against Plaintiff. Defendants K & P White were not parties to the action.

932. Defendant SBDA, acting under color had attempted this four months earlier, on November 25, 2009, at Plaintiff's arraignment on Criminal Case No. MSB906348. The judge assigned for all purposes to Criminal Case No. MSB906348, Judge Kyle Brodie, <u>denied</u> Defendant SBDA's Motion on November 25, 2009. As of the date this Motion was brought before Judgethe same day. On March 24, 2010, Judge Kyle Brodie was still assigned for all purposes to Criminal Case No. MSB906348

932. However, said Criminal Protective Order was <u>granted</u> on March 24, 2010, by Judge Michael Dest, the same judicial officer assigned to Criminal Case No. FSB1000789, on which Plaintiff was incarcerated.

932. On January 25, 2009, Judge Katrina West granted Plaintiff the right to self-representation and thereon Plaintiff was counsel of record in San Bernardino Superior Court, Criminal Case No. MSB906348.

932. Defendant SBDA had a duty to confer with Plaintiff, as counsel of record in Criminal Case No. MSB906348, prior to adding Defendants K & P White into Criminal Case No. MSB906348.

932. Defendant SBDA had a duty to give Plaintiff notice of its intention to bring a motion for a Criminal Protective Order on behalf of Defendants K & P White prior to appearing in the case so that Plaintiff could be present.

932. Defendant SBDA had a duty to bring the motion for a Criminal Protective Order on behalf of Defendants K & P White in open court with Plaintiff present as the defendant in a criminal case, so Plaintiff could defend her position.

PLAINTIFF'S SECOND AMENDED COMPLAINT

## TWENTY-THIRD CLAIM FOR RELIEF

<u>Protected Liberty Interest</u>

Deprivation of Right to Self-Representation

in Violation of 42 U.S.C. §1983

### COUNT ONE

100. On April 12, 2011, Plaintiff attempted to file a Marsden Motion in the UDR Defamation Case so that she could proceed in the matter pro se.

100. Plaintiff was very unhappy with court-appointed counsel and it was blatantly clear that Defendants OCPD and Nicolalde did not have Plaintiff's best interests at heart.

100. However, when Plaintiff went to file the Marsden Motion, the clerk rejected it, stating that Plaintiff "was not eligible to file any documents in this case until the Judgment in the matter had been set aside."

100. This made no sense to Plaintiff since it was an active case post-Judgment and pleadings were being filed by Defendants OCPD and Nicolalde.

100. On April 13, 2011, Plaintiff served a §170.1 Verified Statement and Challenge for Cause against Defendant Miller that effectively stayed the case for all purposed.

100. Even though Defendants OCPD and Nicolalde knew the matter was stayed, they applied ex parte to proceed with another judge on a Motion to Bifurcate the Trial. They did not inform Plaintiff of the ex parte hearing because they knew Plaintiff adamantly opposed such a strategy.

100. On April 14, 2011 Plaintiff called Defendant Miller's courtroom to inquire about an ex parte hearing she saw on the docket. She spoke with Defendant Turner who informed her that the ex parte was scheduled in another courtroom, and would be heard by Judge Steven Perk.

100. Plaintiff immediately contacted Judge Steven Perk's courtroom and informed his clerk of the underhanded activities of Defendants OCPD and Nicolalde and the clerk placed her in the hearing telephonically.

100. Since Plaintiff's Marsden Motion had been rejected, Judge Steven Perk did not have a copy, nor was he at all familiar with the case before the court.

- 259 -

PLAINTIFF'S SECOND AMENDED COMPLAINT

100. Plaintiff informed Judge Perk that she did not want Defendants OCPD and Nicolalde representing her in any way.

100. An impromptu Marsden Motion took place and the courtrroom allegedly was cleared although Plaintiff was not present. However, Judge Steven Perk allowed Defendant Nicolalde to remain in the courtroom.

100. Judge Perk had not read Plaintiff's Marsden Motion and Plaintiff was not prepared to argue the Motion that morning.

100. Nonetheless, the courtroom was cleared, and Plaintiff listed the reasons why she did not want Defendant OCPD or Nicolalde representing her.

100. Judge Perk denied Plaintiff's Marsden Motion, even though said Motion had been denied by the Court.

100. Plaintiff was shocked. She documented the events in a letter to the Presiding Judge of the Court, who responded apologetically to Plaintiff staing that the clerks had made a mistake and had bee retrained on the proper procedures.

100. Subsequently, Plaintiff's Motion was added to the record but by then it had been denied.

100. As a result, Plaintiff's constitutional right to be self-representation had been violated in an attempt to keep Plaintiff from actively participating in her case.

100. Defendant OCPD's sole purpose in the UDR Defamation Case was to prevent Plaintiff from acting on her own behalf when Plaintiff discovered that her constitutional rights were being violated.

100. In essence, the Court was not only forcing a lawyer on Plaintiff when Plaintiff wished to represent herself but forced a lawyer on Plaintiff that it knew was working against her.

100. When Plaintiff attempted to disassociate herself from the Defendant OCPD she was denied in every instance.

100. Defendant OCPD filed documents "on Plaintiff's behalf" without Plaintiff's knowledge, review or consent after Plaintiff expressly requested that the OCPD allow her to read all documents prior to filing.

100. Defendant OCPD filed documents "on Plaintiff's behalf" when it had specific knowledge that Plaintiff was opposed to the strategies and content contained in said documents.

100. Defendant OCPD lied continuously to Plaintiff about the facts of this case and her legal remedies.

100. Defendant OCPD intentionally and maliciously misrepresented to Plaintiff that this contempt action was civil contempt actionable under CCP 1209-1222. The objective of this misrepresentation was to aid Defendant Miller in retaining control of the case and preventing Defendant Miller from having to recuse himself and transfer the case to the criminal court under Penal Code section 166(a)(4).

## COUNT TWO

100. On May 5, 2011, Plaintiff sent Defendants OCPD and Nicolalde an email informing them that she wished to waive her right to counsel and proceed *pro se* and requested that the OCP file a Motion to Withdraw. It stated:

> "It's now apparent to me that you have an improper relationship with opposing counsel in this case which disqualifies you from representing me. Any other attorney would have jumped on the opportunity to serve David Berstein and Eric Goodman considering the facts stated in my below email, which facts you have known since the outset of your representation of me over three months ago. These facts are not a theory, they can be directly substaniated by a fellow Public Defender, Martin Schwarz.
>
> "I will prepare and serve the subpoena myself.
>
> "Your ongoing attempt to mitigate your breach of fiduciary duty to me by asserting that telephone conversations are essential to your effective representation of me is ludicrous (consider your typical incarcerated client's availablilty by phone or in person). As well, your argument that you have asked numerous times for more detail for the subpoena is equally unintelligible. There are pre-existing, extenuating circumstances that not only make up for any particularity in the subpoena description but also mandate that the subpoena be criminal in nature.
>
> "The Orange County Public Defender's office is embroiled in this action and as in the case of Judge Miller, you have surrendered the role for which you were assigned. Your office is patently incapable of providing a defense on my behalf.
>
> "The Sixth Amendment of the United States Constitution gives me an absolute right to self-representation, just as it provides me an absolute right to

PLAINTIFF'S SECOND AMENDED COMPLAINT

> *competent counsel. In Faretta v. California, 422 U.S. 806 (1975), the United States Supreme Court held: "A defendant has a federal constitutional right to represent himself if he voluntarily and intelligently elects to do so. The court has a mandatory duty to grant a request for self-representation made within a reasonable time before trial if it determines the defendant has voluntarily and intelligently elected to represent himself or herself, no matter 'how unwise such a choice might appear to be'." (Also, see, People v. Windham, (1977) 19 Cal.3d 121, 128 at p. 128.)*
>
> *"In United States v. Lorick, 753 F.2d 1295 (4th Cir. 1985), the Court held: The right to proceed pro se must be clearly asserted by the defendant prior to trial." (Also, see, State v. Sims, 304 S.C. 409, 405 S.E.2d 377 (1991).)*
>
> *"Pursuant to the above-stated requirement I am informing your office that I, Erin K. Baldwin, hereby clearly assert my desire to exercise my constitutional right to self-representation. Since the trial date has not been set, I have timely informed you. The services of the Orange County Public Defender's Office will no longer be needed. If your insolence requires me to file a Faretta Motion, I will seek disciplinary action against you, Ms. Gragg, and Ms. Kwast personally.*
>
> *"Please file a Motion to Withdraw by the end of business today and email me a conformed copy of same. You must also forward to me a complete copy of my file along with copies of all communication via written, electronic, fax, etc.*

100. Instead of honoring Plaintiff's requests, Defendants OCPD and Nicolalde filed an "*Ex Parte Application for Order Substituting Attorney; Defendant's Request for Pro Se Legal Representation; Declaration of Jennifer L. Nicolalde; Proposed Order.*"

100. Plaintiff was aware that the contempt charges against her were criminal, not civil, and as such, a Faretta Motion was the appropriate method to assert her constitutional right to self-representation. However, Defendants OCPD and Nicolalde did not want to disclose that they had consciously defrauded Plaintiff and maintained that it was civil contempt that required a civil procedure for the withdrawal of Defendants OCPD and Nicolalde.

100. Defendants OCPD and Nicolalde's *Ex Parte Application for Order Substituting Attorney; Defendant's Request for Pro Se Legal Representation; Declaration of Jennifer L. Nicolalde; Proposed Order*" did not assert Defendant's Sixth and Fourteenth Amendment rights, nor did it reference the United States Supreme Court decision in *Faretta v. California,*

422 U.S. 806 (1975), <u>both essential elements to Defendant exercising this right without Court interference</u>.

100. Defendants OCPD and Nicolalde informed Plaintiff after they ahd filed said pleadings and had scheduled an ex parte hearing in Defendant Miller's department for May 10, 2011.

100. Defendants OCPD and Nicolalde knew Plaintiff had a pending Writ of Mandate for Disqualification against Defendant Miller in the Court of Appeal and that this hearing should have been scheduled before a neutral arbiter.

100. Plaintiff quickly responded to Defendants OCPD and Nicolalde stating that she had simply asked the them to file a Motion to Withdraw, not an ex parte application. Plaintiff requested that Defendants OCPD and Nicolalde withdraw the application and take the hearing off calendar. This was never done.

100. Plaintiff then contacted the clerk for Defendant Miller and the clerk for the Presiding Judge of the Court to advise them that Defendants OCPD and Nicolalde had filed the this *ex parte* application and had set the *ex parte* hearing without Defendant's knowledge, review or consent.

100. Defendant Miller's clerk advised Plaintiff to communicate with Defendants OCPD and Nicolalde to let them know that the ex parte hearing must be rescheduled for a time convenient to all parties.

100. Defendants OCPD and Nicolalde acquiesced and inquired of Defendant a time convenient to her. Plaintiff explained that she wanted the matter removed permanently; that it was not appropriate for the circumstance.

100. In the same email, perhaps out of retaliation or anger, Defendants OCPD and Nicolalde notified Plaintiff that Defendant BKGG had issued a subpoena duces tecum for court documents from San Bernardino County.

100. Although it is impossible to know for certain the motivation behind this odd maneuver, it is likely act of retaliation and intimidation intended to frighten Plaintiff as Defendant BKGG has done so many times before.

...

100. This is true because Defendant BKGG already had possession of these documents.

100. The U.S. Supreme Court decision in *Faretta v California* (1975) 422 US 806, 819, 835–836 held:

> "A person who knowingly, intelligently, and voluntarily waives the right to counsel possesses a right under the Sixth Amendment to conduct his or her own defense.
>
> "The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. It is the accused, not counsel, who must be 'informed of the nature and cause of the accusation,' who must be 'confronted with the witnesses against him,' and who must be accorded 'compulsory process for obtaining witnesses in his favor.'
>
> "Although not stated in the Amendment in so many words, the right to self-representation—to make one's own defense personally—is thus necessarily implied by the structure of the Amendment. The right to defend is given directly to the accused; <u>for it is he who suffers the consequences if the defense fails</u>."

100. Defendant OCPD's sole purpose in the UDR Defamation Case was to prevent Plaintiff from acting on her own behalf when Plaintiff discovered that her constitutional rights were being violated.

100. In essence, the Court was not only forcing a lawyer on Plaintiff when Plaintiff wished to represent herself but forced a lawyer on Plaintiff that it knew was working against her.

100. When Plaintiff attempted to disassociate herself from the Defendant OCPD she was denied in every instance.

100. Defendant OCPD filed documents "on Plaintiff's behalf" without Plaintiff's knowledge, review or consent after Plaintiff expressly requested that the OCPD allow her to read all documents prior to filing.

100. Defendant OCPD filed documents "on Plaintiff's behalf" when it had specific knowledge that Plaintiff was opposed to the strategies and content contained in said documents.

PLAINTIFF'S SECOND AMENDED COMPLAINT

100. Defendant OCPD lied continuously to Plaintiff about the facts of this case and her legal remedies.

100. Defendant OCPD intentionally and maliciously misrepresented to Plaintiff that this contempt action was ***civil contempt*** actionable under CCP 1209-1222. The objective of this misrepresentation was to aid Defendant Miller in retaining control of the case and preventing Defendant Miller from having to recuse himself and transfer the case to the criminal court under Penal Code section 166(a)(4).

## COUNT THREE

100. On January 25, 2010, San Bernardino Superior Court Judge Katrina West held an oral Faretta Motion voir dire pertaining to San Bernardino Superior Court, ***Criminal Case No. MSB906348***. This was the case that Defendant SBDA filed against Plaintiff, after Plaintiff was beaten and burned in custody, so that Defendant SBDA could conceal and/or mitigate said event.

100. Judge Katrina West granted Plaintiff's right to self-representation and effectively dismissed the San Bernardino County Public Defender. Plaintiff left, went back to Big Bear and continued preparing for trial scheduled for April 11, 2010.

100. Plaintiff filed a Pitchess Motion the same day but it was later rejected by Judge Kyle Brodie because he claimed that Plaintiff did not serve the proper custodian of record. Therefore, Plaintiff rescheduled the hearing and planned to serve the Pitchess Motion on Defendant Blankenship, Head of the Civil Liabilities Division of the San Bernardino Sheriff's Department and refile it on February 25, 2010.

100. However, on February 25, 2010, Plaintiff was falsely arrested by Defendant San Bernardino Sheriff's Department and falsely imprisoned at West Valley Detention Center for Assault with a Deadly Weapon, San Bernardino Superior Court, Criminal Case No. FSB1000897.

100. On February 25, 2010, Plaintff was falsely arrested by Defendant San Bernardino Sheriff's Department and falsely imprisoned at West Valley Detention Center for Assault with a Deadly Weapon, San Bernardino Superior Court, Criminal Case No. FSB1000897.

100. This false arrest and imprisonment was premeditated:

    a. to prevent Plaintiff from preparing for trial in **Criminal Case No. MSB906348.**

    b. to prevent Plaintiff from filing a Pitchess Motion to reveal the contents of the personnel files of the Big Bear Sheriffs deputies that beat and burned her in custody on October 8-9, 2009;

    c. to remove her from her home so that all her property and evidence against the sheriffs could be confiscated; and

    d. to keep her in custody until she signed a plea bargain on **Criminal Case No. MSB906348** so the trial scheduled for April 11, 2010 would be vacated.

100. While in custody only on Criminal Case No. FSB1000897, San Bernardino District Attorney Defendants Spencer and Dixon **intentionally lied to the Court** stating that Plaintiff was <u>also in custody</u> on **Criminal Case No. MSB906348**, in order to effectively raise her bail amount from $50,000.00 to $500,000.00.

100. When Plaintiff learned of this, she sought to address the Court since she was her own attorney on **Criminal Case No. MSB906348**. Plaintiff's request was denied and she was told to "sit down and shut up, you're being rude."

100. Without Plaintiff's permission, Defendant San Bernardino Public Defender Jeffrey Lawrence, met in chambers about **Criminal Case No. MSB906348** even though he knew his office had been dismissed on January 25, 2010. Plaintiff was not privy to the conversations in chambers nor did Defendant Lawrence share the information with her.

100. Without Plaintiff's permission, Defendant Lawrence, conducted bench conferences about **Criminal Case No. MSB906348** even though he was aware that his office had been dismissed on January 25, 2010. Plaintiff was not privy to these conversations nor did Defendant Lawrence share the information with her.

100. When Plaintiff saw this occurring she attempted to act on her own defense, since she was her own attorney on **Criminal Case No. MSB906348**. However, she was once again denied that. She was made to stand in the hall because of her "disruptive behavior."

100. While in custody only on Criminal Case No. FSB1000897, San Bernardino

District Attorney Defendants Spencer and Dixon **also intentionally lied to the Court** stating Plaintiff had "waived time," on Criminal Case No. FSB1000897.

100. However, Plaintiff had only "waived time" on Criminal Cases Nos. *MSB906348* and MSB905837, to allow her more time to prepare for trial.

100. On March 18, 2010, Plaintiff attended a bail reduction hearing where she once again attempted to tell Judge Donna Garza-Gunnell, that she was not in custody on *Criminal Case No. MSB906348* and that she wished to speak in her own defense.

100. Judge Garza-Gunnell not only denied her request but set bail on *Criminal Case No. MSB906348*, in the amount of $10,000.00.

100. When Plaintiff stated, "I adamantly object," she stated, "Too bad," and called the next case.

## COUNT FOUR

100. On January 25, 2010, San Bernardino Superior Court Judge Katrina West held an oral Faretta Motion voir dire pertaining to San Bernardino Superior Court, *Criminal Case No. MSB905837*.

100. This was a case for battery that never occurred according to the police report dated September 17, 2009. However, to strengthen its case in MSB906348, Defendant SBDA filed charges of battery against Plaintiff on January 25, 2010, four months after the police report claimed she did nothing wrong.

100. Judge Katrina West granted Plaintiff's right to self-representation and effectively dismissed the San Bernardino County Public Defender. Plaintiff left, went back to Big Bear and continued preparing for trial scheduled for April 11, 2010.

100. While in custody only on Criminal Case No. FSB1000897, San Bernardino District Attorney Defendants Spencer and Dixon **intentionally lied to the Court** stating that Plaintiff was also in custody on the alleged battery case, *Criminal Case No. MSB905837*, in order to effectively raise her bail amount from $50,000.00 to $500,000.00.

100. When Plaintiff learned of this, she sought to address the Court since she was her own attorney on *Criminal Case No. MSB905837*. Plaintiff's request was denied.

100. Without Plaintiff's permission, Defendant San Bernardino Public Defender Jeffrey Lawrence, met in chambers about **Criminal Case No. MSB905837** even though he knew his office had been dismissed on January 25, 2010. Plaintiff was not privy to the conversations in chambers nor did Defendant Lawrence share the information with her.

100. Without Plaintiff's permission, Defendant Lawrence, conducted bench conferences about **Criminal Case No. MSB905837** even though he was aware that his office had been dismissed on January 25, 2010. Plaintiff was not privy to these conversations nor did Defendant Lawrence share the information with her.

100. When Plaintiff saw this occurring she attempted to act on her own defense, since she was her own attorney on **Criminal Case No. MSB905837**. However, once again she was ignored.

100. While in custody only on Criminal Case No. FSB1000897, San Bernardino District Attorney Defendants Spencer and Dixon **also intentionally lied to the Court** stating Plaintiff had "waived time," on Criminal Case No. FSB1000897.

100. However, Plaintiff had only "waived time" on Criminal Cases Nos. MSB906348 and **MSB905837**, to allow her more time to prepare for trial.

100. On March 18, 2010, Plaintiff attended a bail reduction hearing where she once again attempted to tell Judge Donna Garza-Gunnell, that she was not in custody on **Criminal Criminal Case No. MSB905837** and that she wished to speak in her own defense.

100. Judge Garza-Gunnell not only denied her request but set bail on **Criminal Case No. MSB905837**, in the amount of $10,000.00.

## FORTY-THIRD (43rd) CAUSE OF ACTION

<u>Protected Property Interest</u>

Deprivation of Right to Be Free of

Unreasonable Searches & Seizures

in Violation of 42 U.S.C. §1983

<u>COUNT ONE</u>

were prohibited from using this property against her in a criminal prosecution pursuant to the Exclusionary Rule and the "fruit of the poisonous tree" principle, nonetheless, it was used on multiple occasions.

### COUNT THREE

100. On or about February 25, 2010, Plaintiff's property was unlawfully searched at and seized from her Big Bear City residence and never returned despite requests for same. Defendants named herein were prohibited from using this property against her in a criminal prosecution pursuant to the Exclusionary Rule and the "fruit of the poisonous tree" principle.

### COUNT FOUR

100. On October 8, 2009, Plaintiff's person was unlawfully seized from 613 Big Bear Boulevard, Big Bear City, California on and falsely arrested and imprisoned. Defendants named herein did not have a warrant nor probable cause to arrest Plaintiff

### COUNT FIVE

100. On February 25, 2010, Plaintiff's person was unlawfully seized by Defendant San Bernardino Sheriff's Department, from 1017 Mountainview, Big Bear City, California and falsely arrested and imprisoned without probable cause.

### COUNT SIX

100. On February 25, 2010, Plaintiff's long-term dog companions were seized and surrendered to the animal shelter by Defendant Crow who claimed he was the rightful owner of said long-term dog companions. Defendant Crow disclosed to Plaintiff the day prior to her arrest that he had been in communications with Defendant SBDA.

November 14, 2011

Erin K. Baldwin, Pro Se